**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| EUGENE SCALIA, | ) | |
| SECRETARY OF LABOR, | ) | |
| UNITED STATES DEPARTMENT OF LABOR, | ) | Civil Action No. 2:18-cv-01608-PJP |
| | ) | |
| Plaintiff, | ) | |
| | ) | Honorable William S. Stickman |
| v. | ) | |
| | ) | |
| COMPREHENSIVE HEALTHCARE | ) | |
| MANAGEMENT SERVICES, LLC, et. al. | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S PARTIAL MOTION FOR
SUMMARY JUDGMENT**

**Table of Contents**

I.      Introduction…………………………………………………………………………1

II.     Summary of Undisputed Facts…………………………………………………………4

III.    Argument …………………………………………………………….......................8

    A.  Defendants are a Covered, Single Enterprise under the Act, and Therefore, Are Jointly and Severally Liable for All FLSA Violations  ………………………………………5

    B.  Defendant Sam Halper is an Employer under the Act and is Liable for All FLSA Violations…………………………………………………………….......................11

    C.  Defendants Violated Section 11 of the FLSA by Failing to Create and Maintain Accurate Time and Pay Records…………………………………………………………...13

    D.  Defendants Violated the FLSA Overtime Requirements ………………………..17

        1.  Defendants Violated Section 7 By Failing to Pay Any Overtime Wages…………………………………………………………………17

            a.  Defendants Utilized a Fluctuating Pay Scheme to Avoid Paying Any Overtime to Supervisors and Assistant Supervisors……………………17

            b.  Defendants Failed to Pay All Employees for Any Overtime Hours Outside of Their Predetermined Schedule………………………………………...18

            c.  Defendants Automatically Deducted 30 minutes From Every Employee Although They Knew Employees Worked Through Lunch Breaks…………………………………………………………………19

        2.  Defendants Violated the FLSA Section 7 by Failing to Include All Remunerations in the Regular Rate………………………………………………………22

            a.  Defendants Failed to Include Shift Differentials and Premiums to Calculate Overtime Payments……………………………………………23

            b.  Defendants Did Not Include Bonuses When Calculating Overtime Payments………………………………….......................................24

        3.  Defendants Violated Section 7 By Failing to Pay The Proper Rate of Overtime For All Hours Worked………………………………………………………...25

            a.  Defendants Paid Straight Time for All Overtime Hours to Employees………………………………………………………………25

            b.  Defendants Failed to Combine Hours Worked to Determine Overtime………………………………….......................................26

    E.  Defendants' Overtime Violations Were Willful…………………………….......................28

    F.  Defendants are Liable for an Equal Amount of Liquidated Damages……………………30

    G.  Defendants' Violations of the FLSA Warrant Injunctive Relief………….......................34

IV.    CONCLUSION……………………………………………………………………..37

## Table of Authorities

**Case**                                                                                   **Page(s)**

*A.H. Phillips, Inc. v. Walling,*
324 U.S. 490 (1945) ...................................................................................... 6

*Acosta v. Cent. Laundry, Inc.,*
2019 WL 3413514 (E.D. Pa. July 29, 2019) ........................................... 35

*Adler v. Walmart Stores, Inc.,*
144 F.3d 664 (10th Cir. 1998) ..................................................................... 7

*Alers v. City of Philadelphia,*
919 F. Supp. 2d. 528, (E.D. Pa. 2013) ...................................................... 16

*Allen v. Board of Public Education for Bibb County,*
495 F.3d 1306 (11th Cir.2007) .................................................................. 15

*Anderson v. Liberty Lobby Inc.,*
477 U.S. 242 (1986) ...................................................................................... 7

*Anderson v. Mt. Clemens Pottery Co.,*
328 U.S. 680 (1946) ............................................................................. 16, 17

*Armbruster v. Unisys Corp.,*
32 F.3d 768 (3d Cir.1994) ............................................................................ 7

*Bay Ridge Operating Co. v. Aaron,*
334 U.S. 446, (1948) .................................................................................. 24

*Brock v. Claridge Hotel and Casino,*
846 F.2d 180 .............................................................................................. 31

*Brock v. Richardson,*
812 F.2d 121 (3rd Cir. 1987) ....................................................................... 7

*Brock v. Wilamowsky,*
833 F.2d 11 (2d Cir. 1987) ................................................................... 32, 34

*Brooklyn Sav. Bank v. O'Neil,*
324 U.S. 697 (1945) ...................................................................................... 6

*Camesi v. Univ. of Pittsburgh Medical Center,*
2009 WL 1361265 (W.D. Pa. May 14, 2009) ............................... 15, 19–20

*Caserta v Home Lines Agency, Inc.,*
273 F.2d 943 (2d Cir. 1959) ...................................................................... 14

*Castellino v. M.I. Friday, Inc.,*
No. 11–261, 2012 WL 2513500, (W.D. Pa. June 29, 2012) .................... 11

*Celotex Corp. v. Cattrett,*
477 U.S. 317 (1986) ...................................................................................... 7

*Chao v. A-One Medical Services, Inc.,*
346 F.3d 908 (9th Cir. 2003), *cert. denied* 541 U.S. 1030 (2004) ............ 7

*Chao v. Gotham Registry, Inc.,*
514 F.3d 280 (2d Cir. 2008) ................................................................. 15, 21

*Davis v. Abington Memorial Hosp.,*
817 F.Supp.2d 556 (E.D.Pa.2011) ............................................................... 9

*Disney v. Entenmann's, Inc.,* No. Civ. H-99–2247,
2000 WL 172179, (D. Md. Nov. 17, 2000) ................................................. 7

*De Rose v. Eastern Plastics, Inc.,*
134 F. Supp. 805 (W.D. Pa. 1955) ............................................................ 16

*Dole v. Haulaway, Inc.*,
  723 F. Supp. 274(D.N.J. 1989), *aff'd* 914 F.2d 242 (3d 1990) ......................................... 13, 34
*Dole v. Solid Waste Servs., Inc.*,
  733 F.Supp. 895 (E.D. Pa. 1989) .............................................................................. 9, 11, 14
*Donovan v. Agnew*,
  712 F.2d 1509 (1st Cir. 1983) ........................................................................................... 13
*Donovan v. Rockwell Tire & Fuel, Inc.*,
  1982 WL 2120 (M.D.N.C. Mar. 30, 1982) ......................................................................... 34
*Doyle v. Wayne Mem'l Hosp.*,
  2020 WL 753196 (M.D. Pa. Feb. 13, 2020)........................................................................ 21
*Forrester v. Roth's I.G.A. Foodliner, Inc.*,
  646 F.2d 413 (9th Cir. 1981)............................................................................................. 17
*Garcia v. Tenafly Gourmet Farms, Inc.*,
  2012 WL 715316 (D.N.J. 2012).......................................................................................... 29
*Gusdonovich v. Bus. Info. Co.*,
  705 F. Supp. 262 (W.D. Pa. 1985) .................................................................................... 11
*Herman v. Palo Group Foster Home, Inc.*,
  183 F.3d 468 (6th Cir. 1999)............................................................................................. 30
*Herman v. RSR Sec. Servs. Ltd.*,
  172 F.3d 132 (2d Cir. 1999).............................................................................................. 30
*Hodgson v. Approved Pers. Serv.*,
  529 F.2d 760 (4th Cir. 1975)............................................................................................. 37
*Holzapfel v. Town of Newburgh*,
  145 F.3d 516 (2d Cir. 1998).............................................................................................. 17
*In re Enter. Rent-A-Car Wage & Hour Employment Practices Litig.*,
  683 F.3d 462 (3d Cir. 2012)............................................................................................ 8, 9
*Jackson v. Art of Life, Inc.*,
  836 F. Supp. 2d 226 (E.D. Pa. 2011) ....................................................... 10, 11, 12, 13, 30
*Jones v. Does 1-10*,
  857 F.3d 508 (3d Cir. 2017).............................................................................................. 28
*Keeley v. Loomis Fargo & Co.*,
  183 F.3d 257 (3d Cir. 1999).............................................................................................. 33
*Landaas v. Canister Co.*,
  91 F. Supp. 620 (D.N.J. 1950), aff'd, 188 F.2d 768 (3d Cir. 1951) ......................................... 24
*Madison v. Resources for Human Dev., Inc.*,
  233 F.3d 175 (3d Cir. 2000).............................................................................................. 23
*Marshall v. Brunner*,
  668 F.2d 748 (3d Cir. 1982)............................................................................... 36, 37, 38
*Marshall v. Van Matre*,
  634 F.2d 1115 (8th Cir. 1980)....................................................................................... 32, 34
*Martin v. Cooper Elec. Supply Co.*,
  940 F.2d 896 (3d Cir. 1991)....................................................................................... 31, 32, 34
*Martin v. Selker Bros.*,
  949 F.2d………………………………………………………….................................... 16, 28, 30, 31
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ........................................................................................................ 12

*McClanahan v. Mathews*,
  440 F.2d 320 (6th Cir. 1971)..................................................................................... 7

*McComb v. Homeworks' Handicraft Co–op*,
  176 F.2d 633 (4th Cir. 1949) .................................................................................. 35

*McLaughlin v. DialAmerica Mktg., Inc.*,
  716 F. Supp. 812 (D.N.J. 1989) ............................................................................. 14

*McLaughlin v. Richland Shoe Co.*,
  486 U.S. 128 (1988) ........................................................................................ 28, 31

*Mitchell v. Hausman*,
  261 F.2d 778 (5th Cir. 1958)............................................................................ 34, 36

*Monroe v. Beard*,
  536 F.3d 198 (3d Cir. 2008).................................................................................... 7

*Mumby v. Pure Energy Servs. (USA), Inc.*,
  636 F.3d 1266 (10th Cir. 2011).............................................................................. 28

*Newton v. City of Henderson*,
  47 F.3d 746 (5th Cir. 1995).................................................................................... 17

*Parker v. NutriSystem, Inc.*,
  620 F.3d 274 (3d Cir. 2010).................................................................................... 6

*Prise v. Alderwoods Group, Inc.*,
  817 F.Supp.2d 651 (W.D. Pa. Sept. 9, 2011) ....................................................... 21

*Reich v. Bay Inc.*,
  23 F.3d 110 (5th Cir.1994).................................................................................... 11

*Reich v. Brennan Elec. Servs.*,
  1997 WL 164235 (E.D. Pa. Mar. 28, 1997) ............................................ 19, 32, 33

*Reich v. Petroleum Sales*,
  30 F.3d 654 (6th Cir. 1994).................................................................................. 35

*Rosana v. Township of Teaneck*,
  754 F.3d 177 (3d Cir. 2010).................................................................................. 16

*Roy v. Cty. Of Lexington, S.C.*,
  141 F.3d 533 (4th Cir. 1998).................................................................................. 28

*Scalia v. Shalimar Distributors* LLC,
  2020 WL 4335020 (M.D. Pa. July 28, 2020)................................................. 8, 9, 18

*Schamann v. O'Keefe*,
  314 F. Supp.2d 515 (D. Md. 2004) ......................................................................... 8

*Smiley v. E.I. Dupont De Nemours and Co.*,
  839 F.3d 325 (3d Cir. 2016)...................................................................... 23, 28, 29

*Stanislaw v. Erie Indem. Co.*,
  No. CA 07-1078, 2012 WL 517332 (W.D. Pa. Feb. 15, 2012) ................... 15, 20, 21

*Stone v. Troy Construction LLC*,
  935 F.3d 141 (3rd Cir. 2019).................................................................................. 31

*Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*,
  321 U.S. 590 (1944) ................................................................................................ 7

*Thompson v. Real Estate Mortg. Network*,
  748 F.3d 142 (3d Cir. 2014).......................................................................... 10, 27

*U.S. Dept. of Labor v. Cole Enterprises, Inc.*,
  62 F.3d 775 (6th Cir. 1995).................................................................................... 13

*United States Dep't of Labor v. Fire & Safety Investigation Consulting Servs., LLC,*
  2018 WL 2065941 ................................................................................................ 28
*Walling v. Harnischfeger Corp.,*
  325 U.S. 427, 65 S.Ct. 1246, 89 L.Ed. 1711 (1945) ........................................ 24
*Walling v. Youngerman-Reynolds Hardwood Co.,*
  , 325 U.S. 419, 424-25 (1945) (1945) ................................................................ 23
*Walton v. United Consumers Club, Inc.,*
  786 F.2d 303 (7th Cir 1986) ............................................................................... 31
*Williams v. Tri-County Growers, Inc.,*
  747 F.2d 121 (3rd Cir. 1984) ................................................ 13, 14, 30, 32, 33
*Wirtz v. Williams,*
  369 F.2d 783 (5th Cir. 1966) .............................................................................. 13

## Statutes

29 U.S.C. § 202(a) ..................................................................................................... 6
29 U.S.C. § 203(d) .................................................................................................... 11
29 U.S.C. § 203(g) .................................................................................................... 17
29 U.S.C. § 203(r) ....................................................................................................... 1
29 U.S.C. § 203(r)(1) ............................................................................................ 8, 37
29 U.S.C. § 203(r)(2)(A) ....................................................................................... 8, 37
29 U.S.C. § 207 ............................................................................................................ 2
29 U.S.C. § 207(a) .................................................................................................... 17
29 U.S.C. § 207(a)(1) ............................................................................................ 8, 24
29 U.S.C. § 207(a)(2) ............................................................................................... 27
29 U.S.C. § 207(e) .............................................................................................. 23, 28
29 U.S.C. § 211(c) ................................................................................................. 2, 13
29 U.S.C. § 216(b) .................................................................................................... 31
29 U.S.C. § 216(c) .................................................................................................. 1, 3
29 U.S.C. § 217 ............................................................................................................ 1
29 U.S.C. § 255(a) .................................................................................................... 28
29 U.S.C. § 260(b) .................................................................................................... 31
29 U.S.C. § 203(s)(1)(B) ........................................................................................... 37

## Rules

Fed. R. Civ. P. 56(c) ................................................................................................... 7
Rule 56(e) .................................................................................................................... 7

## Regulations

29 C.F.R. § 516.2(a)(10) .......................................................................................... 14
29 C.F.R. § 516.2(a)(7) ............................................................................................. 14
29 C.F.R. § 516.5(a) ................................................................................................. 14
29 C.F.R. § 516.2(a)(8) ............................................................................................. 14
29 C.F.R. § 516.2(a)(10) ..................................................................................... 14, 15

29 C.F.R. § 516.6(a)(1) ........................................................................................ 14
29 C.F.R. § 516.2(a)(9) .................................................................................. 14, 15
29 C.F.R. § 541.602(a) ........................................................................................ 18
29 C.F.R. § 778.109 ............................................................................................. 17
29 C.F.R. § 778.207(b) ................................................................................. 23, 24
29 C.F.R. § 778.209 ............................................................................................. 24
29 C.F.R. § 779.220 ............................................................................................. 10
29 C.F.R. § 785.11 .......................................................................................... 17, 20
29 C.F.R. § 785.13 ............................................................................................... 20
29 C.F.R. § 791.2(a)-(b) ..................................................................................... 27
29 C.F.R. § 791.2(f) ............................................................................................... 8

I.        **Introduction**

Plaintiff, Eugene Scalia, Secretary of Labor, U.S. Department of Labor ("Plaintiff" or the "Secretary") submits this memorandum of law in support of Plaintiff's Motion for Partial Summary Judgment.[1] The undisputed material facts confirm Defendants willfully violated Sections 7 and 11 of the Fair Labor Standards Act ("FLSA" of "the Act") from at least December 14, 2015, through at least August 8, 2020.[2]

Defendants have consistently, and without regard to the FLSA, engaged in a scheme to avoid or diminish their payments due to employees for overtime work. Defendants' pay practices were reckless at best, and undisputedly unlawful. Employees repeatedly and consistently complained regarding Defendants' failure to properly compensate them for all hours worked. Yet Defendants ignored those complaints and continued to engage in unlawful pay practices.

Defendants continue to willfully violate Section 7 of the FLSA. Defendants' payroll records confirm that they fail to pay their employees – essential workers at skilled nursing, rehabilitation, and assisted living enterprise operating throughout western Pennsylvania - at least time-and-one-half their regular rates for hours worked in excess of forty per workweek. Defendants often pay nothing for overtime; fail to compensate employees for working through their lunches and working outside of prescheduled shifts; and fail to pay them for short, compensable workday breaks. When Defendants actually pay for overtime hours, Defendants frequently pay straight time, rather than the required time-and-a-half overtime premium, to

---

[1] Plaintiff moves for partial summary judgment on FLSA liability, liquidated damages, and willfulness, and appropriate injunctive relief pursuant to Sections 16(c) and 17 of the FLSA, 29 U.S.C. §§ 216(c) and 217; but not on the actual damage calculation.

[2] The last time and pay data Defendants supplemented ended on pay period August 8, 2020.

employees who stay late and/or pick up extra shifts throughout the workweek to ensure residents are adequately cared for at the facilities.

Defendants have also violated Section 7 of the FLSA by failing to aggregate hours worked by employees who work at multiple Facility Defendants to satisfy staffing needs, due to Defendants' inability to maintain adequate staffing levels. Relatedly, Defendants have enjoyed the benefits of hourly workers with none of the costs by implementing a pay scheme which uses different payment methods to pay certain employees a capped, fixed amount – with no overtime pay – in weeks in which they work over forty hours. Yet when those same employees work less than 40 hours in a workweek, Defendants pay them by the hour. Defendants also admit to failing to include shift differentials and bonuses when calculating the overtime due to employees. These practices violated and continue to violate Section 7 of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207.

There is also no genuine issue of material of fact that Defendants failed to comply with the FLSA's requirement to maintain and preserve adequate and accurate records of employee wages, hours, and other conditions of employment, in violation of Section 11 of the FLSA, 29 U.S.C. § 211(c). Here, Defendants have failed to satisfy their obligation to maintain (1) accurate records of the daily and weekly hours worked by all employees and (2) complete records of the proper overtime premium pay. Defendants also failed to make their records available for inspection by providing incomplete records to the Administrator during its inspection of Defendants.

Defendants' FLSA violations are willful. Although facility time records show that Defendants' time clocks accurately record employee punch times, Defendants ignore those records. Indeed, Defendants could have avoided certain violations if Defendants paid based upon

2

their own time records. Employees regularly raised concerns about the legality of Defendants' payroll practices, yet Defendants ignored those complaints and continue to ignore such complaints to this day.  Moreover, without explanation, Defendants admit to waiting over a year before taking any actions in identifying or nominally addressing their pay practices- which they knew were unlawful. SOF[3] ¶ 97. Yet still, Defendants have failed to pay any employees for compensation they do not dispute is owed. SOF ¶ 165. Additionally, Defendants continue to violate the Act even after the Wage and Hour Division ("WHD") informed them of their overtime obligations under the FLSA, and even after this instant enforcement action was filed.

Defendants are also liable for liquidated damages under 29 U.S.C. § 216(c). Liquidated damages are mandatory under the FLSA unless the employer can meet its burden of establishing both good faith and reasonable grounds, and Defendants cannot come close to doing so here. Defendants have conceded that they did not make any effort to determine whether their pay practices were compliant with the Act during the relevant period. SOF ¶ 155. This fact alone requires an award of liquidated damages. Defendants have also offered no explanation for their objectively unreasonable failure to properly compensate these essential healthcare workers. Defendants are liable for liquidated damages in an amount equal to the Defendants' liability for overtime back wages.

Defendants' violations warrant injunctive relief, especially given Defendants' continuing failure to comply with the mandates of the Act and the likelihood that Defendants will continue to violate the FLSA. Any assurances of future compliance by Defendants would simply be unreliable. For reasons set forth in detail below, Plaintiff is entitled to judgment as a matter of

---

[3] Statement of Fact ("SOF") is a reference to the Plaintiff's statement of undisputed facts.

law against all Defendants and respectfully requests that his Motion for Partial Summary Judgment be granted.

## II.    Summary of Undisputed Facts

Defendants operate nursing and rehabilitation long-term care facilities throughout western Pennsylvania. SOF ¶ 8. The group is comprised of a large, associated network of separately established LLCs. SOF ¶ 7. Although the Facility Defendants are separate LLCs, Defendants' business activities are related through unified operation, common control and ownership.[4] SOF ¶ 10–11. Defendant Sam Halper has an ownership interest in each of the Facility Defendants and CHMS Group. SOF ¶ 59. Defendant Halper also serves as the Chief Executive Officer ("CEO") for each Facility Defendant where he is actively involved in the day-to-day management of the facilities by coordinating operations and personnel management. SOF ¶ 60–70.

Each facility employs essential healthcare workers: registered nurses, licensed practical nurses, certified nursing assistants, maintenance staff, housekeeping and laundry staff, dietary aides, physical therapists, speech pathologists, social service coordinators, and administrative staff (*e.g.,* receptionists, billing, payroll). SOF ¶ 31.  Each Facility Defendant also has staff who provide

---

[4] As defined in Plaintiff's Undisputed Facts at ¶3, Comprehensive Healthcare Management Services, LLC d/b/a Brighton Rehabilitation and Wellness Center;  Maybrook-C Briarcliff Opco, LLC, d/b/a The Grove at Irwin or The Grove at North Huntington; Maybrook-C Evergreen Opco, LLC, d/b/a The Grove at Harmony; Maybrook-C Kade Opco, LLC, d/b/a The Grove at Washington; Maybrook-C Latrobe Opco, LLC, d/b/a The Grove at Latrobe; Maybrook-C Overlook Opco, LLC, d/b/a/ The Grove at New Wilmington; Maybrook-C Silver Oaks Opco, LLC, d/b/a/ The Grove at New Castle; Maybrook-C Whitecliff Opco, LLC, d/b/a The Grove at Greenville; Monroeville Operations LLC, d/b/a/ Monroeville Rehabilitation & Wellness Center; Cheswick Rehabilitation and Wellness Center, LLC; Mt. Lebanon Rehabilitation and Wellness Center, LLC; Murrysville Operation, d/b/a Murrysville Rehabilitation & Wellness Center; North Strabane Rehabilitation and Wellness Center, LLC; North Strabane Retirement Village, LLC; South Hills Operations LLC, d/b/a South Hills Rehabilitation and Wellness are hereinafter collectively referred to as  "Facility Defendants."

operational support for Facility Defendants: Admissions Directors; Business Office Managers; Human Resource Directors; MDS Coordinators (RNAC); Medical Records Directors; Human Resources Personnel; RN Educators; Social Work Directors; Assistant Directors of Nursing; Assistant Administrators; Dietary Supervisors; Directors of Activities; Directors of Nursing; Housekeeping Supervisors; Maintenance Supervisors; Rehabilitation Coordinators (Director of Rehab); RN Supervisors; and Unit Directors. SOF ¶ 32.  These employees provide direct care and/or coordination within the facilities, with the goal of improving functionality and in an effort for the patients to return to their prior level of function and residence. SOF ¶ 33.

Defendants engaged in widespread and various methods to underpay their employees to evade the Fair Labor Standards Act overtime requirements. SOF ¶ 72, 77, 90, 91, 93, 95, 101–103, 107, 110–144.  Defendants frequently fail to pay employees any compensation for overtime hours worked by failing to pay their employees for any hours worked outside their pre-determined schedules. SOF ¶132 Defendants also fail to pay employees for working time when they automatically deducted a 30-minute lunch break from all employees, even though many employees routinely work during this time. SOF ¶¶ 99–104, 133–135. Even when employees can take some sort of break during that time, work interruptions meant those breaks are typically 20 minutes or less; and, therefore, should be paid under binding Third Circuit precedent. Defendants have also failed to combine hours worked when employees worked at sister facilities during the same 7-day workweek resulting in no payment of overtime. SOF ¶ 130. At other times, Defendants pay employees their straight time rate for overtime hours. SOF ¶ 124. In addition, Defendants pay some employees non-discretionary bonuses and shift differentials but fail to include such bonuses in the employees' regular rate of pay rate used to calculate their overtime rate. SOF ¶¶ 107, 110, 136,139 –141, 150

5

Defendants have also disregarded the FLSA's recordkeeping requirements by not maintaining and preserving records that accurately report the employees' hours worked for those employees who worked overtime that it paid straight time. SOF ¶ 72. Defendants have not kept accurate records of hours worked for employees who work through their lunch breaks and employees who work outside of their pre-determined shift schedule. SOF ¶¶ 90–91, 94–95, 97–98, 100–103, 105. Defendants have also failed to maintain and preserve accurate records of employees' Section 7(e) "regular rate" of pay for those employees to whom they paid shift differentials and other non-discretionary bonuses where they did not properly include those amounts in its records of the employees' regular rates of pay. SOF ¶¶ 107–110. And, Defendants produced incomplete records to the Department of Labor, Wage and Hour Division, during the investigation. In doing so, Defendants violated Section 11(c) by not making its records available for inspection by the Secretary. SOF ¶¶ 72, 94–95.

Defendants have not come forward with any affirmative evidence that they acted in good faith and had reasonable grounds for believing that their pay scheme complied with the Act. SOF ¶¶ 145–165. Defendants concede they did not consult any personnel within the Department of Labor or an attorney to determine whether their compensation and overtime policies, which since at least December 14, 2014, complied with the FLSA. SOF ¶¶ 155, 166.

### III.    Argument

The FLSA is a remedial statute intended to abolish substandard labor conditions, which includes protecting workers from substandard wages and oppressive hours. 29 U.S.C. § 202(a); *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945); *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945);  *Parker v. NutriSystem, Inc.*, 620 F.3d 274, 279 (3d Cir. 2010). The remedial, humanitarian purpose of the FLSA requires its provisions to be interpreted and applied liberally, not in

a narrow or grudging manner. *Brock v. Richardson*, 812 F.2d 121, 123-24 (3rd Cir. 1987) (citing *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597 (1944)).

Summary judgment is warranted if the Court is satisfied that "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322 (1986). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Accordingly, summary judgment will be granted unless a reasonable fact finder could return a verdict for the nonmoving party on the evidence presented. *See Monroe v. Beard*, 536 F.3d 198, 207 (3d Cir. 2008) (quoting *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir.1994)).

Summary judgment is often granted to plaintiffs in FLSA cases when the evidence shows no genuine issue of material fact. *See*, *e.g.*, *Chao v. A-One Medical Services, Inc.*, 346 F.3d 908 (9th Cir. 2003), *cert*. *denied* 541 U.S. 1030 (2004). A party opposing a properly supported motion for summary judgment must establish that a genuine issue of material fact is to be resolved. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248–49 (1986). The adverse party may not rest on mere denials of the pleading of the moving party, but must respond by affidavits or by other evidentiary materials as provided in Rule 56(e) setting forth "specific facts showing that there is a genuine issue for trial." *Disney v. Entenmann's, Inc.,* No. Civ. H-99–2247, 2000 WL 172179, at *4 (D.Md. Nov. 17, 2000) (citation omitted). The non-moving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the non-movant." *Adler v. Walmart Stores, Inc.,* 144 F.3d 664, 671 (10th Cir. 1998). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id*. If the evidence presented by the nonmoving party is merely colorable or is not significantly

probative, summary judgment must be granted. *Schamann v. O'Keefe*, 314 F. Supp.2d 515, 522 (D. Md. 2004) (citation omitted).

A. *Defendants are a Covered, Single Enterprise under the Act, and Therefore, Are Jointly and Severally Liable for All FLSA Violations.*

To be liable under the FLSA for violating its provisions, an individual or entity must be an "enterprise" engaged in commerce. 29 U.S.C. § 207(a)(1). There is no genuine issue of material fact that Defendants' business activities are related and performed through unified operation or common control for a common business purpose, constituting an enterprise under 29 U.S.C. § 203(r)(1); *see also In re Enter. Rent-A-Car Wage & Hour Employment Practices Litig.,* 683 F.3d 462, 467 (3d Cir. 2012). Indeed, Defendants admit the same. SOF ¶10. Defendants also admit to being an enterprise whose employees are engaged in commerce and which had an annual gross volume of at least $500,000.00. SOF ¶ 10. Additionally, each of the named Defendants owned or operated residential skilled nursing, rehabilitation, and assisted living facilities that engaged in the care of the sick, aged, or mentally ill who reside on the premises. SOF ¶ 8–9. See also 29 U.S.C. § 203(r)(2)(A).

The undisputed facts also establish that Defendants are joint employers of the employees on the Second Revised Schedule A. SOF ¶¶ 8, 11–17. Under the FLSA, a court can hold multiple employers "jointly and severally liable . . . for compliance will all of the applicable provisions of the Act, including the overtime provisions, for all of the hours worked by the employee in that workweek" if the nature of their relationship with affected employees suggests they are joint employers. 29 C.F.R. § 791.2(f). "Joint employment exists [w]here the employers are not completely disassociated with respect to the employment for a particular employee and may be deemed to share control of the employee, directly or indirectly, or [are] under common control with another employer." *Scalia v. Shalimar Distributors* LLC, No. 4:18-CV-01642, 2020 WL

4335020, at *4 (M.D. Pa. July 28, 2020); *Davis v. Abington Memorial Hosp.*, 817 F.Supp.2d 556, 563 (E.D.Pa.2011). An employers' authority to (i) hire or fire; (ii) supervise and control conditions of employment to a substantial degree; (iii) determine rates and methods of payment; and (iv) maintain employment records are indicative of joint employment." *In re Enter. Rent-A-Car Wage & Hour Empl. Practices Litig.*, 683 F.3d 462, 468 (3d Cir. 2012); *Shalimar Distributors,* WL 4335020, at *4. Defendants Sam Halper and CHMS Group exercise significant and common control over each of the Facility Defendants. SOF ¶ 10, 11–17, 24–33, 42, 48–70; *see Dole v. Solid Waste Servs., Inc.*, 733 F.Supp. 895, 923 (E.D. Pa. 1989) (" 'The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under [the FLSA] for unpaid wages.' "). Defendant Sam Halper has an ownership interest in each of the Facility Defendants and serves as the Chief Executive Officer ("CEO") for each Facility Defendant. SOF ¶¶ 56, 59–62, 65, 70; *see also supra* discussion at Section II(B). Defendant Sam Halper oversees each Facility Defendants' relationship with Defendant CHMS Group. SOF ¶¶ 62, 63, 65, 67, 69.

Defendants Sam Halper and CHMS Group made final determinations on employees' rate and method of pay at each Facility Defendant. SOF ¶¶ 62, 65. Defendants Sam Halper and CHMS Group negotiated and developed all Facility Defendants Collective Bargaining Agreements ("CBAs) and employee handbooks and determined the final interpretations of their provisions. SOF ¶¶ 62, 67, 68. The CBAs and employee handbooks collectively govern every aspect of compensation, work conditions, and disciplinary actions at the Facility Defendants. SOF ¶¶ 71, 83, 112. Further, Defendants Halper and CHMS Group directed and approved the hiring and firing of employees at each Facility Defendant. SOF ¶¶ 56, 60–62. Indeed, Facility Defendants have limited to no means of directing their day-to-day operations, absent the supervision and approval

9

of Defendants Sam Halper and CHMS Group. SOF ¶¶ 24, 27, 36–38, 43–49, 51–54, 56, 62–69.

In addition to the control Defendants Sam Halper and CHMS Group exercise over Facility Defendants, each Facility Defendant is strongly interrelated to the others. SOF ¶¶ 11–18, 24-29, 33. Therefore, all facilities jointly employ the workers at issue. 29 C.F.R. § 779.220; *see Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 149 (3d Cir. 2014); *Jackson v. Art of Life, Inc.,* 836 F. Supp. 2d 226, 234 (E.D. Pa. 2011); *see also Reich v. Bay Inc*., 23 F.3d 110 (5th Cir.1994) (liability imposed on sister corporation); SOF ¶¶ 11–18, 24–29, 33. As detailed above, each Facility Defendant supports a common business objective – providing care of the sick, aged, or mentally ill who reside on-premise – in furtherance of Defendants' unified business entity. SOF ¶ 33. Facility Defendants also share a common pool of employees who work at different Facility Defendants depending on the staffing needs at each facility. SOF ¶ 25–32. These employees' schedules are coordinated between "corporate" regional representatives who oversaw the operations at each facility and Facility Defendants. SOF ¶ 28. Additionally, Facility Defendants share common, and in certain circumstances, identical and/or overlapping management personnel. SOF ¶ ¶ 25, 26, 29; *See e.g.*, Ex. N-2, Stillwagon Decl. ¶¶ 5-9, Ex. N-3, Matlack Decl. ¶¶ 2, 5, 7, 11. Defendant CHMS Group also retains sole control of various payroll and employment records for the Facility Defendants– including making uniform final decisions regarding employee compensation and benefits. SOF ¶¶ 51–53, 56, 67, 68.  And, relatedly, Facility Defendants have centralization of ownership and unified operation through Defendants Sam Halper and CHMS. SOF ¶¶ 11, 24, 48, 49, 51, 53, 55, 56, 61–69.  For example, Defendants Sam Halper and CHMS Group developed, promulgated, and enforced the payroll policies and procedures that dictated how, when, and how much Defendants would pay employees. SOF ¶¶ 65–68 Facility Defendants have no ability to define the terms of their relationship with Defendants Sam Halper and CHMS

Group. SOF ¶¶ 49–50. These undisputed facts clearly support a finding that Defendant Sam Halper, Defendant CHMS Group, and the Facility Defendants are joint employers as a matter of law under the Act.

B. *Defendant Sam Halper is an Employer under the Act and is Liable for All FLSA Violations*

A person who acts directly or indirectly in the interest of an employer in relation to an employee may be subject to individual liability under the FLSA. 29 U.S.C. § 203(d). Courts in this Circuit also recognize that "overwhelming case law" permits claims for individual employer liability under the FLSA to proceed against a corporate officer with operational control over employees. *Burroughs v. MGC Servs., Inc.*, No. 08-1671, 2009 WL 959961, at *4 (W.D. Pa. Apr. 7, 2009) (citing various cases); *Dole v. Solid Waste Servs., Inc.*, 733 F. Supp. 895, 923 (E.D. Pa. July 14, 1989), *aff'd*, 897 F.2d 521 (3d Cir. 1990) (subsequent history omitted). One court has specifically held that "it cannot be doubted" that an individual is an employer under the FLSA where he served as owner and President of a company and exerted control over his employees. *Castellino v. M.I. Friday, Inc.*, No. 11- 261, 2012 WL 2513500, at *3 (W.D. Pa. June 29, 2012). *See Gusdonovich v. Bus. Info. Co.*, 705 F. Supp. 262, 264 (W.D. Pa. 1985) (holding that defendants were 203(d) employers because they were corporate "officers, and as such, responsible for operating and managing the corporation's day to day affairs). Moreover, a corporate officer who was personally responsible for the practice that violates the act is also liable as an FLSA "employer." *Art of Life, Inc.*, 836 F. Supp. 2d. 226, 235 (E.D. Pa. 2011).

Defendants Sam Halper is an "employer" of the Revised Schedule A employees within the meaning of Section 3(d) of the Act because as the CEO and partial owner of all facilities, he exercised significant operational control over the functions of the Facilities that led to the violations of the FLSA. SOF ¶¶ 59–65. For example, Defendant Sam Halper negotiates and

develops all of the facilities' collective bargaining agreements and employee handbooks and had the final say about the interpretation of the policies. SOF 66–69. Defendant Sam Halper's interpretation of these policies resulted in the Defendants' failure to compensate their employees for working during breaks and failure to properly calculate the non-discretionary bonuses in the regular pay rate, which resulted in overtime and recordkeeping violations. Therefore, there is no dispute that Defendant Sam Halper is a corporate officer who was personally responsible for FLSA violations, which means he must be held liable as an FLSA "employer." *Jackson v. Art of Life, Inc.*, 836 F. Supp. 2d. 226, 235 (E.D. Pa. 2011).

As detailed below, Defendant Sam Halper was and is responsible for hiring and firing, setting the rate of payment, and setting discipline policies. SOF ¶¶ 63–65. Defendant Sam Halper is actively involved in the day-to-day operations of the facilities. He hires and fires employees at the facilities as he has to approve all new hires from Certified Nursing Assistants up the chain to the nursing home Administrators. SOF ¶¶ 63. Defendant Sam Halper strictly enforces the practice of approving new hires as he instructed a Human Resource Director to fire an employee that was hired without Halper's approval. SOF ¶ 64, Ex. N-1, Ifft Decl. ¶ 5. Before Halper approves a new hire, he requires his staff to e-mail him the new hire's wage history, whom the new hire would replace, and the proposed title of the new hire. SOF 64, Ex. N-1, Ifft Decl. ¶¶ 4–5. Therefore, it is undisputed that Halper has the authority and did fire and hire employees.

Halper set up the facilities' rules and conditions of employment, including compensation and benefits. Defendant Sam Halper determines the regular rate of pay for employees, shift differentials, and bonuses. SOF ¶¶ 65. For example, he sent an e-mail to his staff stating "I must approve every change in status/pay." SOF ¶ 65, at HALPER 00913-14. Furthermore, he directs staff to make changes to payments for an individual employee. *Id*. Halper set the policies for pay

rates by setting a ceiling. SOF ¶ 65, Ex. E-2-a, Brighton Dep., Jan. 30, 2020, Tr. 272: 15–25. *See Jackson v. Art of Life, Inc.*, 836 F. Supp. 2d. 226, 235 (E.D. Pa. 2011) (citing *Dole v. Haulaway, Inc.* 723 F. Supp. 274, 286-87 (D.N.J. 1989), *aff'd* 914 F.2d 242 (3d 1990)) (holding that a corporate officer who was responsible for deciding how the affected employees were paid was an employer and jointly and severally liable for unpaid wages). There is no dispute that these actions constitute operational control, thus making Defendant Sam Halper personally liable for the FLSA violations.

Furthermore, Defendant Sam Halper edits and approves discipline policies for time clock violations and instructs his staff to discipline employees who fail to follow Halper's rules. SOF ¶¶ 64. Defendant Sam Halper settles pay disputes matters as Defendant, CHMS Group, does not process payroll corrections without Halper's approval or consultation. SOF ¶¶ 67–69. *See, e.g., Donovan v. Agnew*, 712 F.2d 1509, 1514 (1st Cir. 1983)(CEO of a corporation who has a significant ownership interest in it, controls significant functions of business, determines salaries and makes hiring decisions qualifies as an employer under the FLSA); *accord U.S. Dept. of Labor v. Cole Enterprises, Inc.*, 62 F.3d 775, 778 (6th Cir. 1995). Defendant Sam Halper is responsible for setting and approving policies for a significant aspect of the business that directly and indirectly impacted the employees. Therefore, Defendant Sam Halper, meets the definition of an employer under Section 3(d) of the Act and should be held jointly and severally liable for violations of the Act with the other Defendants.

C.  *Defendants Violated Section 11 of the FLSA by Failing to Create and Maintain Accurate Time and Pay Records.*

Section 11(c) of the Act, 29 U.S.C. § 211(c), requires employers to "maintain accurate records to ensure that all workers are paid the minimum wage for every hour worked." *Williams v. Tri-County Growers, Inc.*, 747 F.2d 121, 128 (3rd Cir. 1984) (citing *Wirtz v. Williams*, 369 F.2d 783, 785 (5th Cir. 1966)). The burden is on the employer to keep accurate wage and time records.

*Dole v. Solid Waste Serv., Inc.*, 733 F. Supp. 895, 924 (E.D. Pa. July 14, 1989). "The obligation is the employer's and it is absolute." *Caserta v Home Lines Agency, Inc.*, 273 F.2d 943, 946 (2d Cir. 1959), *see also McLaughlin v. DialAmerica Mktg., Inc.*, 716 F. Supp. 812, 822 (D.N.J. 1989) (explaining that the duty to maintain records as required by § 11(c) "is imposed upon the employer").

Under the applicable regulations, pay records must include hours worked per day and week, records of the amounts paid to each employee per week, premium overtime, as well as the daily starting and stopping time of individual employees. 29 C.F.R. §§ 516.2(a)(7), 516.2(a)(8), 516.2(a)(9), 516.6(a)(1); *Tri-County Growers, Inc.*, 747 F.2d at 127. The FLSA also requires employers to maintain and preserve for each individual employee records for each pay period that show the total deductions from wages paid. 29 C.F.R. § 516.2(a)(10). Employers must maintain these types of payroll records for at least three years. 29 C.F.R. § 516.5(a). As described below, Defendants failed to maintain the adequate required records.

Defendants' time data and pay records fail to accurately record the time employees spent working during what were supposedly lunch breaks and fail to accurately record the length of any breaks employees were actually able to take. SOF ¶¶ 72, 91, 94–95, 98, 101, 103. Defendants knew that their employees were working during their breaks but automatically deducted thirty minutes without compensating them for that work, or for any remaining actual break time, which would also be compensable if it was 20 minutes or less. SOF ¶¶ 19–23, 73, 77–78, 91, 95, 99–100, 103. Defendants admit that their time and pay data records should show four punches for each employee, but the record reflects two punches for most employees. SOF ¶¶ 94–95, 97–98. Defendants knew that their failure to keep records favored them, but failed to perform an audit to

14

determine if the employees have a complete set of punch-ins and punch-outs. SOF ¶¶ 99, 101–102, 105.

Defendants attempt to shift their statutory burden to keep records to their employees by putting the onus on them to report missed lunch breaks. SOF ¶ 96. Defendants  has a policy of permitting employees to submit time adjustment sheets, but that policy is  not enforced. SOF ¶¶ 81–82, 86–89. *Chao v. Gotham Registry, Inc.,* 514 F.3d 280, 290-91 (2d Cir. 2008) (employer liable for overtime because they could have enforced their pre-approval policy or disciplined employees for not following the policy, but they did not). And in fact, Defendants commonly disregards  time adjustments requests by employees and discourages their submission. SOF ¶¶ 103, 105–106, *See e.g.* Ex. N-39, Bainbridge Decl. ¶ 9. See *Stanislaw v. Erie Indem. Co.,* No. CA 07-1078, 2012 WL 517332, at *4 (W.D. Pa. Feb. 15, 2012) ("[W]hen an employer's actions squelch truthful reports of overtime worked, or where the employer encourages artificially low reporting, it cannot disclaim knowledge." (citing *Allen v. Board of Public Education for Bibb County,* 495 F.3d 1306, 1314 (11th Cir.2007).

Defendants' recordkeeping violations go much further. They fail to keep adequate records of the total premiums for overtime as required by 29 C.F.R. §§ 516.2(a)(9). SOF ¶¶ 72, 140. Defendants do not  keep accurate records of employees' regular rate of pay, as they do not include non-discretionary bonuses in the calculation of employees' regular rate. When Defendants did actually attempt to pay overtime, which was rare, this resulted in the underpayment of overtime pay due. SOF ¶¶ 107–110, 128, 130, 140, See Ex. W-1–4, W-7. That Defendants continued to use the same payroll system a year after the DOL concluded its investigation and never corrected this problem is further evidence of willfulness. SOF 97. See *Camesi v. Univ. of Pittsburgh Medical*

*Center,* Civ. A. No. 09-85J, 2009 WL 1361265, at * 4 (W.D. Pa. May 14, 2009). These aforementioned violations appear to be ongoing even today. SOF ¶¶ 72, 94–95, 99–100.

With large periods of time records missing and inaccurate payroll records, it is evident that Defendants have not fully come into compliance. It is well established that an employer's failure to keep records is not a defense to liability, nor is it a barrier to employees recovering their rightfully owed back wages. *See Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687 (1946). The law does not penalize employees, nor enrich employers, for the employer's failure to comply with their recordkeeping responsibilities under the FLSA. *Id.; Martin v. Selker Bros.,* 949 F.2d at 1297–98 (in the absence of adequate employer records, the Third Circuit allows the employee or the Secretary to submit sufficient evidence from which violations of the Act and the amount of an award may be reasonably inferred); *De Rose v. Eastern Plastics, Inc.*, 134 F. Supp. 805, 807–09, 12 (W.D. Pa. 1955) (employee's statement permitted a reasonable inference of damages).

Once an employee establishes that the employer's records are inadequate, the employee need only introduce sufficient evidence to show the amount and extent of work "as a matter of just and reasonable inference." *Mt. Clemens Pottery*, 328 U.S. at 687; *see also Selker Bros., Inc.*, 949 F.2d at 1297. "[T]he burden of any consequent imprecision [in damages] must be borne by the employer." *Rosana v. Township of Teaneck*, 754 F.3d 177, 188 (3d Cir. 2010) (citations and internal quotation marks omitted). Once the plaintiff presents evidence of uncompensated work, "the burden of proof shifts to the defendant to provide evidence of the exact amount of time worked or evidence that otherwise negates the inference to be gleaned from the plaintiff's evidence." *Alers v. City of Philadelphia*, 919 F. Supp. 2d. 528, (E.D. Pa. 2013); *Mt. Clemens Pottery*, 328 U.S. at 687-88. If the employer fails to produce such evidence, as Defendants have throughout this matter, the Court should then award damages to the affected employees "even though the result be only

approximate." *Mt. Clemens Pottery*, 328 U.S. at 688. Plaintiff has moved for partial summary judgment, reserving the issue of damages for trial. However, for purposes of this motion, there is no genuine issue of material fact that Defendants violated Section 11(c) of the FLSA.

    D. *Defendants Violated the FLSA Overtime Requirements*
        1. *Defendants Violated Section 7 By Failing to Pay Any Overtime Wages*

The FLSA requires employers to compensate employees for all time worked. See 29 U.S.C. § 207(a); 29 C.F.R. § 778.109. The FLSA defines the term "employ" as "to suffer or permit to work." 29 U.S.C. § 203(g). An employer's actual knowledge that the employee is performing work is not required because the employer's "constructive knowledge" of the work is enough to hold that it suffered or permitted employees to work on its behalf. *See Holzapfel v. Town of Newburgh*, 145 F.3d 516, 524 (2d Cir. 1998); 29 C.F.R. § 785.11 ("Work not requested but suffered or permitted is work time . . . [and an] employer who knows or has reason to believe that [the employee] is continuing to work [means that] the time is working time."). Thus, even if an employee fails to claim overtime hours, the employer must still pay overtime when the employer knows or has reason to know of the overtime work. *Holzapfel*, 145 F.3d at 524; *Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995); *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981). Here, there is abundant, undisputed evidence that Defendants repeatedly and willfully failed to compensate their employees for all hours worked by:  (1) failing to pay all employees for time outside of their pre-determined schedules; (2) failing to pay supervisors and assistant supervisors for time working beyond forty hours a week; and (3) failing to pay all employees when they were required to work during meal breaks.

        a. *Defendants Utilized a Fluctuating Pay Scheme to Avoid Paying Any Overtime to Supervisors and Assistant Supervisors*

Defendants' records confirm, and employees reported, that Defendants have not only failed

to pay some employees the premium overtime rate for hours worked over 40 in a workweek, they pay them nothing for those overtime hours. SOF ¶¶ 107, 124–127, 131, 133, 144, 145.[5] Defendants altered their payment method, depending on the number of hours worked during the workweek. SOF ¶ 90, 125–127; *cf.* 29 C.F.R. § 541.602(a)("an exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or *hours worked*)(emphasis added); *see e.g. Shalimar Distributors,* WL 4335020, at *3–4 (M.D. Pa. July 28, 2020). When these employees work less than forty hours in a workweek, Defendants pay them an hourly rate; but, when these employees work over forty hours, Defendants cap their pay at a fixed amount. SOF ¶ 127. The fixed amount the employees receive is the equivalent to the hourly rate times 40. Thus, Because Defendants do not pay these employees any wages, let alone an overtime premium, for hours worked over 40 in a workweek, they have violated Section 7 of the FLSA.

> b. *Defendants Failed to Pay All Employees for Any Overtime Hours Outside of Their Predetermined Schedule*

Not only do Defendants cap the amount paid to certain employees who work in more than 40 hours per week, Defendants have also failed to pay all employees for any hours worked outside their pre-determined schedules. SOF ¶¶ 90, 91, 131, 132. Defendants admit that their timekeeping system was programmed to only count time that employees were clocked in within the employee's preset schedule as compensable hours worked. SOF ¶¶ 93, 132. Any time for which employees clocked in, but did not fall within the preset parameter was not counted as hours worked and not

---

[5] Admissions Directors; Business Office Managers; Human Resource Directors; MDS Coordinators (RNAC); Medical Records Directors; Human Resources Personnel; RN Educators; Social Work Directors; Assistant Directors of Nursing; Assistant Administrators; Dietary Supervisors;  Directors of Activities; Directors of Nursing; Housekeeping Supervisors; Maintenance Supervisors; Rehabilitation Coordinators (Director of Rehab); RN Supervisors; and Unit Directors

compensated. *Id*. Essentially, the software made the punch-in and punch-out times irrelevant to compensation. SOF ¶ 132. For example, if an employee has a regular work schedule of 3:00 p.m. to 11:00 p.m., Monday through Friday, that employee is only paid for those scheduled hours. When an employee works additional hours, Defendants only paid them for their regularly scheduled hours. SOF ¶¶ 90, 104, 106, 132, 160, 161. Because Defendants, of course, had access to all of the time punches, they were well aware that employees were working beyond their scheduled shifts.  Defendants were well aware that their employees worked additional hours outside of their predetermined schedule due to the chronic short staffing at the facilities. SOF ¶¶ 18, 19, 21. In fact, supervisors regularly requested employees to pick up additional shifts to cover for those shortages. SOF ¶¶ 18, 19, 21, 136–138. Additionally, employees complained that they were not being compensated for additional hours worked. SOF ¶104. Defendants suffered or permitted employees to work these overtime hours; and, are liable for back wages for unpaid overtime hours worked off the clock in excess of forty hours per workweek.

c. *Defendants Automatically Deducted 30 minutes From Every Employee Although They Knew Employees Worked Through Lunch Breaks*

It is undisputed that Defendants automatically deduct 30-minute meal breaks from employees' total hours worked each day, even though Defendants know employees work during that period. SOF ¶¶ 73, 77, 100, 133–135. Consequently, employees are not paid for all the hours worked - including overtime for those weeks in which they worked more than forty hours. SOF ¶123.

The FLSA emphatically places the burden of compensating employees for all hours worked on the employer, not the employee. *See Reich v. Brenaman Electrical Service*, Civ. No. 95-3737, 1997 WL 164235, *4 (E.D. Pa. Mar. 28, 1997); *Camesi* Civ. A. No. 09-85J, 2009 WL 1361265, at * 4 (W.D. Pa. May 14, 2009) ("The law is clear that it is the employer's responsibility, not its

employees', to ensure compensation for work 'suffered or permitted"). The regulation addressing this issue provides:

> In all such cases it is the duty of management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so.

29 C.F.R. § 785.13. Indeed, when employers have constructive knowledge of work being performed, they are liable for compensation – even when they "have reason to believe that [their] employee is working beyond his shift." *Erie Indem*. Co., No. CA 07-1078, 2012 WL 517332, at *4 (W.D. Pa. Feb. 15, 2012) (quoting 29 C.F.R. § 785.11).

Despite this requirement, Defendants' records show that they have a pattern and practice of automatically deducting 30 minutes of unpaid time for lunch – regardless of whether the employee was actually able to take a *bona fide* meal period. SOF ¶¶ 73, 77, 93, 99 –106, 133–135. For example, for James Bango, a Dietary Aide at Brighton, the time data shows that on August 12, 2015, he punched out at 3:24 and punched back in 3:41, less than 20 minutes later (i.e. a total of 13 minutes off the close). Ex. W-8, Bango; Report – Breaks. But Defendants deducted 30 minutes from his time, by adding an additional 17 minutes to bring his total break time to 30 minutes. *Id*. Thus, their time card total is a half-hour less than it should be for that day. Ex. W-8, Bango; Report – Breaks. A review of a sample of time cards of other employees during the relevant period reveals the same practice for all employees identified in the Second Revised Schedule A. *Id*. Bango; Report – Breaks; SOF ¶¶ 99–106, 133–135.

Employees routinely work through breaks in order to meet state staffing requirements and complete tasks related to providing patient care. SOF ¶¶ 18–21, 77. This has resulted in a reduced break period or completely prevented the employees from taking a duty-free break. SOF ¶¶ 18–

21, 77, 133–135. Employees confirm that they are not relieved from their work duties longer than twenty minutes during their shifts due to the chronic short staffing at the facilities. SOF ¶¶ 18–21. The employees are required to spend their breaks engaged in activities for the benefit of the employer. SOF ¶¶ 18–21; *see also* Ex. N-10, Isenberg Decl. ¶ 8 (patient's lights were constantly on during her break, which must be answered); Ex. N-11, Thomas Decl. ¶ 11; Ex. N-14, Rosales Decl. ¶ 12 (had a working-break in order to complete her work); Ex. N-23, Bizon Decl. ¶¶ 13, 15 (had to document patients' charts during break and had to remain by the computer in the rehab gym). Indeed, it is undisputed that Defendants – including direct line supervisor and assistant supervisors – are aware that employee breaks are subject to frequent interruptions. SOF ¶ 22, 23, 147. Yet, despite this knowledge, Defendants admit to making an automatic deduction of thirty minutes. SOF ¶¶ 73, 78, 100, 135; *see also* Ex. E-4-b: CHMS Grp. Dep. II, August 12, 2020, Tr. 130: 13–25, 131: 11:25, 132: 1–4 (When an employee takes a 20-minute break the Defendants automatically rounds the break to 30 minutes).

Moreover, although Defendants had knowledge of the additional hours employees worked due to the employees' inability to take *bona fide* breaks, they did not take any steps to enforce a policy against the unauthorized overtime or discipline employees who have failed to comply with their policy. SOF ¶¶ 75, 88–90, 103-106; *see e.g.* Ex. E-8-a, Monroeville Dep., Jan. 29, 2020, Tr. 55:1–25 (employees who do not fill out an overtime form are not subject to discipline); *see also Chao v. Gotham Registry, Inc.*, 514 F.3d 290-91, (2d Cir. 2008) (finding employer liable for "unauthorized" overtime hours worked by nurse employees), cite with approval by *Prise v. Alderwoods Group, Inc.*, 817 F.Supp.2d 651 (W.D. Pa. Sept. 9, 2011) (J. Conti); *see also Erie Indem. Co*., 2012 WL 517332 at *4, (W.D. Pa. 2012); *Doyle v. Wayne Mem'l Hosp.,* No. CV 3:18-1784, 2020 WL 753196, at *9 (M.D. Pa. Feb. 13, 2020). Instead, Defendants continue to auto-

deduct thirty minutes. SOF ¶ 100. Defendants knew that the employees were working and instituted a time adjustment policy, yet have failed to follow this policy even when employees consistently submitted the forms. SOF ¶ 100, 103–106. At some Facility Defendants, supervisors actually asked employees to stop submitting time adjustment sheets. SOF ¶20, 100, 103. Ex. N-39, Bainbridge Decl. ¶ 9 (" When I did fill out the time adjustment form, [management], told me that [they] did not want all the time adjustment forms in [their] mailbox. Nothing was ever done about it and the Grove at Irwin refused to pay me for working during lunch breaks.")

Defendants' employees have performed hundreds of hours of uncompensated work with Defendants' knowledge, and, in fact, tacit approval of this free work. The undisputed record demonstrates Defendants violated Section 7 of the Act from at least December 14, 2014, to the present by failing to include interrupted breaks, during which employees were "suffered or permitted to work" as compensable time.

2. *Defendants Violated the FLSA Section 7 by Failing to Include All Remunerations in the Regular Rate*

Defendants admit that they repeatedly failed to pay the correct overtime rates by failing to include "shift differentials" and bonuses in the "regular rate" when calculating overtime payments. SOF ¶¶ 136–144; Ex. E-4-b: CHMS Grp. Dep., August 12, 2020, Tr. 74–76: 1–14, 79: 1–5, 17–21 (admitting that Defendants did not include bonus payments and shift differentials in their payroll calculations until June 25, 2019, because their payroll system was not in compliance with the FLSA requirements). The FLSA requires employers to pay their employees one and one-half times the employees' "regular rate" for hours worked in excess of the forty hours in a workweek. 29 U.S.C. § 207(a)(1). Section 7(e) of the Act defines the regular rate as "all remuneration for employment paid to, or on behalf of, the employee" except for specific types of payment listed under subsection (e)(1) through (e)(8). 29 U.S.C. § 207(e).

The regular rate "'is not an arbitrary label chosen by the parties; it is an actual fact, 'that by 'its very nature must reflect all payments which the parties have agreed shall be received regularly during the workweek, exclusive of overtime payments.'" *Smiley v. E.I. Dupont De Nemours and Co.*, 839 F.3d 325, 330 (3d Cir. 2016)(citing *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424-25 (1945)). Shift differential payments and non-discretionary bonuses constitute "remuneration for employment" paid to the employee and must be included in the regular rate if they do not fall within any of the statutory exclusions. *Jones v. Does 1-10*, 857 F.3d 508, 514 (3d Cir. 2017); 29 U.S.C. § 207(e); 29 C.F.R. § 778.207(b); WHD Fact Sheet # 54 (Rev. July 2009).

Because the FLSA's default rule is that the regular rate includes all remuneration, the burden falls on the employer to establish that the remuneration in question falls under an exemption and should not be included in the regular rate. *See Madison v. Resources for Human Dev., Inc.*, 233 F.3d 175, 183, 187 (3d Cir. 2000) (noting that there is an FLSA presumption to include remuneration and that it is the employer's "significant" burden to show an exclusion applies); *see also*, 839 F.3d at 330 (recognizing that it is an employer's burden of establishing that an exemption applies.'"). Here, none of the exclusion apply. Therefore, under the FLSA, all of the premiums should have been included in the employees' "regular rate" of pay.

> a.   *Defendants Failed to Include Shift Differentials and Premiums to Calculate Overtime Payments*

There is no dispute that Defendants excluded shift differentials and shift premiums from the regular rate used to calculate overtime payments. SOF ¶¶142–144, 150; Ex. W-7: Report – Shift Differentials. Pursuant to the CBAs negotiated between Defendants and the applicable unions, shift differentials are offered to certain employees to work undesirable shifts, i.e. evening, weekend, and holiday shifts. SOF ¶ 142. Shift premiums are paid to employees working in certain

units, generally personnel who provided direct, clinical care to residents. SOF ¶ 142. The shift differentials Defendants paid are less than one-half of the employee's regular rate, generally ranging between $0.12 and $5.00 per hour. SOF ¶ 143; Ex. W-7, Report – Shift Differentials. Defendants have not included the shift differentials when calculating the regular rate. SOF ¶ 144. Indeed, Defendants concede that the shift differential should be included in the regular rate of pay for overtime purposes. *Id.*  Thus, it is undisputed that Defendants have violated Section 7 of the FLSA by failing to include shift differentials in determining the regular rate. 29 C.F.R. § 778.207(b); *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 468-69, (1948) (holding that the regular rate of pay must include shift differentials).

> b.   *Defendants Did Not Include Bonuses When Calculating Overtime Payments*

Likewise, the undisputed facts demonstrate Defendants paid non-discretionary bonuses that must be included in employees' regular rates for purposes of calculating overtime compensation. 29 U.S.C. § 207(a)(1) & (e); 29 C.F.R. § 778.209; *Walling v. Harnischfeger Corp.*, 325 U.S. 427, 431, 65 S.Ct. 1246, 89 L.Ed. 1711 (1945) (Incentive bonuses are generally considered part of an employee's regular rate for overtime purposes); *Landaas v. Canister Co.,* 91 F. Supp. 620, 624 (D.N.J. 1950), aff'd, 188 F.2d 768 (3d Cir. 1951) (Bonuses measured by hours worked pursuant to contract or promise causing employees to expect such payments regularly should be included in "regular rate of pay."). Here, in addition to shift differentials, Defendants advertise and promise lump sum, fixed bonuses to all Second Revised Schedule A employees who have been willing to pick up additional shifts. SOF ¶¶ 107–110, 136–141, 150, Ex. E-4-b: CHMS Grp. Dep., August 12, 2020, Tr. 74–76: 1–14, 79: 1–5, 17–21 (admitting that Defendants did not include bonus payments and shift differentials in their payroll calculations until June 25, 2019, because their payroll system was not in compliance with the FLSA requirements). Defendants

have provided information about those bonuses, and how employees could qualify for them, in advance of actually paying the bonuses. SOF ¶¶ 136–141. Employees have been aware of the bonuses and requirements for such bonuses. SOF ¶ 136. That is not surprising; it would make no sense to pay a bonus intended to incentivize employees to work more without telling employees about it in advance (thus creating the incentive). The bonuses were offered to induce employees to work additional hours. SOF ¶ 138.

The facts on these issue are not in dispute and the record does not allow for any conclusions other than Defendants violated Section 7 of the Act. Indeed, Defendants have admitted to failing to include such bonuses when calculating employees' regular rates for purposes of calculating overtime compensation. SOF ¶¶ 140, 141.  As such, Defendant must be ordered to include the aforementioned premiums in determining their employee's regular rate of pay, and to make them whole for failing to include them in paying them FLSA overtime.

3. *Defendants Violated Section 7 By Failing to Pay The Proper Rate of Overtime For All Hours Worked*

There are at least two other ways in which the undisputed evidence shows Defendants failed to pay their employees the proper overtime premium rate on those occasions where they actually paid something for overtime hours.

a. *Defendants Paid Straight Time for All Overtime Hours to Employees*

Defendants admit that, at times, they have paid straight time for overtime hours to employees listed in the Second Revised Schedule A that worked more than 40 hours during the relevant period. SOF ¶¶ 122–124. This compensation practice typically occurred with employees who provided direct clinical care and employees who provided operational support at the facilities. SOF ¶ 2, 33; Ex. J-3: Exempt List; Ex. W-6: Report – Straight Time Paid for Overtime Defendants' own records confirm that on the occasions they actually paid employees for hours over 40, they

25

paid them at the straight-time rate. SOF ¶ 122; *see also* Ex. W-6: Report – Straight Time Paid for Overtime.

For example, Gretchen Herzeberger, an hourly employee at Greenville, received an hourly rate of $34.00 per hour in workweeks when she did not work overtime. Ex. W-10, Herzeberger; Ex. J-3, Exempt List. Thus, her regular, non-overtime rate was $34.00 per hour. When she did work overtime, Defendants' pay records confirm that she still received $34.00 per hour for all hours worked, including overtime hours. For the pay period ending October 22, 2016, Gretchen Herzeberger worked a total of 85.65 hours.[6] Her gross pay for this pay period was $2,912.10 (85.66 hours x $34), meaning she was paid $34.00 per hour -- her regular rate -- for all hours worked, including overtime. If Defendants had paid her an overtime premium, she should have received $51.00 per hour (i.e. $34 x 1.5) for hours worked over 40; but she was not. Ex. W-10, Herzeberger; Ex. J-3, Exempt List. There are numerous other examples of this straight time for overtime violations on the face of Defendants' own records. Ex. W-6: Report – Straight Time Paid for Overtime. Employees also confirmed this practice of paying straight time for overtime. SOF ¶¶ 123, 124. As Section 7 of the FLSA requires time-and-a-half for all hours in excess of forty per week, employees were underpaid by at least fifty percent of their hourly wage for all such hours.

b.  *Defendants Failed to Combine Hours Worked to Determine Overtime*

Defendants also failed to combine hours worked when employees worked at sister facilities during the same 7-day workweek resulting in no payment of overtime. SOF ¶¶ 30, 92, 123, 124, 128-130; W-4: Report – Multi-Facility Weeks (Employees). The FLSA requires that all of an employee's hours, including hours worked at a different location, be counted toward when

---

[6] Ms. Herzeberger was an Occupational Therapist.

determining overtime pay. 29 C.F.R. § 791.2(a)-(b); *see Thompson v. Real Est. Mortg. Network*, 748 F.3d 142, 149 (3d Cir. 2014). Even if an employee is performing two different kinds of work with different pay rates, the employee's hours must be combined for overtime pay purposes. 29 U.S.C. § 207(a)(2). Here, Defendants admit to not combining employees hours worked when calculating the overtime compensation due to employees. SOF ¶130.

Defendants admit that some of their employees worked more than eight hours per day and more than forty hours per week when they worked at multiple sister facilities in a workweek. SOF ¶ ¶ 30, 128, 130; *see also* Ex. W-4: Report – Multi-Facility Weeks (Employees). With the assistance of the consultants, the Administrators at each Facility Defendant coordinate and set multi-facility employee work schedules at each facility. SOF ¶¶ 17, 24–30. Defendants admit to not aggregating hours worked when their employees worked across sister facilities. SOF ¶¶ 92, 130, 164. Lisa Shuey, a non-exempt RN, worked at Irwin and Latrobe, but Defendants failed to aggregate her hours and pay her overtime when she worked over 40 hours in each workweek.  For example, in the workweek ending July 4, 2020, Ms. Shuey worked 88.73 hours at Latrobe. That same workweek, Ms. Shuey also worked 19.1 hours at Irwin. But, Defendants paid Ms. Shuey by two separate paychecks. Ex. W-9, Shuey; *see also* SOF ¶ 130. Each paycheck only reflected the hours Ms. Shuey worked at each facility respectively, rather than combining the hours worked Ex. W-9, Shuey; *see also* SOF ¶ 130. Ms. Shuey should have been paid 27.83 of hours of overtime based upon the combined hours. In other words, Defendants did not properly calculate work time to ensure compliance with FLSA requirements. This practice occurred with all employees who worked at multiple facilities in the same workweek. As a result, Defendants did not pay employees who worked at multiple facilities in the same workweek the correct amount of overtime. The facts on this issue are not in dispute.

E. *Defendants' Overtime Violations Were Willful*

There is no genuine dispute that Defendants' violations of the FLSA were willful and the three-year statute of limitations applies. While the general statute of limitations for minimum wage and overtime violations under the FLSA is two years, an employer's willful conduct extends the back wage period by an additional year. 29 U.S.C. § 255(a). A violation of the FLSA is considered willful if the employer knew that its conduct was prohibited by the Act or showed reckless disregard for the legality of the conduct. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). Reckless disregard can be shown through "action entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Mumby v. Pure Energy Servs. (USA), Inc.*, 636 F.3d 1266, 1270 (10th Cir. 2011). This knowledge requirement can be met by showing that the employer knew the conduct might be illegal, but failed to make a good faith effort to investigate its legality. *See Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1296 (3d Cir. 1991). An employer "may not simply remain blissfully ignorant of FLSA requirements" by taking "an ostrichlike" approach to the Act." *United States Dep't of Labor v. Fire & Safety Investigation Consulting Servs., LLC*, 2018 WL 2065941 at *9 (quoting *Roy v. Cty. Of Lexington, S.C.*, 141 F.3d 533, 548–49 (4th Cir. 1998).

Defendants have acted with – at minimum – reckless disregard sufficient to establish that the overtime violations are willful as a matter of law. The undisputed facts demonstrate that Defendants - across every level of the enterprise, from Sam Halper and CHMS Group down to the individual facilities - have been aware of their legal obligations to pay overtime and comply with the FLSA. SOF ¶¶ 146–167. Defendant Halper admitted to having previous involvement with wage and hour lawsuits and being educated by attorneys regarding the FLSA requirements. SOF ¶ 151. He has also learned about the FLSA's overtime requirements through his many years of

28

experience as an Administrator and owner.  SOF ¶ 151. Defendant CHMS Group also knew of its obligations under the FLSA to pay for all hours worked and to pay employees at a time and a half rate for all hours worked over 40 in a workweek to non-exempt. SOF ¶¶ 124, 143, 148, 149. Additionally, the various facilities owned by Defendants held FLSA trainings and knew of their legal obligations under the Act to pay for all hours worked and to pay the correct overtime rate. SOF ¶¶ 12, 154, 160. Indeed, Defendants were experienced, competent, and knowledgeable regarding FLSA requirements.

Yet with this understanding, Defendants exercised perpetual "indifference toward the requirements imposed" by the Act by failing to systematically resolve the ongoing pay issues. SOF ¶¶ 145, 158, *Garcia v. Tenafly Gourmet Farms, Inc.*, 2012 WL 715316, *2 (D.N.J. 2012) (internal citations omitted); *Abbey v. United States,* 106 Fed. Cl .254, 265 (Fed. Cl. 2012). Defendants knew of the persistent pay issues, as they were regularly discussed via email. SOF ¶160.  Nonetheless, Defendants failed to resolve or address any of the repeated complaints. SOF ¶ 161.

Further, it is also undisputed that Defendants knew of the numerous employee complaints about missing hours, missing overtime, and not being paid for working through lunches. SOF ¶¶ 97, 103, 106, 160–165. Indeed, countless employees complained regarding compensation issues, some of these complaints resulting in formal union grievances, with others being reported to their supervisors. SOF ¶¶ 160–162. Nevertheless, numerous employees stated that the issues were never adequately resolved while they worked there. SOF ¶ 161*; See e.g.*, Ex. N-8, Martis Decl. ¶ 17; Ex. N-6, Shadle Decl. ¶ 10; Ex. N-1, Lantzy Decl. ¶ 9; Ex. N-4, Langham Decl. ¶ 12. Notably, Defendants have accepted liability for the ongoing pay violations. But still, Defendants have failed to exercise a modicum of due diligence in addressing any of the prevalent systematic pay issues. SOF ¶ 165.

29

Other evidence confirms what employees report: Defendants have failed to correct their problematic pay practices, even after being made aware by the Department of Labor their pay practices violated the Act. SOF ¶¶ 55, 147, 157–159, 163.  This is further evidence of willfulness. *See Herman v. Palo Group Foster Home, Inc.*, 183 F.3d 468, 474 (6th Cir. 1999); *Art of Life, Inc.*, 836 F. Supp. 2d 226, 237-238 (E.D. Pa. 2011); *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999) (finding willfulness where employer "could easily have inquired into" relevant compliance issues after learning of their illegality). Indeed, during the investigation, the DOL provided documents to Defendants that clearly stated their obligations under the FLSA. SOF ¶ 149, 150, 152-154. Defendants' continued violation of the FLSA after receipt of these documents and after the filing of this matter is clear evidence of willful conduct. To date, Defendants have not conducted any formal payroll audits to resolve the systematic payroll issues. SOF ¶¶ 101, 105,159. Defendants have not globally addressed any of the pay practices they know to be unlawful. SOF ¶¶ 159, 162. Indeed, Defendants have not taken any steps to make the employees whom they know were affected by their pay practices whole. SOF ¶ 165.

Rather, Defendants have "waited for the resolution of this action" to address some of the issues, leaving other unlawful, identified pay practices in place; and have not paid any employees for the known violations – even while admitting to liability. SOF ¶150, 165; *see e.g*. CHMS Grp. Dep., Aug. 12, 2020 Tr. 109: 2–24, 135: 20–137: 6. Indeed, much like the defendant in *Selker* who knew of ongoing FLSA violations and made no effort to resolve them, Defendants here expressed "evident indifference" towards their FLSA obligations. *Selker*, 949 F.2d at 1296. By turning a blind eye to the persistent pay violations, Defendants allow them to persist. *Stone v. Troy Construction LLC*, 935 F.3d 141, 145 (3rd Cir. 2019). Based on the undisputed facts, Defendants plainly failed to determine their legal obligations and showed "reckless disregard for the matter of

whether its conduct was prohibited by statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. at 133 (1988). Defendants' failure to pay overtime was willful.

F.   *Defendants are Liable for an Equal Amount of Liquidated Damages*

Section 16(b) of the Act provides that "[a]ny employer who violates the provisions of [S]ections 6 and 7…shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation…and an additional equal amount in liquidated damages." 29 U.S.C. § 216(b). Liquidated damages are not punitive, but compensatory – they compensate employees for losses they might suffer by reason of not receiving their lawful wage at the time it was due. *See Martin v. Cooper Elec. Supply Co.,* 940 F.2d 896, 907 (3d Cir. 1991). "Double damages are the norm, single damages the exception[.]"*Walton v. United Consumers Club, Inc.,* 786 F.2d 303, 310 (7th Cir 1986). Thus, an award of liquidated damages is mandatory unless the defendants establish both that: (1) the acts or omissions committed were in good faith and (2) they had reasonable grounds for believing that the acts or omissions were not in violations. 29 U.S.C. § 260(b). *See Cooper Elec. Supply,* 940 F.2d at 907.

In challenging the appropriateness of liquidated damages, the employer bears the "plain and substantial" burden of establishing both good faith and reasonable grounds for the violation. *See Cooper Elec. Supply,* 940 F.2d at 907. "In the absence of such proof, a district court has no power or discretion to reduce an employer's liability for the equivalent of double unpaid wages." *McClanahan v. Mathews*, 440 F.2d 320, 322 (6th Cir. 1971); *see also Brock v. Claridge Hotel and Casino*, 846 F.2d 180 at 187; *Tri-County Growers, Inc.*, 747 F.2d at 129.

To carry its burden of establishing good faith, an employer must first show that it took affirmative steps to ascertain the Act's requirements, but nonetheless, violated its provisions. *Cooper Elec. Supply,* 940 F.2d at 908. The employer must prove "an honest intention to ascertain

and follow the dictates of the Act." *Marshall v. Brunner*, 668 F.2d 748, 753 (3d Cir. 1982). Next, the "reasonableness" requirement requires that the employer had objectively reasonable grounds for believing it was in compliance. *Id.* Merely showing that the employer did not act intentionally, had good intentions, or was ignorant of the law is not sufficient to avoid liability for liquidated damages once a violation of the law is found. *Brennan Elec. Servs.,* Civ. No. 95-3737, 1997 WL 164235, at *8. (E.D. Pa. Mar. 28, 1997) (citing *Tri-County Growers, Inc*., 747 F.2d at 129). An employer's burden of proof is thus "a difficult one to meet." *Brock v. Wilamowsky,* 833 F.2d 11, 19 (2d Cir. 1987).

There is no evidence that Defendants made a good faith effort to comply with the FLSA. Defendants admit that they did not consult with the Department of Labor before the Wage and Hour's investigation to ascertain the FLSA's requirements and determine if they were in compliance. SOF ¶ 155. Defendants admit that they were fully aware of the FLSA's requirements, SOF ¶ 146–154, but they did not take affirmative steps to ensure that they were in compliance as they assumed their payroll system was in compliance despite a plethora of system-wide employees' complaints. SOF ¶¶ 97, 107, 156–165. These facts negate any argument Defendants may make that they took active steps to comply with the FLSA, but failed despite their efforts. *Cooper Elec. Supply,* 940 F.2d at 908. Defendants' Regional Human Resource Directors stated Defendants' actions were endemic as Defendants took active steps to undercut employees' hours to avoid paying overtime, dismissing efforts by individual Human Resource directors or managers to address employees' issues, and refusing to follow their own policy of honoring time adjustment sheets. SOF ¶¶ 106, *See e.g.*, Ex. N-3, Matlack Decl. ¶¶ 12, 22, Ex. N-1, Ifft Decl. ¶¶ 8, 14.

Defendants cannot rely on their assumption that they complied with the FLSA, or argue that the violations were inadvertent, because ignorance is insufficient to overcome the imposition

of the liquidated damages. *See Brenaman Electrical Service*, Civ. No. 95-3737, 1997 WL 164235, *8 (E.D. Pa. Mar. 28, 1997). On the contrary, it is well established that an employer has a duty to inquire to determine whether it is in compliance. "Reasonable good faith is not shown when an employer does not inquire about the law's requirements…" *Keeley v. Loomis Fargo & Co.,* 183 F.3d 257, 270 (3d Cir. 1999) (citing *Williams v. Tri-County Growers, Inc.*, 747 F.2d 121, 129 (3rd Cir. 1984). Defendants not only made no effort to comply, they did the opposite: they received an avalanche of complaints, ignored them, and took active steps to avoid complying with the FLSA. Even if the employees had not complained about the violations, "[t]he fact that an employer has broken the law for a long time without complaints from employees does not demonstrate the requisite good faith required by statute." *Tri-County Growers*, 747 F.2d at 129 (internal citation omitted). The undisputed facts demonstrate that Defendants cannot claim that they had reasonable grounds that they were in compliance with the FLSA because they failed to inquire about the endemic issues regarding compensation and record keeping. Therefore, Defendants did not act in good faith.

Defendants'' failure to satisfy the "good faith" prong by itself requires the assessment of liquidated damages. See *Brenaman Electrical Service*, Civ. No. 95-3737, 1997 WL 164235, *8 (E.D. Pa. Mar. 28, 1997) (stating since defendants' actions were not in good faith the court needs not reach the reasonable objective prong question), In any case, defendants also cannot satisfy the other mandatory prong. No reasonable employer could conclude that the pay practices engaged in by Defendants were lawful. Certainly, no reasonable employer would conclude, or even argue, that practices such as paying straight time for overtime to everyone (even employees conceded to be non-exempt), ignoring hours worked beyond the scheduled shift, and not paying employees for working during their break, are lawful. The reasonable grounds prong is an *objective* one, *Brunner*,

668 F.2d 748, 753 (3d Cir. 1982), and is difficult to meet. *Brock v. Wilamowsky,* 833 F.2d 11, 19 (2d Cir. 1987). Defendants have conceded that they have violated the FLSA when they stated that their payroll system was not configured to calculate the FLSA requirements. SOF ¶¶ 97, 107, 157. Regardless of what actions they did or did not take to come into compliance, their practices were in no sense objectively reasonable; liquidated damages are therefore mandatory. *See Cooper Elec. Supply Co.,* 940 F.2d 896, 907-910 (3d Cir. 1991) (addressing the objectively reasonable prong, reversing the district court's refusal to award liquidated damages, and finding even following an industry standard is not reasonable grounds to overcome mandatory liquidated damages). Therefore, Defendants are jointly and severally liable for liquidated damages.

G.  *Defendants' Violations of the FLSA Warrant Injunctive Relief*

Section 17 of the Act permits a court to enjoin violations of the FLSA. The question of whether an injunction should be granted is within the sound discretion of the trial court. *Dole v. Haulaway, Inc*., 723 F. Supp. 274, 288 (D.N.J. 1989), *Donovan v. Rockwell Tire & Fuel, Inc.*, No. C-79—498, 1982 WL 2120, at *9 (M.D.N.C. Mar. 30, 1982) (citations omitted). Ordinarily, a court should grant prospective injunctive relief, even if the employer is in present compliance unless it is convinced that there is not a reasonable probability of a recurrence of the violations. See, e.g., *Marshall v. Van Matre*, 634 F.2d 1115, 1118 (8th Cir. 1980); *Mitchell v. Hausman*, 261 F.2d 778, 780 (5th Cir. 1958).

In deciding whether to issue a prospective injunction, courts have considered (1) the employer's previous conduct, (2) its current state of compliance, and (3) the dependability of any assurances that it will comply with the FLSA in the future. *Acosta v. Cent. Laundry, Inc.*, No. CV 18-190, 2019 WL 3413514, at *15 (E.D. Pa. July 29, 2019), (citing *Reich v. Petroleum Sales*, 30 F.3d 654, 657 (6th Cir. 1994). A court should normally issue an injunction against the commission

of future violations when there is a finding of clear violations of the FLSA. *McComb v. Homeworks' Handicraft Co–op*, 176 F.2d 633 (4th Cir. 1949) (overturning a district court's denial of injunctive relief against Defendants who had willfully violated the FLSA). Injunctive relief is warranted in this case because of Defendants' failure to come to compliance, egregious previous conduct, and the absence of any reason to believe Defendants will comply with the FLSA in the future.

First, injunctive relief is warranted because Defendants have not fully come into compliance with the FLSA. As of August 12, 2020, Defendants admitted that they have not stopped automatically deducting 30-minute breaks from employees. SOF ¶ 100. Defendants' produced pay and data records show that Defendants are still violating the FLSA by paying employees straight time instead of overtime, not paying overtime at all, and are still not including shift differentials in the pay rate. SOF ¶¶ 72, 107, 110, 123–124, 131,144. *See e.g.*, Ex.W-1–7, Reports – Defendants' time and pay data records. Furthermore, Defendants failed to configure their payroll system to comply with the requirements of the FLSA for at least one year after the Department of Labor's Wage and Hour Division informed them that they were not in compliance with the FLSA. SOF ¶ 97. Even with this delayed configuration of the payroll system, Defendants have not come to compliance with the FLSA. The court should grant injunctive relief because the probability of future violations by Defendants is not just high, it is virtually certain. *See, e.g., Marshall v. Van Matre*, 634 F.2d 1115, 1118 (8th Cir. 1980); *Mitchell v. Hausman*, 261 F.2d 778, 780 (5th Cir. 1958)* (the court should grant injunctive relief unless it is convinced that there is not a reasonable probability of a recurrence of the violations in the future). Given their history, Defendants' contention that they have come into compliance with the FLSA in June 2019 is dubious because their current pay data records demonstrate otherwise. Therefore, injunctive relief against the

Defendants is justified and necessary.

Second, Defendants violated the FLSA in a knowing and intentional manner. Defendants made automatic break deductions from employees' pay and time regardless of whether employees took a break or not. SOF ¶¶ 73, *e.g.* Ex. E-4-b, CHMS Grp. Dep., Aug. 12, 2020, Tr. 11: 11–24; 77, 91, 97, 100–101, 106, 152. Defendants knew the dictates of the FLSA but did not pay the premium overtime. Defendants did not add the shift differentials and other non-discretionary bonuses to the employees' pay rate and overtime, which drastically reduced the amount the employer was required to pay, all to the detriment of the employees. SOF ¶¶ 99, 149–154, 160. This blatant pattern of misconduct justifies injunctive relief to help ensure future employees do not suffer the same harm.

Given Defendants' indifference to the FLSA requirements, the Department of Labor's guidance, and their employees' repeated complaints about improper pay, injunctive relief is warranted. Simply put, Defendants' pay practices were a mess, and evidence a combination of malfeasance and misfeasance. There is evidence of both an intentional effort to underpay employees, and willful ignorance when it comes to maintaining a functional pay system: sloppy and incomplete records and a lack of any concerted effort to fix known problems. This is a compliance history that cries out for injunctive relief. Moreover, such relief would not be burdensome to Defendants; rather, injunctive relief requires only that Defendants not violate the law. *Hodgson v. Approved Pers. Serv.*, 529 F.2d 760, 764 (4th Cir. 1975) ("An injunction in [an FLSA] case is not a burdensome thing; it simply requires the employer to obey the law."). Accordingly, injunctive relief against the Defendants is justified and necessary to effectuate the FLSA's broad humanitarian goals of protecting workers from employers who have violated the FLSA.

## IV.    Conclusion

Defendants willfully and repeatedly violated, and continue to willfully violate, the provisions of Sections 7 by failing to pay an overtime premium for all hours worked. Defendant also failed to maintain and preserve adequate and accurate records of employee wages, hours, and other conditions of employment. For all the reasons set forth above, Plaintiff respectfully submits that this Court grant its Motion for Partial Summary Judgment and find that: (1) Defendant is a covered enterprise under the FLSA engaged in the operation of an institution primarily engaged in the care of the sick, the aged or the mentally ill or defective who reside on the premises of such institution under 29 U.S.C. §§ 203(r) and 203(s)(1)(B) of the FLSA; (2) Corporate Defendants and Sam Halper were employers of all individuals listed on the Second Revised Schedule A and are jointly, and severally liable for the violations; (3) Defendant is liable for violating the recordkeeping provisions of Section 11(c) of FLSA; (4) Defendant is liable for violating the overtime provisions of Section 7 of the FLSA; (5) Defendants' violations were willful as they were aware that employees worked more than 40 hours in a week without proper compensation; (6) Defendant is liable for liquidated damages under the FLSA; and (7) Defendant's continued violations warrant injunctive relief.

Respectfully Submitted,

Post Office Address

Kate S. O'Scannlain
Solicitor of Labor

U.S. Department of Labor
Office of the Regional Solicitor
201 12th Street South, Suite 401
Arlington, VA 22202

Oscar L. Hampton III
Regional Solicitor

Adam Welsh
Wage and Hour Counsel

*/s/ John Strawn*
John Strawn
Senior Trial Attorney

*/s/ Ryma Lewis*
Ryma Lewis
Senior Trial Attorney

202.693.9393 (voice)
202.693.9392 (fax)
lewis.ryma@dol.gov

*/s/ Mohamed Seifeldein*
Trial Attorney
Mohamed Seifeldein

## CERTIFICATE OF SERVICE

I hereby certify that a correct copy of the foregoing Memorandum In Support Of Plaintiff's

Partial Motion For Summary Judgment  was filed electronically and is available for viewing and

downloading via the ECF system for the United States District Court for the Western District of

Pennsylvania. I further certify that a copy of the same was served on counsel for Defendants as

listed below via the ECF system:

Stephanie Peet, Esq.
PA I.D. No. 91744
stephanie.peet@jacksonlewis.com

Joanna M. Rodriguez, Esq.
PA I.D. No. 318853
joanna.rodriguez@jacksonlewis.com
Jackson Lewis, P.C.

1601 Cherry Street, Ste. 1350
Philadelphia, PA 19102
Telephone:  (267) 319-7818
Facsimile:   (215) 399-2249

*/s/ Ryma Lewis*
Attorney
