**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MARTIN J. WALSH, | ) | |
| SECRETARY OF LABOR, | ) | |
| UNITED STATES DEPARTMENT OF LABOR, | ) | Civil Action No. 2:18-cv-01608-PJP |
| | ) | |
| Plaintiff, | ) | |
| | ) | Honorable William S. Stickman |
| v. | ) | |
| | ) | |
| COMPREHENSIVE HEALTHCARE | ) | |
| MANAGEMENT SERVICES, LLC, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S WITNESS LIST - PHASE I**

Pursuant to the Court's Pretrial Order dated July 26, 2021 (Dkt. 235), Plaintiff Martin J.

Walsh, Secretary of Labor, United States Department of Labor, submits the following witnesses

with offer of proofs explaining the substance of the witness' testimony.[1]

**Plaintiff will call:**
1.  SEIU Representatives
    <u>Witnesses</u>
        1) Matthew Yarnell
        2) Carlos Rivera

<u>Offer of Proof</u>: The following witnesses, who at all times relevant hereto, are the
representatives for the SEIU, have personal, first-hand knowledge regarding Defendants'
business organization, operations, and compensation policies and practices. These witnesses
will testify at that trial that:
    1) Defendants (1) Maybrook-Kade, (2) Murrysville Rehabilitation & Wellness Center,
       (3) North Strabane Retirement Village, (4) North Strabane Rehabilitation and
       Wellness Center, LLC, (5) Mt. Lebanon Rehabilitation & Wellness Center, (6)
       Brighton Rehabilitation and Wellness Center, (7) Cheswick Rehabilitation and
       Wellness Center, LLC, (8) Maybrook-C Evergreen Opco, LLC, (9) Maybrook-C

---

[1] The following offers of proof should be considered in a fashion consistent with Fed. R. Evid.
403. *See Hines vs. Consolidated Rail Corp.*, 926 F.2d 262 (3d Cir. 1991) (finding that excluding
evidence at the pre-trial stage is an extreme measure).

Silver Oaks Opco, LLC, (10) Maybrook-C Briarcliff Opco, LLC, and (11) Monroeville Rehabilitation & Wellness Center, operate nursing and rehabilitation long-term care facilities throughout western Pennsylvania, which are parties in a collective bargaining agreement with the SEIU.

2) Defendant Sam Halper has an ownership interest in each of the above named, SEIU Facility Defendants and serves as the Chief Executive Officer ("CEO") for each Facility Defendant.

3) Defendant Sam Halper negotiated and developed all SEIU Facility Defendants Collective Bargaining Agreements ("CBAs") and determined the final interpretations of their provisions after the acquisitions and on a continual basis.

4) CBAs and Employee Handbooks collectively govern every aspect of compensation, work conditions, and disciplinary actions at each SEIU Facility Defendant.

5) SEIU bargaining unit members made numerous complaints (formal and informal) and grievances regarding Defendants' collective and individual failures to comply with meal break policies, bonuses, and shift differentials.


2. Employee Witnesses

Testimony from some or all of the following current or former employees of Defendants. In providing the following names, Plaintiff makes no representation that the U.S. Department of Labor ("DOL") spoke to any specific persons during the course of the investigation, nor does Plaintiff otherwise identify any of them as having provided information to DOL. Providing these names is not intended to be a waiver of the informer's privilege with respect to the identity of any person who was interviewed or provided information during the course of the investigation. Plaintiff reserves the right to supplement this list with names of witnesses who are otherwise protected by the informer's privilege.

A. Management Witnesses

1. Aaron Humphrey
2. Alexandra Agostinone
3. Amanda Bair
4. Anthony Molinaro
5. Ashley Ifft
6. Bradley Alan Berardinelli
7. Brenda Hays
8. Brittany Edgerton
9. Cami Dzak
10. Catherine Matlack
11. Celine David
12. Chastity Wagner
13. Christopher Richmond
14. Corey Gilbert
15. Dana May
16. Dawn Hall
17. Dayna Wilson
18. Diana Hunter
19. Eva Hamilton
20. Gloria O'Brien
21. Gule Kahn
22. Haddessah Devereaux
23. Harry Ross
24. Harvey Speer

| | |
|---|---|
| 25. Heather Russell | 40. Melanie Adley |
| 26. James Martis | 41. Mellodie Kaszowski |
| 27. Janice Kelly | 42. Mordechai Singer |
| 28. Janice Rosales | 43. Paul Fulton |
| 29. Joseph Menachem | 44. Sean Richards |
| 30. Kim Myers | 45. Shannon Daum |
| 31. Kimberly Bell | 46. Steven Hefter |
| 32. Kimberly Wetzel | 47. Tracey Sojak |
| 33. Kristine Smith | 48. Tracie Kern |
| 34. Lois Snyder | 49. Tyffini Balor |
| 35. Mark Vollmer Sr. | 50. Vickie Carlisle |
| 36. Martha Stillwagon | 51. Victoria Cripps-Sauer |
| 37. Mary Jean Pratt | 52. Virginia Adams |
| 38. Mary Popovich | 53. Virginia Moody |
| 39. Megan Swan | |

<u>Offer of Proof</u>: The following witness, who at all times relevant hereto, were employed by Defendants as facility level management and have first-hand knowledge of Defendants' centralized operations, practices, and procedures and Sam Halper's significant operational control and involvement with each Facility Defendant. These roles included: Admissions Directors; Business Office Managers; Human Resource Directors; MDS Coordinators (RNAC); Medical Records Directors; Human Resources Personnel; RN Educators; Social Work Directors; Assistant Directors of Nursing; Assistant Administrators; Dietary Supervisors; Directors of Activities; Directors of Nursing; Housekeeping Supervisors; Maintenance Supervisors; Rehabilitation Coordinators (Director of Rehab); RN Supervisors; and Unit Directors. These witnesses will testify at trial that:

1) Defendants operate nursing and rehabilitation long-term care facilities throughout western Pennsylvania through a large, associated network of separately established LLCs related through unified operation, common control, and ownership.

2) Defendants regularly act in concert with one another, by sharing control over, among other things, facility operations, human resource management, and payroll/accounting functions.

3) Facility Defendants are commonly owned and have centralization of ownership and unified operation through Defendants Sam Halper and CHMS.

4) Corporate Defendants have overlapping officers, directors, executive, and managers, including but not limited to: Defendant Sam Halper, Ben Halper, Ephram Lahasky, David Gast, Benjamin Lando, Joshua Farkovits, Benjamin Landa, Abraham Peckham, John Reichard, Doug Hoffman, David Ferraro, and Margaret Zapor.

5) Defendant Halper has an ownership interest in each of the Facility Defendants and Defendant CHMS Group.

3

6) Defendant Halper serves as the Chief Executive Officer ("CEO") for each Facility Defendant.

7) Defendant Halper consistently exercises significant operational control over Defendant CHMS Group and the Facility Defendants.

8) Defendant Halper operated and managed the day-to-day operations of Defendants, including, but not limited to, hiring and firing employees, setting the rate of payment, and setting discipline policies.

9) In consultation with, and at the direction of Defendants CHMS Group and Defendant Halper, Facility Defendants plan and host meetings and trainings that employees are required to attend.

10) Facility Defendants share supplies and equipment with one another.

11) Facility Defendants' computer software and telephone systems are interconnected.

12) Defendants regularly discuss balancing patient census with staffing needs at the Facility Defendants, including coordinating resident referrals and coordinating personnel staffing.

13) Defendants CHMS Group and Sam Halper identify personnel needs across Facility Defendants, and offer positions to employees without traditional formalities, such as requiring an application, performing interviews, or requiring the completion of new hire paperwork, or facility orientations.

14) Facility Defendants share common, and in certain circumstances, identical and/or overlapping management personnel.

15) Defendants hired Multi-Facility (PRN or "as needed") employees for the express purpose of having them work at two or more Facility Defendants.

16) Multi-Facility employees' schedules are coordinated by Defendant CHMS Group's regional representatives, who oversee the operations at each Facility Defendant.

17) From at least January 2015 to at least January 2019, Defendant CHMS Group not only maintained exclusive payroll and accounting responsibility for Facility Defendants, but also had a division that that was responsible for managing and overseeing the day-to-day operations of the Facility Defendants through "Consultants."

18) Defendant CHMS Group's regional consulting team served as the bridge between Facility Defendants, and actively supported and required communications between each facility's administrators and department heads to ensure successful operations of the company as a whole.

19) In January 2019, Defendant CHMS Group reorganized their business structure and separated the consultant division from the company to form a separate, subsidiary entity: WPAC.

20) Despite the separation of the consulting division, the Consultants have and continue to support and manage the day-to-day operations of the Facility Defendants, including determining the rate and method of pay for employees, hiring and firing employees, monitoring staffing levels, formulating recruitment plans, overseeing facility relationships with contractors and outside entities, training and supervising employees, developing and promulgating performance standards, developing and directing work practices and policies, and developing and directing the implementation of payroll policies.

21) Facility Defendants have no autonomy to control the terms and scope their relationships with Defendant CHMS Group; only Defendant Sam Halper could amend the terms and scope of such relationships.

22) Defendants Sam Halper and CHMS Group negotiated and developed all Facility Defendant CBAs and employee handbooks and determined the final interpretations of their provisions after the acquisitions and on a continual basis.

23) Defendant CHMS Group has been responsible for interpreting the CBAs and employee handbooks when issues arose at each Facility Defendant.

24) Defendants Sam Halper and CHMS Group developed, implemented, and enforced the payroll policies and procedures that dictated how, when, and how much Defendants would pay employees at each Facility Defendant.

25) Defendants CHMS Group and Halper manage and control all payroll functions and human resource decisions regarding health benefits, PTO time, FMLA, and rates of pay for the Facility Defendants.

26) Defendant CHMS Group retains sole control of various payroll and employment records for the Facility Defendants, including making uniform, final decisions regarding employee compensation and benefits.

27) When disputes arise between Facility Defendants and Defendant CHMS Group over interpretations of the CBAs and/or the employee handbooks, Defendant CHMS Group's interpretation prevailed; only Defendant Sam Halper could override Defendant CHMS Group's interpretations.

28) Facility Defendant supervisors and assistant supervisors do not have the authority or responsibility to enforce any policies related to pay or hours worked.

29) Facility Defendant supervisor and assistant supervisors do not have final decision-

making or the independent authority to discipline employees or set pay rates.

30) Facility Defendant Activities Directors/Director of Activities, RN Educators, Dietary Supervisors, Human Resource Personnel do not have the independent authority to hire or fire employees or make other changes to employment status.

31) Due to the amount of oversight by Defendants CHMS Group and Sam Halper, there is little ability for Facility Defendant Director of Social Services/Social Work Directors, Admissions Directors, Human Resource Directors, Human Resource Personnel, MDS Coordinators (RNAC), Medical Records Directors, Activities Directors, Business Office Managers to exercise discretion or independent judgment in the performance of their duties or oversight of their departments.

32) Facility Defendant Admissions Directors, Human Resource Directors, Human Resource Personnel, MDS Coordinators (RNAC), Medical Records Directors, Activities Directors, Business Office Managers, RN Educators, Directors of Nursing Assistant Directors of Nursing, Assistant Administrators, Dietary Supervisors, Housekeeping Supervisors, Maintenance Supervisors, RN Supervisors, Unit Directors do not have authority to set corporate level policy regarding any business function.

33) Facility Defendant Directors of Social Services, Social Work Directors, Admissions Directors, Human Resource Directors, Human Resource Personnel, Medical Records Director, Activities Directors, RN Educators, Directors of Nursing Assistant Directors of Nursing, Directors of Nursing, RN Supervisors, Unit Directors do not oversee a budget and are required to seek approval for purchases.

34) Facility Defendant Human Resource Directors, Human Resource Personnel, Business Office Manager, RN Educators, Directors of Nursing Assistant Directors of Nursing Assistant Administrators, Dietary Supervisors, Directors of Nursing, Housekeeping Supervisors, Maintenance Supervisors, RN Supervisors, Unit Directors are unable to commit Defendants to any contracts without express oversight and approval by Defendants CHMS Group and Sam Halper.

35) Facility Defendant Human Resource Directors, Human Resource Personnel, Business Office Managers, RN Educators, Directors of Nursing Assistant Directors of Nursing, Assistant Administrators, Directors of Nursing, Housekeeping Supervisors and Maintenance Supervisors, RN Supervisors, Unit Directors are unable to correct time punches without the oversight and approval of Defendant CHMS Group.

B.  Clinicians and Operational/Administrative Support
    Witnesses:
    1.  Angela Banner
    2.  Bobbijo Faylor
    3.  Carol Bevelheimer
    4.  Chilufya Nibbs
    5.  Christopher Anastsio
    6.  Consuella McDonald
    7.  Dametria Archangel
    8.  David Fleming
    9.  Debra Huston
    10. Dellesha Edwards

11. Dennis Garrett
12. Emily Aletto
13. Heather Warner
14. Janice Rosales
15. Jeffrey Ivory
16. Joseph Menachem
17. Karena Sfakianakis
18. Kelcie Toth
19. Kim Myers
20. Kimberly Bell
21. Kimberly Wetzel
22. Kristine Smith
23. Lisa Bizon
24. Lisa Platko
25. Lois Snyder
26. Mark Vollmer Sr.
27. Martha Stillwagon
28. Mary Jean Pratt
29. Mary Popovich
30. Megan Swan
31. Melanie Adley

32. Melleeke Felder
33. Mellodie Kaszowski
34. Michael Barnhart
35. Michael Thomas
36. Mordechai Singer
37. Orill Moses
38. Paul Fulton
39. Salvatore Boffoli
40. Sean Richards
41. Shannon Daum
42. Simplice Noyja
43. Steven Hefter
44. Suzanne Gaston
45. Sylvester Carter
46. Tracey Sojak
47. Tracie Kern
48. Tyffini Balor
49. Vickie Carlisle
50. Victoria Cripps-Sauer
51. Virginia Adams
52. Virginia Moody

<u>Offer of Proof</u>: The following witnesses, who at all times relevant hereto, were employed by the Facility Defendants, have first-hand knowledge of Defendants' centralized operations, practices, and procedures through their interactions with each Facility Defendant, CHMS Group, and Defendant Sam Halper's significant operational control and involvement with each Facility Defendant. These witnesses' roles included: registered nurses, licensed practical nurses, certified nursing assistants, maintenance staff, housekeeping and laundry staff, dietary aides, physical therapists, speech pathologists, social service coordinators, and administrative staff (e.g., receptionists, billing, payroll). These witnesses will testify at trial that:

1) Defendants CHMS Group and Sam Halper identify personnel needs across Facility Defendants and offer positions to employees without traditional formalities, such as requiring an application, performing interviews, or requiring the completion of new hire paperwork, or facility orientations.

2) Defendants treated clinicians and operational staff as a common pool available to all Facility Defendants, who work at multiple Facility Defendants during the relevant period of investigation.

3) Defendants permitted employees to transfer from one Facility Defendant to another, sometimes retaining the same job title and duties, other times transferring into new roles.

4) Defendants CHMS Group and Sam Halper retained and exercised authority to hire and fire Facility Defendants' employees by, among other things: (a) identifying Defendants' personnel needs; (b) extending formal and informal offers of employment; (c) retaining final approval over proposed hires; (d) setting employee compensation, including rates of pay, and; (e) determining employee classifications under the Fair Labor Standards Act ("FLSA" or "Act").

5) Defendants CHMS Group and Sam Halper promulgated work rules, assignments, and conditions of employment. They repeatedly overruled or preempted day-to-day decisions by the witnesses and other Facility Defendant management employees, which prevented them from exercising discretion or independent judgment in their assigned roles. This control extended to, among other things, the Facility Defendants' ability to: (a) conduct business functions; (b) create operational budgets or make related purchases without prior approval; (c) commit to contracts; (d) correct employee time records; (e) authorize supplemental compensation to employees working additional hours; (f) make and implement human resource decisions, including those concerning health benefits, PTO, and FMLA leave; (g) implement payroll policies and practices; (h) administer payroll; (i) correct payroll records; (j) perform other administrative functions, such as accounting, accounts receivable, and accounts payable, and; (k) set and interpret corporate policy, such as that contained in CBAs and employee handbooks.

6) Defendants CHMS Group and Sam Halper exerted significant control over the Facility Defendants' daily operations by, among other things: (a) maintaining regular and close supervision of the Facility Defendants' operations; (b) coordinating schedules for employees who simultaneously worked for multiple Facility Defendants; (c) overriding or preempting routine decisions by Facility Defendant personnel; (d) maintaining custody of, and limiting access to, the Facility Defendants' time and payroll records, and; (e) overseeing adjustments to time records and preventing the Facility Defendants from making any such adjustments without approval.

**Plaintiff may call:**
1. Department of Labor Investigators
   <u>Witnesses</u>:
   1. Cara Merritt
   2. Crystal Bibri
   3. Cynthia Decos
   4. Daniel Avolia
   5. David Daube
   6. David Havrilla
   7. Dawn Young
   8. Desiree Woodard
   9. James Taylor
   10. Justin Williams
   11. Laurie Mangicaro
   12. Mario Bombardiere
   13. Michael Shuey
   14. Miller R. Honeycutt
   15. Nicholas Barron
   16. Rocco Angelo
   17. Tameka Burrell
   18. Tanisha Russ
   19. Tracy Coon
   20. Tricia DeSanti-Boehm

<u>Offer of Proof</u>: The following witnesses, who at all times relevant hereto, were investigators with the Wage and Hour Division of the United States Department of Labor ("WHD"), have personal, first-hand knowledge regarding the employment relationship between Defendants and Schedule A employees. These witnesses will testify at trial that:

1) WHD investigated Defendants' compliance with the Act, beginning in December 2014, within the normal course of business in the performance of their functions as WHD investigators.

2) WHD interviewed employee witnesses and contemporaneously prepared written statements from information obtained directly from these employees about current and former employees. The employee statements address the employment relationship between Defendants and their employees. Specifically, the statements pertain to employees'(1) job titles; (2) circumstances of their hiring; (3) job duties and responsibilities; (4) interaction with and supervision by Defendants; (4) rates and methods of pay; (5) other terms and conditions of their employment. Such statements also address Defendants' business organization and operations.

3) WHD obtained documents from informants that included, but were not limited to: (a) the establishment and maintenance of Defendants' corporate structure; (b) Defendants' performance of residential skilled nursing, rehabilitation, and assisted living facilities services within the Commonwealth of Pennsylvania, including revenue and profit earned therefrom; (c) an overview of Defendants' workforce, including organizational charts for each Defendant and records identifying management and other key personnel; (d) Defendants' solicitation, interview, hiring, training, oversight, discipline, and termination of employees; (e) Defendants' classifications of employees for compensation and other purposes, including those made related to the Act; (f) Defendants' maintenance of formalized policies and practices, including Employee Handbooks; (g) Defendants' actually implemented policies and practices; (h) Defendants' administration of human resource, payroll, and accounting functions; (i) Defendants' payroll and timekeeping records; (j) Defendants' inability or unwillingness to provide sufficient resources to conduct normal operations; (k) Defendants' response (or lack thereof) to employee complaints, including those related to lack of operational resources, employees' inability to take breaks during working hours, incorrect time records, and missing compensation, and; (l) Defendants' maintenance of (or failure to maintain) operational records, including payroll and timekeeping records; (m) the extent and nature of Defendant Sam Halper's and Defendant CHMS Group's authority, control, and involvement in Defendants' operations.

4) WHD also obtained documents and other information indicating Defendant CHMS Group's significant control over the Facility Defendants' operations. These documents showed, among other things, CHMS Group's control over the Facility Defendants' payroll, ability to correct employee time and pay records, and ability to set and implement corporate policy as to employee leave.

5) WHD gathered information about Defendant Halper's involvement in Defendants' day-to-day operations. This included employee hiring and firing, setting employee compensation, centralizing control over multiple aspects of Defendants' operations, setting work rules and other conditions of work, and directing employees' work.

2. Facility Defendant 30(b)(6) Representatives:
<u>Witnesses</u>:

1) John Reichard: New Wilmington, Brighton, Maybrook-Whitecliff, Maybrook-Overlook, Maybrook-Evergreen, Maybrook – Silver Oaks (New Castle)

2) Thomas Lowden: Murrysville, Cheswick, Maybrook-Briarcliff, Monroeville, Maybrook-Latrobe

3) David Ferraro: South Hills, Maybrook-Kade, North Strabane Retirement Village, North Strabane Rehabilitation and Wellness, Mt. Lebanon

<u>Offer of Proof:</u> The following witnesses, who at all times relevant hereto, were corporate representatives, regional consultants and/or senior level regional management, have first-hand knowledge regarding the facts and circumstances of Defendant Sam Halper's 203(d) status and the joint employment status of Defendants, and are expected to testify, at trial, that:

1) Facility Defendants are limited liability corporations, duly organized under the laws of the Commonwealth of Pennsylvania.

2) Facility Defendants are residential skilled nursing, rehabilitation, and assisted living facilities that engaged in the care of the sick, aged, or mentally ill who reside on the premises throughout western Pennsylvania.

3) Facility Defendants are staffed by centralized clinicians and operational support staff that provide direct care or coordination services within the large, integrated network of Facility Defendants.

4) Defendants have been an enterprise engaged in commerce or in the production of goods for commerce.

5) Defendants have had an annual gross volume of sales made or business done in an amount not less than $500,000.00 during the relevant period of period.

6) Corporate Defendants are commonly owned and have an overlap in ownership.

7) Corporate Defendants have overlapping officers, directors, executive, and managers, including but not limited to: Defendant Sam Halper, Ben Halper, Ephram Lahasky, David Gast, Benjamin Lando, Joshua Farkovits, Benjamin Landa, Abraham Peckham, John Reichard, Doug Hoffman, David Ferraro, and Margaret Zapor.

8) Defendants employ and/or employed the individuals listed in Second Revised Schedule A as hourly workers.

9) Defendants hired Multi-Facility (PRN or "as needed") employees for the express purpose of having them work at two or more Facility Defendants.

10) Defendants Sam Halper and CHMS Group exercise significant authority and control over Facility Defendants.

11) Facility Defendants' payroll functions are managed and controlled by Defendant CHMS Group.

12) Defendant CHMS Group was formed for the purpose of managing and providing Facility Defendants various administrative services such as accounting, payroll, A/R, and A/P.

13) There is no executed written contract or operating agreement between CHMS Group and Facility Defendants.

14) Defendant CHMS Group is responsible for implementing payroll policies and practices at each Facility Defendant.

15) Defendant CHMS Group is the primary custodian of payroll and time records for each Facility Defendant.

16) Defendant CHMS Group has been responsible for interpreting the Collective Bargaining Agreements ("CBAs") and employee handbooks when issues arose at each Facility Defendant.

3. CHMS Group 30(b)(6) Representative:
   <u>Witness</u>: Abraham Peckman

   <u>Offer of Proof</u>: The following witness, who at all times relevant hereto, was a corporate representative of Defendant CHMS Group, has first-hand knowledge regarding Defendant CHMS Group's relationship with the Facility Defendants and Sam Halper and is expected to testify at trial, that:
   1) Defendant CHMS Group was formed for the purpose of managing and providing Facility Defendants various administrative services such as accounting, payroll, A/R, and A/P.

   1. There is no executed written contract or operating agreement between CHMS Group and Facility Defendants.

   2. Defendant CHMS Group is responsible for implementing payroll policies and practices at each Facility Defendant, including ensuring employees are paid in accordance with the Facility Defendants' pay rules.

3. Defendant CHMS Group is the primary custodian of payroll and time records for
each Facility Defendant.

4. Defendant CHMS Group has been responsible for interpreting the CBAs and
employee handbooks when issues arose at each Facility Defendant.

5. CHMS Group reviewed each Facility Defendant payroll before it was finalized and
conducted audits, when necessary, to ensure that the payroll pay rules, created
according to each Facility Defendant's CBA and/or handbook, were appropriately
implemented.

6. Defendant CHMS Group is intimately involved in operations beyond a third party
payroll processing company like ADP.

7. From at least January 2015 to at least January 2019, Defendant CHMS Group not
only maintained exclusive payroll and accounting responsibility for Facility
Defendants, but also had a division that that was responsible for managing and
overseeing the day-to-day operations of the Facility Defendants through
"Consultants."

8. Defendant CHMS Group reorganized their business structure and separated the
consultant division from the company to form a separate, subsidiary entity: Western
Pennsylvania Consultants ("WPAC").

9. Defendant CHMS Group regularly consults with Defendant Sam Halper on the terms
and conditions for all Facility Defendant CBAs and employee handbooks, which
collectively govern all compensation policies, disciplinary practices, and other
conditions of employment at Facility Defendants.

3. Sam Halper
Offer of Proof: Defendant Halper, at all times relevant hereto, has been the CEO and held an
ownership interest in Defendant CHMS Group and the Facility Defendants. Defendant
Halper has personal, first-hand knowledge regarding Defendants CHMS Group's and the
Facility Defendants' business operations and compensation policies and practices, the
organizational structure of the entities, the wages Defendants paid to employees, and the
decision to pay employees an amount less than the overtime premium rate for hours worked
over 40 in a workweek. The witness may testify regarding his significant operational control
over the functions of the Facility Defendants that led to the violations of the FLSA and
Defendants' unified operations.

4. David Gast
Offer of Proof: David Gast at all times relevant hereto, has held an ownership interest in
Defendant CHMS Group and the Facility Defendants. Mr. Gast may testify about Defendant
Halper's operational control, as CEO and owner, over Defendant CHMS Group and the
Facility Defendants. Additionally, Mr. Gast may testify about Defendants' business

operations and compensation policies and practices, the wages Defendants paid to employees, the organizational structure of the entities, and the decision to pay employees an amount less than the overtime premium rate for hours worked over 40 in a workweek.

5. Ephram M. Lahasky
   <u>Offer of Proof</u>: Ephram M. Lahasky at all times relevant hereto, has held an ownership interest in Defendant CHMS Group and the Facility Defendants. Mr. Lahasky may testify about Defendant Halper's operational control, as CEO and owner, over Defendant CHMS Group and the Facility Defendants. Additionally, Mr. Lahasky may testify about Defendants' business operations and compensation policies and practices, the organizational structure of the entities, the wages Defendants paid to employees, and the decision to pay employees an amount less than the overtime premium rate for hours worked over 40 in a workweek.

6. Joshua Farkovits
   <u>Offer of Proof</u>: Joshua Farkovits at all times relevant hereto, has held an ownership interest in Defendant CHMS Group and the Facility Defendants. Mr. Farkovits may testify about Defendant Halper's operational control, as CEO and owner, over Defendant CHMS Group and the Facility Defendants. Additionally, Mr. Farkovits may testify about Defendants' business operations and compensation policies and practices, the organizational structure of the entities, the wages Defendants paid to employees, and the decision to pay employees an amount less than the overtime premium rate for hours worked over 40 in a workweek.

7. Benjamin Landa
   <u>Offer of Proof</u>: Benjamin Landa at all times relevant hereto, has held an ownership interest in Defendant CHMS Group and the Facility Defendants. Mr. Landa may testify about Defendant Halper's operational control, as CEO and owner, over Defendant CHMS Group and the Facility Defendants. Additionally, Mr. Landa may testify about Defendants' business operations and compensation policies and practices, the wages Defendants paid to employees, the organizational structure of the entities, and the decision to pay employees an amount less than the overtime premium rate for hours worked over 40 in a workweek.

8. Mendy Gendel
   <u>Offer of Proof</u>: Mendy Gendel at all times relevant hereto, was the Payroll Manager at Defendant CHMS Group. Mr. Gendel may testify about Defendants' business operations, the organizational structure of the entities, compensation policies and practices, the wages Defendants paid to employees, and the decision to pay employees an amount less than the overtime premium rate for hours worked over 40 in a workweek. The witness may testify regarding his significant involvement and interactions with Defendant Halper, and their support of Defendants' unified operations.

9. Margaret Zapor
   <u>Offer of Proof</u>: Margaret Zapor at all times relevant hereto, worked on behalf of Defendant CHMS Group, including as a Regional Administrator. Ms. Zapor has personal, first-hand knowledge regarding Defendants' business operations and compensation policies and practices, the organizational structure of the entities, the wages Defendants paid to employees, and the decision to pay employees an amount less than the overtime premium

rate for hours worked over 40 in a workweek. The witness may testify regarding her significant involvement and interactions with Defendant Halper, and their support of Defendants' unified operations.

10. Employee Witnesses
    A. Management
       Witnesses

| | |
|---|---|
| 1. Jacqueline Prosperi | 23. Harry Ross |
| 2. Jennifer Rhodes | 24. Ashley Adams |
| 3. Kris Hoke | 25. Deborah Greenfield |
| 4. Lloyd Berkey | 26. Helen Paiano |
| 5. Lynn Desmet | 27. Rebecca Schrader |
| 6. Caroline Bercosky | 28. Roberta Bauer |
| 7. Maribeth Tarpley | 29. Robin Tyler |
| 8. Sean Richards | 30. Ryan Sullivan |
| 9. Mark Nord | 31. Virginia Latsko |
| 10. Matthew Morris | 32. Lisa Baldi |
| 11. Michelle Kunselman | 33. Megan Burkhart |
| 12. Robert Fred | 34. Patrica Gallagher |
| 13. Ronald Scott Jordan | 35. Jason Elmer |
| 14. Steven Hausman | 36. Joseph Frank |
| 15. Karen Flickinger | 37. Mary Zeigler |
| 16. Cassandra Legge | 38. Summer Turley |
| 17. Tracey King | 39. Tyler Rutherford |
| 18. Tzvi Hefter | 40. Amy Ankey |
| 19. Cody Hill | 41. Kimberly Rubin |
| 20. Dana Welsh | 42. Tina Habovick |
| 21. Rebeka Lloyd | 43. Joan Barnyak-Cox |
| 22. Susan Bradley | |

Offer of Proof: The following witness, who at all times relevant hereto, were employed by Defendants as facility level management and have first-hand knowledge of Defendants' centralized operations, practices, and procedures and Defendant Sam Halper's significant operational control and involvement with each Facility Defendant. These roles included: Admissions Directors; Business Office Managers; Human Resource Directors; MDS Coordinators (RNAC); Medical Records Directors; Human Resources Personnel; RN Educators; Social Work Directors; Assistant Directors of Nursing; Assistant Administrators; Dietary Supervisors; Directors of Activities; Directors of Nursing; Housekeeping Supervisors; Maintenance Supervisors; Rehabilitation Coordinators (Director of Rehab); RN Supervisors; and Unit Directors. These witnesses will testify at trial that:

1) Defendants operate nursing and rehabilitation long-term care facilities throughout western Pennsylvania through a large, associated network of separately established LLCs related through unified operation, common control, and ownership.

2) Defendants regularly act in concert with one another, by sharing control over facility operations, human resource management, and payroll/accounting functions.

3) Facility Defendants are commonly owned and have centralization of ownership and unified operation through Defendants Sam Halper and CHMS.

4) Corporate Defendants have overlapping officers, directors, executive, and managers, including but not limited to: Defendant Sam Halper, Ben Halper, Ephram Lahasky, David Gast, Benjamin Lando, Joshua Farkovits, Benjamin Landa, Abraham Peckham, John Reichard, Doug Hoffman, David Ferraro, and Margaret Zapor.

5) Defendant Halper has an ownership interest in each of the Facility Defendants and Defendant CHMS Group.

6) Defendant Halper serves as the CEO for each Facility Defendant.

7) Defendant Halper consistently exercises significant operational control over Defendant CHMS Group and the Facility Defendants.

8) Defendant Halper operated and managed the day-to-day operations of Defendants, including, but not limited to, hiring and firing employees, setting the rate of payment, and setting discipline policies.

9) In consultation with, and at the direction of Defendants CHMS Group and Defendant Halper, Facility Defendants plan and host meetings and trainings that employees are required to attend.

10) Facility Defendants share supplies and equipment with one another.

11) Facility Defendants' computer software and telephone systems are interconnected.

12) Defendants regularly discuss balancing patient census with staffing needs at the facilities, including coordinating resident referrals and coordinating personnel staffing.

13) Defendants CHMS Group and Sam Halper identify personnel needs across Facility Defendants, and offer positions to employees without traditional formalities, such as requiring an application, performing interviews, or requiring the completion of new hire paperwork, or facility orientations.

14) Facility Defendants share common, and in certain circumstances, identical and/or overlapping management personnel.

15) Defendants hired Multi-Facility (PRN or "as needed") employees for the express purpose of having them work at two or more Facility Defendants.

16) Multi-Facility employees' schedules are coordinated by Defendant CHMS Group's regional representatives, who oversee the operations at each Facility Defendant.

17) From at least January 2015 to at least January 2019, Defendant CHMS Group not only maintained exclusive payroll and accounting responsibility for the Facility Defendants, but also had a division that that was responsible for managing and overseeing the day-to-day operations of the Facility Defendants through "Consultants."

18) Defendant CHMS Group's regional consulting team served as the bridge between the Facility Defendants and actively supported and required communications between each facility's administrators and department heads to ensure successful operations of the company as a whole.

19) In January 2019, Defendant CHMS Group reorganized their business structure and separated the consultant division from the company to form a separate, subsidiary entity: - Western Pennsylvania Consultants ("WPAC").

20) Despite the separation of the consulting division, the Consultants have and continue to support and manage the day- to-day operations of the Facility Defendants, including determining the rate and method of pay for employees, hiring and firing employees, monitoring staffing levels, formulating recruitment plans, overseeing facility relationships with contractors and outside entities, training and supervising employees, developing and promulgating performance standards, developing and directing work practices and policies, and developing and directing the implementation of payroll policies.

21) Facility Defendants have no autonomy to control the terms and scope their relationships with Defendant CHMS Group; only Defendant Sam Halper could amend the terms and scope of such relationships.

22) Defendants Sam Halper and CHMS Group negotiated and developed all Facility Defendant CBAs and employee handbooks and determined the final interpretations of their provisions after the acquisitions and on a continual basis.

23) Defendant CHMS Group has been responsible for interpreting the CBAs and employee handbooks when issues arose at each Facility Defendant.

24) Defendants Sam Halper and CHMS Group developed, implemented, and enforced the payroll policies and procedures that dictated how, when, and how much Defendants would pay employees at each Facility Defendant.

25) Defendants CHMS and Halper manage and control all payroll functions and human resource decisions regarding health benefits, PTO time, FMLA, and rates of pay.

26) Defendant CHMS Group retains sole control of various payroll and employment records for the Facility Defendants, including making uniform final decisions regarding

16

employee compensation and benefits.

27) When disputes arise between the Facility Defendants and Defendant CHMS Group over interpretations of the CBAs and/or the employee handbooks, Defendant CHMS Group's interpretation prevailed; only Defendant Sam Halper could override Defendant CHMS Group's interpretations.

28) Facility Defendant supervisors and assistant supervisors do not have the authority or responsibility to enforce any policies related to pay or hours worked.

29) Facility Defendant supervisor and assistant supervisors do not have final decision-making or the independent authority to discipline employees or set pay rates.

30) Facility Defendant Activities Directors/Director of Activities, RN Educators, Dietary Supervisors, Human Resource Personnel do not have the independent authority to hire or fire employees or make other changes to employment status.

31) Due to the amount of oversight by Defendants CHMS Group and Sam Halper, there is little ability for Facility Defendant Director of Social Services/Social Work Directors, Admissions Directors, Human Resource Directors, Human Resource Personnel, MDS Coordinators (RNAC), Medical Records Directors, Activities Directors, Business Office Managers to exercise discretion or independent judgment in the performance of their duties or oversight of their departments.

32) Facility Defendant Admissions Directors, Human Resource Directors, Human Resource Personnel, MDS Coordinators (RNAC), Medical Records Directors, Activities Directors, Business Office Managers, RN Educators, Directors of Nursing Assistant Directors of Nursing, Assistant Administrators, Dietary Supervisors, Housekeeping Supervisors, Maintenance Supervisors, RN Supervisors, Unit Directors do not have authority to set corporate level policy regarding any business function.

33) Facility Defendant Director of Social Services, Social Work Directors, Admissions Directors, Human Resource Directors, Human Resource Personnel, Medical Records Director, Activities Directors, RN Educators, Directors of Nursing Assistant Directors of Nursing, Directors of Nursing, RN Supervisors, Unit Directors do not oversee a budget and are required to seek approval for purchases.

34) Facility Defendant Human Resource Directors, Human Resource Personnel, Business Office Manager, RN Educators, Directors of Nursing Assistant Directors of Nursing, Assistant Administrators, Dietary Supervisors, Directors of Nursing, Housekeeping Supervisors, Maintenance Supervisors, RN Supervisors, Unit Directors are unable to commit Defendants to any contracts without express oversight and approval by Defendants CHMS Group and Sam Halper.

35) Facility Defendant Human Resource Directors, Human Resource Personnel, Business Office Managers, RN Educators, Directors of Nursing Assistant Directors of Nursing,

Assistant Administrators, Directors of Nursing, Housekeeping Supervisors and Maintenance Supervisors, RN Supervisors, Unit Directors are unable to correct time punches without the oversight and approval of Defendant CHMS Group.

B.  Clinicians and Operational/Administrative Support
Witnesses:

1.  Danna Spears
2.  Delanise Pasley
3.  Dwayne Rozier
4.  James Van Tassel
5.  Alan Harrison
6.  Timothy Erson
7.  Kenna Myles
8.  Brittany Bass
9.  Alexis Abrams
10. Carla Falbo
11. Connor Brown
12. Ranisha Tillis
13. Tiffany Aley (Alney)
14. Zentoria Nelson
15. Cortney Winston
16. Danielle Kleine
17. Delanise Pasley
18. Jessica Gleghorn
19. Melissa Whitt
20. Shemaiah Fleming
21. Tiajan Cleckley
22. Mark Vollmer Jr.
23. Barb McCullough
24. Darcilynn Maksin
25. Elizabeth Freed
26. Gary Jones
27. Jeremy Probst
28. Kristen Gray
29. Mary Beck
30. Shannon Laich
31. Debbie Keil
32. Joan Sexton
33. Michael Mazon
34. Theodore Jusczak
35. Julie Inks
36. Mary Beth Turner
37. Andrea Stauffer
38. Ashton Kelley
39. Melissa Thompson

40. Theresa Dambik
41. Gabriela Oglietti
42. Jessica Taylor
43. Karen Moreland
44. Keonda Dunn
45. Nicole Bates
46. Karen Chaney
47. Megan Jordan
48. Gene Howard
49. Mark Steban
50. Kelly Sanders
51. Michele Ellis
52. Michelle Moore
53. Shannon Rederer
54. William Ostrowski
55. Carey Paone
56. James Vournous
57. Gule Kahn
58. Melanie Adley

<u>Offer of Proof</u>: The following witnesses, who at all times relevant hereto, were employed by the Facility Defendants have first-hand knowledge of Defendants' centralized operations, practices, and procedures and Defendant Sam Halper's significant operational control and involvement with each Facility Defendant. These roles included: registered nurses, licensed practical nurses, certified nursing assistants, maintenance staff, housekeeping and laundry staff, dietary aides, physical therapists, speech pathologists, social service coordinators, and administrative staff (e.g., receptionists, billing, payroll). These witnesses will testify at trial that:

1) Defendants CHMS Group and Sam Halper identify personnel needs across Facility Defendants, and offer positions to employees without traditional formalities, such as requiring an application, performing interviews, or requiring the completion of new hire paperwork, or facility orientations.

2) Defendants treated clinicians and operational staff as a common pool available to all Facility Defendants, who work at multiple Facility Defendants during the relevant period of investigation.

3) Defendants permitted employees to transfer from one Facility Defendant to another, sometimes retaining the same job title and duties, other times transferring into new roles.

4) Defendants CHMS Group and Sam Halper retained and exercised authority to hire and fire Facility Defendants' employees by, among other things: (a) identifying Defendants' personnel needs; (b) extending formal and informal offers of employment; (c) retaining final approval over proposed hires; (d) setting employee compensation, including rates of pay, and; (e) determining employee classifications under the Act.

5) Defendants CHMS Group and Sam Halper promulgated work rules, assignments, and conditions of employment. They repeatedly overruled or preempted day-to-day decisions by the witnesses and other Facility Defendant management employees, which prevented them from exercising discretion or independent judgment in their assigned roles. This control extended to, among other things, the Facility Defendants' ability to: (a) conduct business functions; (b) create operational budgets or make related purchases without prior approval; (c) commit to contracts; (d) correct employee time records; (e) authorize supplemental compensation to employees working additional hours; (f) make and implement human resource decisions, including those concerning health benefits, PTO, and FMLA leave; (g) implement payroll policies and practices; (h) administer payroll; (i) correct payroll records; (j) perform other administrative functions, such as accounting, accounts receivable, and accounts payable, and; (k) set and interpret corporate policy, such as that contained in CBAs and employee handbooks.

6) Defendants CHMS Group and Sam Halper exerted significant control over the Facility Defendants' daily operations by, among other things: (a) maintaining regular and close supervision of the Facility Defendants' operations; (b) coordinating schedules for employees who simultaneously worked for multiple Facility Defendants; (c) overriding or preempting routine decisions by Facility Defendant personnel; (d) maintaining custody of, and limiting access to, the Facility Defendants' time and payroll records, and; (e) overseeing adjustments to time records and preventing the Facility Defendants from making any such adjustments without approval.

**DOL reserves the right to call:**

1. Any witnesses identified by Defendants.

2. Any witnesses needed for rebuttal.


Respectfully Submitted,

Post Office Address

U.S. Department of Labor
Office of the Regional Solicitor
201 12th Street South, Suite 401
Arlington, VA 22202

Seema Nanda
Solicitor of Labor

Oscar L. Hampton III
Regional Solicitor

Adam Welsh
Wage and Hour Counsel

*/s/ John Strawn*
John Strawn
Senior Trial Attorney

202.693.9393 (voice)
202.693.9392 (fax)
lewis.ryma@dol.gov

*/s/ Ryma Lewis*
Ryma Lewis
Senior Trial Attorney

*/s/ Mohamed Seifeldein*
Mohamed Seifeldein
Trial Attorney

*/s/ Alejandro A. Herrera*
Alejandro Herrera
Trial Attorney

## CERTIFICATE OF SERVICE

I hereby certify that a correct copy of the foregoing Exhibit List, was filed on October 27, 2021, electronically and is available for viewing and downloading via the ECF system for the United States District Court for the Western District of Pennsylvania. I further certify that a copy of the same was served on counsel for Defendants as listed below via the ECF system:

Marla Presley, Esq.
marla.presley@jacksonlewis.com
PA I.D. No. 91020
Jackson Lewis, P.C.
1001 Liberty Avenue, Suite 1000
Pittsburgh, PA 15222
Telephone:  (412) 2342-0404

Catherine A. Cano (admitted *pro hac vice*)
catherine.cano@jacksonlewis.com
Jackson Lewis
10050 Regency Cir., Suite 400
Omaha, NE 68114
Telephone: (402) 391-1991
Facsimile: (402) 391-7363
*Counsel for Defendants*

*/s/ Ryma Lewis*
Attorney