# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JULIE A. SU, ACTING SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR, <br><br> Plaintiff, <br><br> v. <br><br> COMPREHENSIVE HEALTHCARE MANAGEMENT SERVICES, LLC, et al, <br><br> Defendants. | Civil Action No. 2:18-cv-01608 WSS <br><br> Honorable William S. Stickman IV |

## DEFENDANTS' PRE-HEARING MEMORANDUM

Pursuant to the Court's September 14, 2023 Order (Dkt. 382), Defendants submit the following pre-hearing memorandum.

On August 29, 2023, the United States Department of Labor ("Plaintiff" or "DOL") filed a Motion for a Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue ("TRO Motion"), alleging that Defendants were attempting to fraudulently convey their assets on the eve of trial. The transactions at issue involve an operations transfer of seven Defendants[1] ("Facility Defendants") and the sale of the real property where these facilities are located (the property is owned by non-parties). Plaintiff provided the Court with a dramatic narrative, insisting that Ephram "Mordy" Lahasky was on both sides of the transaction and that the Facility Defendants were motivated by the impending trial to dissipate assets. At one point, DOL filed an

---

[1] Maybrook-C Briarcliff Opco, LLC, d/b/a The Grove at Irwin or The Grove at North Huntington; Maybrook-C Evergreen Opco, LLC, d/b/a The Grove at Harmony; Maybrook-C Kade Opco, LLC, d/b/a The Grove at Washington; Maybrook-C Latrobe Opco, LLC, d/b/a The Grove at Latrobe; Maybrook-C Overlook Opco, LLC, d/b/a The Grove at New Wilmington; Maybrook-C Silver Oaks Opco, LLC, d/b/a The Grove at New Castle; and Maybrook-C Whitecliff Opco, LLC, d/b/a The Grove at Greenville at Greenville.

1

emergency motion, alleging that Mr. Lahasky was attempting to transfer interests to his wife – an allegation that has absolutely no evidentiary support. Despite repeated assurances by the Facility Defendants and the buyer's counsel that the transaction was arm's length and had been in progress for months, DOL has forged ahead on its wild goose chase.

Plaintiff has since served written discovery on six individuals, including two non-parties who attempted to purchase the Facility Defendants and the Facility Defendants' transactional attorney. Plaintiff has also conducted depositions of three of Facility Defendants' owners, as well as one of the non-parties who attempted to purchase the Facility Defendants. DOL's discovery responses also demonstrate that Plaintiff has sought information from other sources, such as the Pennsylvania Department of Health, numerous employees of the Facility Defendants, and the union that represents employees of the Facility Defendants.

These discovery efforts have only confirmed the veracity of the representations the Facility Defendants made weeks ago and demonstrated that DOL's efforts were fueled only by rumors and speculation. The facts revealed in discovery show that the Facility Defendants were trying to sell/transfer their operations before Phase II was even set for trial. Mr. Lahasky is not on both sides of the transaction as the evidence shows, nor does any owner of the Facility Defendants hold an interest in the acquiring entities.

The Facility Defendants will not walk away from the transactions with any proceeds. The Facility Defendants are losing money and they have no assets. Although the real property has value, it is not subject to this litigation and that value is almost entirely encumbered by a mortgage. Plaintiff's efforts to force the Facility Defendants to continue their operations will likely have the opposite impact - the Facility Defendants are in danger of having to shut down their operations.

Accordingly, the Court should deny DOL's request for a preliminary injunction.

## I.  Statement of Facts

The Facility Defendants are owned by multiple limited liability companies, which are represented by Benjamin Landa, Josh Farkovits, Mr. Lahasky, David Gast and Sam Halper. *See* Ephram Lahasky's Responses to Plaintiff's TRO Interrogatories attached as Exhibit 1.

Jonathan Strauss and Daniel Morris are the principals of Kadima Healthcare Group, Inc. ("Kadima"). *See* Deposition of Daniel Morris attached as Exhibit 2 ("Morris Dep.") at 21:1-3. Mr. Lahasky has no ownership interest in Kadima. *Id.* Kadima Healthcare Group, Inc. manages several nursing homes in Eastern Pennsylvania. Morris Dep. 22:4-7.

Mr. Lahasky has a 5% ownership interest in six limited liability companies that operate nursing homes, which are majority owned by Mr. Morris and Mr. Strauss.[2] *See* Morris Dep. 13:16-14:5. Mr. Lahasky has no operational role with these facilities – he is strictly a financial investor. Morris Dep. 25:3-11. Mr. Strauss and Mr. Morris are not involved in the ownership or the operations of any of the Facility Defendants. Morris Dep. 18:5-12.

The Facility Defendants started considering selling/transferring their operations after their mortgage lender resized the loan, reset the covenants, and withheld several million dollars for debt reserves, which began in May 2022. Deposition of Ephram Lahasky attached as Exhibit 3 ("Lahasky Dep.") 65:10-66:5. The bank took these actions because the Facility Defendants were losing considerable money. Lahasky Dep. 66:6-8.

In or about December 2022, the Facility Defendants received a Letter of Intent from another potential buyer, but that deal fell through. Lahasky Dep. 66:16-18, 67:19-22. Also in the winter of 2022, Mr. Lahasky informed Mr. Strauss and Mr. Morris that the Facility Defendants might be for sale. Morris Dep. 43:15-19. There were no plans for Mr. Lahasky to

---

[2] Kadima Healthcare Group, Inc. does not have any ownership interests in these buildings. Morris Dep. 23:13-24:3.

retain any ownership interest in the Facility Defendants. Morris Dep. 48:13-17. Mr. Strauss and Mr. Morris toured the Facility Defendants in or around January or early February 2023. Morris Dep. 47:8-15. Kadima and the Facility Defendants began formal negotiations in February 2023. Morris Dep. 49:12-14. Kadima and the Facility Defendants prepared a Letter of Intent in early 2023. Lahasky Dep. 114:1-7. Kadima finally obtained approval from their lender for financing in late spring or early summer 2023. Lahasky Dep. 95:1-7.

The Contract of Sale ("PSA") and Operations Transfer Agreement ("OTA") were ultimately executed on August 21, 2023. *See* Brief in Support of Motion for Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue (Dkt. 362) at Exhibits 4 and 5.

The Facility Defendants are losing money and have no assets. Lahasky Dep. 89:16-90:1. The value is in the real estate, not the operations. Lahasky Dep. 90:11-19. Moreover, the Facility Defendants are not getting any proceeds from the sale. Lahasky Dep. 72:18-73:1. Any proceeds would be used as a seller-financed loan. *Id*.

If the Facility Defendants are unable to transfer operations, it is likely they will run out of funds and be forced to close their operations. Deposition of Sam Halper attached as Exhibit 4 ("Halper Dep.") at 86:8-19. The closure of these facilities would displace hundreds of residents from their homes. Halper Dep. 86:20-87:12.

## II.  Argument and Authority

### A.  Plaintiff Cannot Obtain a Pre-Judgment Freeze of Assets.

A "plaintiff may obtain a prejudgment freeze on a defendant's assets only if he satisfies three conditions: (1) he asserts a cognizable equitable claim, (2) he demonstrates a sufficient nexus between that equitable claim and specific assets of the defendant which are the target of the injunctive relief, and (3) he shows that the requested interim relief is a reasonable measure to

preserve the status quo in aid of the ultimate equitable relief claimed." *F.T. Int'l, Ltd. v. Mason*, No. CIV.A. 00-5004, 2000 U.S. Dist. LEXIS 14979, at *1 (E.D. Pa. Oct. 11, 2000). Before granting an injunction, the Court must also make "some attempt to relate the value of the assets encumbered to the likely value of the expected judgment." *Bancroft Life & Cas. ICC, Ltd. v. Intercontinental Mgmt.*, Civ. Action No. 10-704, 2011 U.S. Dist. LEXIS 16930 at *9 (W.D. Pa. Feb. 22, 2011).

As explained in the Facility Defendants' Opposition to Plaintiff's Motion for Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue ("Opposition"), the heart of DOL's FLSA claim is a form of monetary relief – not equitable relief. Other courts have declined to freeze assets to satisfy a future FLSA judgment. *See Coley v. Vannguard Urb. Improvement Ass'n*, No. 12-CV-5565 (PKC) (RER), 2016 U.S. Dist. LEXIS 172378, at *14 (E.D.N.Y. Dec. 13, 2016).

Even if Plaintiff could overcome this hurdle, it cannot meet the remaining elements. Plaintiff makes no attempt to show a nexus between the assets at issue and the target of the equitable relief it seeks. Instead, Plaintiff argues no such showing is necessary, citing to a single bankruptcy case. However, the weight of authority holds otherwise. The Fourth Circuit Court of Appeals has explained, the "nexus between the assets sought to be frozen through an interim order and the ultimate relief requested in the lawsuit is essential to the authority of a district court to enter a preliminary injunction freezing assets." *United States ex rel. Rahman v. Oncology Assocs.*, 198 F.3d 489, 496-97 (4th Cir. 1999); *Bancroft Life & Cas. ICC, Ltd. v. Intercontinental Mgmt.*, Civil Action No. 10-704, 2011 U.S. Dist. LEXIS 16930, at *11 (W.D. Pa. Feb. 22, 2011); *JBF Interlude 2009 Ltd v. Quibi Holdings LLC*, 2020 U.S. Dist. LEXIS 246878, at *76 (C.D. Cal. Dec. 30, 2020). It makes little sense to freeze a party's assets that have no connection to the underlying claims.

DOL cannot establish a nexus between any claim of equitable relief and the transactions. As explained above, the Facility Defendants are losing money every month and there is no evidence that any value associated with the operations could be used to satisfy a judgment. The value of the transactions is associated with the property, and DOL has no claim to that.

Further, the status quo is that the property at issue already possesses its own creditors, including a lender. Whether the property sells or not, DOL can still enforce FLSA compliance. In other words, the equitable relief of FLSA compliance is not tied to the sale of the underlying property.

Plaintiff has also failed to relate the value of the assets at issue to its expected judgment. Plaintiff asks the Court to block a $56 million sale. DOL suggests it is likely to recover $40 million (including liquidated damages), but this figure assumes Plaintiff wins on all claims and that the Court adopts its damage analysis wholesale.[3] It also assumes that Facility Defendants could somehow be liable for damages allegedly attributable to their co-Defendants before Facility Defendants even came into existence, which is inconsistent with the Facility Defendants' stipulation regarding joint employment. More importantly, Plaintiff offers no evidence about the alleged liability it believes the Facility Defendants have conceded or the value of the Facility Defendants' operations, and it is evident from the amount remaining on the mortgage (i.e., more than $46 million) that the real property carries the weight. Accordingly, Plaintiff is not entitled to a pre-judgment asset freeze.

---

[3] To be clear, DOL's damage calculation assumes that only one position with Facility Defendants was exempt from overtime and that essentially all employees across all departments have never been able to take a bona fide meal break.

**B.      Plaintiff Cannot Satisfy Fed. R. Civ. P. 65's Requirement for a Preliminary Injunction.**

To obtain a preliminary injunction, the moving party must show (1) a substantial likelihood of success on the merits, (2) irreparable injury to the moving party if relief is not granted, (3) that a balance of equities favors the movant's request for injunctive relief, and (4) that a preliminary injunction is in the public interest. *Benisek v. Lamone*, 138 S. Ct. 1932, 1943-44 (2018) (quoting *Winter v. Natural Resources Def. Council, Inc.*, 555 U.S. 7, 24 (2008)).

**1.      DOL Cannot Prove that It Would Suffer Irreparable Harm without Injunctive Relief.**

First, the Court should deny DOL's motion because it has failed to show how it will suffer irreparable harm—the most critical element of any claim for injunctive relief. To prove irreparable harm, the moving party must "demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following trial." *Acierno v. New Castle Cnty.*, 40 F.3d 645, 653 (3d Cir. 1994). The moving party must make a clear showing of immediate, imminent irreparable injury or a "presently existing actual threat; [an injunction] may not be used simply to eliminate a possibility of a remote future injury." *Acierno*, 40 F.3d at 655 (citations omitted); *Cont'l Group, Inc. v. Amoco Chemicals Corp.*, 614 F.2d 351, 359 (3d Cir. 1980).

DOL is pursuing a routine FLSA claim. Nothing in the record establishes that the transactions at issue impact the remedies available under the FLSA. Again, DOL also ignores that the value associated with the transaction is almost entirely, if not completely, based on the real property beyond its reach. DOL has no evidence suggesting that the Facility Defendants' operations are an asset that could be used to satisfy a future judgment – particularly as the operations are losing money every month. As such, DOL in no way establishes that an asset at issue in the litigation will be dissipated and or that DOL will face irreparable harm. There are also eight other Defendants in this case to pursue if DOL obtains a judgment, and no evidence that a

judgment could not be satisfied by those entities.[4] With no proof of irreparable harm, DOL's motion should be denied.

### 2. **DOL Cannot Show a Likelihood of Success on the Merits.**

Second, DOL fails to show that success on the merits of the FLSA claims is likely. DOL asserts that the Facility Defendants have conceded liability associated with regular rate calculations for a period. However, DOL's claims and alleged damages go well beyond this discrete issue. The Parties already filed cross motions for summary judgment, which included DOL's arguments regarding the regular rate issue, and this Court denied the motion. *See* (Dkt .229 & 279). The posture of this case alone shows that DOL cannot show a likelihood of success on the merits.

### 3. **DOL's Motion Should also be Dismissed because the Balance of Equities Do Not Favor It, Nor Would Injunctive Relief be in the Public Interest.**

As noted above, this Court need not even consider the remaining elements for a preliminary injunction given DOL's failure to show irreparable injury or likelihood of success on the merits. But in any event, DOL cannot satisfy the latter two elements either.

The balance of the equities favors the Facility Defendants and injunctive relief would not be in the public interest. It would not be equitable to allow DOL to block the transactions when the value is almost entirely tied to the real property, which has nothing to do with DOL's lawsuit, is owned by non-parties, and is subject to other encumbrances that cannot be paid off absent a sale. The public interest also supports the Facility Defendants' position. Preventing the Facility Defendants from transferring operations may force them to completely shut down. The closure of the Facility Defendants would displace hundreds of residents from their homes.

---

[4] DOL has also made it clear that it intends to pursue Kadima for successor liability should the transaction move forward. DOL's counsel conveyed this sentiment both directly to Kadima's counsel and at the September 6, 2023 hearing.

C.     **DOL has no right to any Relief under Pennsylvania Law.**

DOL relies heavily on the incorrect assertion that the Court can prevent the sale under Fed. R. Civ. P. 64 if it is likely to succeed on a Pennsylvania's Uniform Voidable Transactions Act ("PUVTA") claim. DOL, however, does not assert a PUVTA claim, foreclosing DOL's argument. Moreover, DOL cannot establish any elements necessary to prevail on a PUVTA claim.

PUVTA provides that "[a] transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: (1) with actual intent to hinder, delay or defraud any creditor of the debtor . . . ." 12 Pa. Cons. Stat. Ann. § 5104(a). There are numerous factors to consider in determining "actual intent," including but not limited to whether: (1) "the transfer or obligation was to an insider"; (2) "the transfer or obligation was disclosed or concealed"; (3) "before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit"; (4) "the transfer was of substantially all the debtor's assets," and; (5) "the transfer occurred shortly before or shortly after a substantial debt was incurred . . . ." 12 Pa. Cons. Stat. Ann. § 5104(b). The evidence applied to these factors establish that Facility Defendants do not have actual intent to hinder, delay, or defraud DOL.

   1.     **The Sale Was Not to an "Insider."**

The PUVTA looks toward whether the sale is made at arm's length (i.e., whether the seller and buyer acted independently from each other and in their own self-interest). Lahasky does not benefit if Kadima buys the Facility Defendants as opposed to a different buyer. Neither Lahasky nor the Facility Defendants will receive any proceeds from the sale. Mr. Lahasky has no interest in the acquiring entities and will not receive any benefit stemming from his minority ownership in the unrelated facilities. Kadima also does not benefit if Lahasky sells the facilities as opposed to

9

a different seller. Accordingly, Lahasky and Kadima are acting independently and in their own self-interest as it relates to the sale. DOL does not have any evidence establishing otherwise.

### 2. The Facility Defendants Were Not Obligated to Disclose the Sale.

DOL asserts that the Facility Defendants were required to disclose the sale in response to a discovery request seeking documents related to the corporate structure or organization of Defendants. The Facility Defendants disagree that information regarding the sale relates to the organizational structures. The Facility Defendants will continue to exist as corporate entities following the sale.

### 3. The Timing of the Transactions Undermines DOL's Claim.

DOL incorrectly asserts that the sale is "last-minute" and an attempt to dissipate assets ahead of Phase II of the trial. On February 7, 2023, Phase II of the trial was set for September 11, 2023. (Dkt. 334). By this time, the Facility Defendants were well into sale discussions with Kadima. Contrary to DOL's arguments, the sale had nothing to do with this case, and certainly was not designed on the eve of the Phase II trial.

There is simply no legal mechanism or grounds for the Court to prevent the sale under Pennsylvania law.

### III. Conclusion

For the reasons above, Defendants request that this Court deny DOL's request for a preliminary injunction.

| | |
|---|---|
| Date: September 26, 2023 | Respectfully submitted,<br>JACKSON LEWIS, PC<br><br>*/s/ Marla N. Presley*<br>Marla N. Presley, Esq. (PA I.D. No. 91020)<br>marla.presley@jacksonlewis.com<br>1001 Liberty Avenue, Suite 1000<br>Pittsburgh, PA 15222<br>Telephone: (412) 232-0404<br>Facsimile: (412) 232-3441<br><br>Catherine A. Cano (admitted *pro hac vice*)<br>catherine.cano@jacksonlewis.com<br>10050 Regency Circle, Suite 400<br>Omaha, Nebraska  68114<br>Telephone: 402-391-1991<br>Facsimile: 402-391-7363<br><br>Ann L. Zebrowski (admitted *pro hac vice*)<br>ann.zebrowski@jacksonlewis.com<br>10050 Regency Circle, Suite 400<br>Omaha, Nebraska  68114<br>Telephone: 402-391-1991<br>Facsimile: 402-391-7363<br><br>Jeffrey A. Schwartz (admitted *pro hac vice*)<br>Jeffrey.Schwartz@jacksonlewis.com<br>Jackson Lewis P.C.<br>171 17th Street, NW, Suite 1200<br>Atlanta, GA 30363<br>(404) 525-8200 telephone<br>(404) 525-1173 facsimile<br><br>*Counsel for Defendants* |