**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JULIE SU, | ) | |
| ACTING SECRETARY OF LABOR, | ) | Civil Action No. 2:18-cv-01608 WSS |
| UNITED STATES DEPARTMENT OF | ) | |
| LABOR | ) | Honorable William S. Stickman IV |
| | ) | |
| Plaintiff, | ) | *Electronically Filed* |
| | ) | |
| v. | ) | |
| | ) | |
| COMPREHENSIVE HEALTHCARE | ) | |
| MANAGEMENT SERVICES, LLC, et al. | ) | |
| | ) | |
| Defendants. | ) | |

<u>**DEFENDANTS' BRIEF IN SUPPORT OF EXCLUDING HEARSAY AND**</u>
<u>**CUMULATIVE EVIDENCE**</u>

Plaintiff, Julie Su, Acting Secretary of Labor, United States Department of Labor ("DOL"), moved for the admission of (1) declarations obtained largely from former employees of Defendants during the course of this litigation, and (2) written interview statements secured by DOL investigators during their wage and hour investigation in 2017.  Both categories of documents are entirely hearsay, or contain statements that are hearsay, rendering their admission impermissible. Furthermore, even if some of the statements otherwise are admissible, the Court should not admit needlessly cumulative out-of-court statements of witnesses who testified or will testify in-person.

I.  <u>**BACKGROUND**</u>

   A.  <u>**DOL seeks to introduce numerous declarations made by former employees**</u> <u>***after* their employment had ended.**</u>

DOL seeks to introduce into evidence numerous declarations made by ***former*** employees of Defendants after their employment ended.[1] These include:

---

[1] The fact that the declarations were signed after employment ended is obvious from the face of the declarations.

1.      A July 17, 2020 declaration of Ashley Ifft, who was employed from June 2018 through November 2019.  (*See* PX 1 at 1-5.)[2]

2.      An October 5, 2020 declaration of Martha Stillwagon, who was employed from February 2017 through January 2020.  (*See* PX 1 at 6-28.)

3.      An October 6, 2020 declaration of Catherine Matlack, who was employed from March 2018 through January 2019.  (*See* PX 1 at 29-59.)

4.      A July 17, 2020 declaration of Corena Langham, who was employed from March 2017 through August 2019.  (*See* PX 1 at 60-64.)

5.      A July 22, 2020 declaration of Lois Snyder, who was employed from January 2017 through June 2018.  (*See* PX 1 at 65-79.)

6.      A July 22, 2020 declaration of Janet Shadle, who was employed from 2017 through September 2018.  (*See* PX 1 at 80-92.)

7.      A July 23, 2020 declaration of Shirley Dunlap, who was employed from September 2017 through September 2019.  (*See* PX 1 at 93-95.)

8.      A July 23, 2020 declaration of James Martis, who was employed from 2017 through August 2017.  (*See* PX 1 at 96-103.)

9.      A July 29, 2020 declaration of Kathleen Lantzy, who was employed from 2017 through March 2017.  (*See* PX 1 at 104-05.)

10.     An August 17, 2020 declaration of Shana Isenberg, who was employed from 2017 through May 2019.  (*See* PX 1 at 106-09.)

11.     An August 23, 2020 declaration of Janet Thomas, who was employed from 2017 through April 2018.  (*See* PX 1 at 110-12.)

---

[2] DOL seeks to introduce into evidence the employee declarations and statements included within PX 1.

12.  An August 27, 2020 declaration of Tracie Kern, who was employed from 2017 through January 2019.  (*See* PX 1 at 113-17.)

13.  A September 4, 2020 declaration of Susan Koller, who was employed from February 2017 through October 2017.  (*See* PX 1 at 114-20.)

14.  A September 4, 2020 declaration of Jaime Rosales, who was employed from September 2017 through December 2018.  (*See* PX 1 at 121-23.)

15.  A September 23, 2020 declaration of Janis Kelley, who was employed from December 2018 through June 2019.  (*See* PX 1 at 124-27.)

16.  A September 25, 2020 declaration of Brittany Edgerton, who was employed from August 2016 through February 2023.  (*See* PX 1 at 132-38.)

17.  A July 8, 2020 declaration of Elizabeth Wareham, who was employed from August 2016 through June 2017.  (*See* PX 1 at 139-43.)

18.  An August 5, 2020 declaration of Brittany McDonald, who was employed from December 2016 through June 2018.  (*See* PX 1 at 144-46.)

19.  A September 4, 2020 declaration of Mary Burrows, who was employed from 2014 through September 2017.  (*See* PX 1 at 147-51.)

20.  An October 14, 2020 declaration of Lisa Bizon, who was employed from 2016 through the winter of 2019.  (*See* PX 1 at 158-63.)

21.  A July 13, 2020 declaration of Amber Favorite, who was employed from 2015 through November 2018.  (*See* PX 1 at 164-67.)

22.  A September 3, 2020 declaration of Tracey King, who was employed from December 2015 through February 2019.  (*See* PX 1 at 1-75.)

23.  A September 3, 2020 declaration of Patricia Schmidt, who was employed from 2017 through February 2019.  (*See* PX 1 at 177-79.)

24.     A September 28, 2020 declaration of Garrett Hull, who was employed from 2016 through August 2018.  (*See* PX 1 at 180-82.)

25.     A September 13, 2020 declaration of Mary Haigh, who was employed from 2017 through June 2017.  (*See* PX 1 at 183-86.)

26.     A September 10, 2020 declaration of Harriet Jimerson, who was employed from 2016 through February 2020.  (*See* PX 1 at 187-89.)

27.     A September 25, 2020 declaration of Jaime Bartholomew, who was employed from June 2017 through August 2019.  (*See* PX 1 at 190-93.)

28.     A September 8, 2020 declaration of Linda Shuppas, who was employed from 2017 through November 2019.  (*See* PX 1 at 197-200.)

29.     A September 2, 2020 declaration of Mary Glass, who was employed from 2016 through May 2019.  (*See* PX 1 at 201-04.)

30.     A declaration of Mary Hickman, who was employed from October 2017 through January 2018.  (*See* PX 1 at 205-07.)

31.     A September 3, 2020 declaration of Nicole Fluker, who was employed from March 2017 through July 2017.  (*See* PX 1 at 208-11.)

32.     A July 24, 2020 declaration of Norma Schooley, who was employed from April 2017 through March 2018.  (*See* PX 1 at 212-15.)

33.     A September 10, 2020 declaration of Sharon Soisson, who was employed from 2014 through February 2020.  (*See* PX 1 at 216-19.)

34.     August 1, 2017 and July 24, 2017 statements of Anthony Molinaro, who was employed from February 2017 through July 2017.  (*See* PX 1 at 268-69.)[3]

35.     A September 4, 2020 declaration of Megan Swan, who was employed from 2017 through the spring of 2018.  (*See* PX 1 at 278-85.)

36.     An October 1, 2020 declaration of Cami Dziak, who was employed from July 2019 through December 2019.  (*See* PX 1 at 286-87.)

37.     A September 26, 2020 declaration of Lavasia Jackson, who was employed from January 2015 through April 2018.  (*See* PX 1 at 294-96.)

Notably, all of these 37 declarations are statements allegedly made by ***former*** employees of Defendants ***after*** their employment had already ended.

## B. DOL also seeks to introduce hearsay statements of non-supervisory employees concerning Defendants' alleged practices impacting *other* employees.

Many of the declarations and written interview statements that DOL seeks to introduce contain either no indicia of the employee's supervisory or managerial status or some instances disclaims supervisory or managerial status over two or more employees.[4] These declarations and written interview statements contain statements pertaining to Defendants' alleged practices impacting other employees.  For example:

1.     Ashley Ifft states that "Brighton fired the facility's Administrator, Bob, after he started asking questions about the exemption issue and employees' pay."  (*See* PX 1 at 3.)

---

[3] The July 24, 2017, statement of Mr. Molinaro is his resignation letter ending his employment, which, as explained *infra* is considered a post-employment statement that is not included within the exclusion from hearsay of Rule 801(d)(2)(D).

[4] Broadly, the DOL is maintaining that *all* of Defendants' employees were non-exempt.

2.    Corena Langham states that certain alleged wage payment "problems were common occurrences in the facility."  (*See* PX 1 at 62.)

3.    Tracie Kern states that "[o]ther employees were required to clock in and out for lunch, even if they worked through them.  If they worked through their lunch, they had to fill out a time adjustment sheet." (*See* PX 1 at 117.)

4.    Jaime Rosales states that "[a]fter Sam Halper and his companies took over the facility, I immediately noticed that other employees were consistently having trouble with their paychecks too. On payday, there was almost always a line at the HR Director's office with about 20-25 employees who had issues with their pay." (*See* PX 1 at 123.)

5.    Janis Kelley makes statements regarding staffing levels that pertain to other employees not within her supervision.  (*See* PX 1 at 126.)

6.    Brittany Edgerton makes statements regarding the duties of "Corporate Nurses." (*See* PX 1 at 134.)

7.    Cynthia Bankosh states that "[s]ince this company took over this facility on 2/1/2017, the majority of the employees working here have had significant errors on their pay. The errors are always in favor of the employer. Specific errors include: uncompensated time; incorrect time calculations; shift differentials are not included in regular rates for overtime; etc."  (*See* PX 1 at 152.)

8.    William Schwartz states, "I am more concerned about the healthcare workers who have spoken to me several times about issues with their compensation."  (*See* PX 1 at 170.)

9.      Mary Haigh states that other employees had "unpaid overtime and uncompensated hours worked," and that "[n]o one was ever caught up on pay. It was a constant cycle." (*See* PX 1 at 184-85.)

10.     Linda Shuppas states that other employees had issues with their pay. (*See* PX 1 at 199.)

11.     Edith Bainbridge states, "I am aware of other employees at the facility who have similar issues with not being paid for working during their lunch breaks and they have trouble with their pay." (*See* PX 1 at 222.)

12.     Elaine Abbott states, "This company took over February 1, 2017, and since then, all of the employees working at this facility are having issues with uncompensated hours worked." (*See* PX 1 at 224.)

13.     Tyffini Balog states, "The problems are anything from not paying people at all, to PTO, to salaried employees being clocked, staff shorted hours for missing punches even after punch edits are provided, and it goes on." (*See* PX 1 at 225.)

14.     Angela Bioni states that "all of the employees working in the Rehab Department and across the board have had significant errors on their pay, even staff that is salaried." (*See* PX 1 at 226.)

15.     Melissa Boarts states that she knows "that a lot of the employees working here have been short on their pay. The issues seem to be with the hours worked calculations and include improper overtime and uncompensated hours worked. The errors are always in favor of the employer." (*See* PX 1 at 230.)

16.     Melinda Dedmon states that "[s]ince this company took over this facility on 2/1/2017, all of the employees working here in nursing have had significant errors on their pay. The errors for others are always in favor of the employer. Specific

errors include: uncompensated time; incorrect time calculations; shift differentials are not included in regular rates for overtime; etc." (*See* PX 1 at 237.)

17.    Heather Dempsey states, "Since this company took over this facility on 2/1/2017, there have been two employees in my department that have issues with their pay. The errors are always in favor of the employer. Specific errors were incorrect time calculations and rounding issues." (*See* PX 1 at 241.)

18.    Jamie Folkens states, "Since this company took over, I'm [sic] do not know one person working here that has not been shorted on their pay. Errors have included incorrect time calculations by the timekeeping software, uncompensated hours worked, improper overtime pay." (*See* PX 1 at 244.)

19.    Jeremy Gorman states that "[s]ince this company took over this facility on 2/1/2017, as far as I'm aware, everyone at this facility, Monroeville, and Murrysville has had problems with not being paid properly. The errors are always in the company's favor and I don't know of anyone that has been overpaid. Specific errors include: uncompensated time; involuntary deductions; and in accurate [sic] hours worked calculation by the company." (*See* PX 1 at 251.)

20.    Timothy Green states, "I know that a lot of employees, both within and outside of my department, have problems with their pay. In turn, Chris Richmond and Tracy Kurn have been communicating with the corporate office to correct the issues. The errors are always in favor of the employer. Specific errors were incorrect time calculations due to the fact that employees were only paid for hours worked within their scheduled time." (*See* PX 1 at 252.)

21.    Carol Hollis states, "Since this company took over this facility on 2/1/2017, all of the employees working in this facility had significant errors on their pay, even staff

that is salaried.  I have not talked to anyone working here that has not had errors on their paycheck.  The errors for others are always in favor of the employer." (*See* PX 1 at 253.)

22.   Susan Karl states, "Since this company took over, the employees at this facility have not received communications with respect to the corporate entity. Immediately when this company took over, my pay, along with everyone else's pay, has never been correct.  They are always short and the reasons and/or amounts of the paychecks being short are not consistent, so I never know what my paycheck is going to be.  Errors have included incorrect time calculations by the employer, uncompensated hours worked, improper overtime pay." (*See* PX 1 at 254.)

23.   Mary Kennedy states that "[t]here has been a lot of staff that quit because of the working conditions and pay practices here." (*See* PX 1 at 256.)

24.   Jeffrey Keslar states, "I know that everyone I work with has had problems with their pay and lodged multiple complaints with the corporate office.  The errors are always in favor of the employer.  Specific errors were incorrect time calculations and rounding issues." (*See* PX 1 at 257.)

25.   Vivian Miller states, "I know that Sam Halper is directly involved in setting rates of pay for each employee and he is aware of everything with respect to employees not getting paid.  Chris Richmond, the Administrator, has spent several hours with him on the phone trying to get everything corrected.  Some corrections have been made, but some are still outstanding.  The employees are frustrated because the compensation issues continue to occur."  Ms. Miller further states, "Since this company took over this facility on 2/1/2017, there has been a flood of issues involving a lot of employees.  The errors are always in favor of the employer.  The

issues include: not getting paid at all; unpaid hours worked; unpaid overtime; and issues with tax and benefit deductions." (*See* PX 1 at 264.)

26.     Holly Morrison states, "Since this company took over this facility on 2/1/2017, I know that a lot of the employees working here have been short on their pay. The issues seem to be with the hours worked calculations and include improper overtime and uncompensated hours worked. The errors are always in favor of the employer." (*See* PX 1 at 270.)

27.     Simplice Noyja states, "I know that all of the employees working here are very insecure and apprehensive about not getting a paycheck. This has affected the moral [sic] of the employees and the safety of the residents at our facilities." (*See* PX 1 at 272.)

28.     Lynn Poliziani states, "From my understanding, the improper pay practice are ongoing across the board and come directly from the owners of the company." (*See* PX 1 at 273.)

29.     Olivia Smith states, "Since this company took over this facility, there have been almost all of the employees in my department that have issues with their pay. The errors are always in favor of the employer. The other employees working here are not getting paid overtime and/or not getting paid for all the hours they work." (*See* PX 1 at 277.)

30.     Debbie Wilk states that "[p]robably at least 3/4 of the employees working in the building have had the same issue of not being paid for all of their hours worked and I am not aware of anyone having issues with being overpaid." (*See* PX 1 at 293.)

**C.** **Some of the statements that DOL seeks to introduce were made by**
**witnesses who have already testified or will testify.**

Among the declarations that DOL seeks to introduce are declarations of witnesses who
have already testified, such as Corina Langham, Janet Shadle, William Schwartz, and James
Martis.  As noted above, their declarations were made after their employment with Defendants had
terminated and the DOL did not attempt to introduce their declarations as part of their testimony.

**II.** **ARGUMENT**

"Hearsay is not admissible" in court unless a federal statute or rule provides otherwise.
Fed. R. Evid. 802.  "'Hearsay' means a statement that: (1) the declarant does not make while
testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the
matter asserted in the statement."  Fed. R. Evid. 801(c).

In moving for the admission of PX 1, DOL argued that the declarations and witness
interview statements were non-hearsay under Federal Rule of Evidence 801(d)(2)(D) as statements
"made by the party's agent or employee on a matter within the scope of that relationship and while
it existed."   However, this Court and other courts have put two important limitations on the
"employee statement" hearsay exclusion: (1) the statement must have been made ***during*** the
declarant's employment; and (2) ***the statement must concern matters within the scope of the***
***declarant's employment***, which does not include statements made by a non-supervisory employee
concerning other employees.  Here, DOL seeks to introduce multiple statements made either by:
(1) former employees after their employment terminated; or (2) statements made by employees
concerning other employees.  Both categories of statements do not fall within Rule 801(d)(2)(D)'s
(or any other) hearsay exclusion.  Therefore, the statements are inadmissible under Rule 802.

Furthermore, even if otherwise admissible, the Court should not admit out-of-court
statements made by witnesses who already testified or who will testify.  Such statements are

"needlessly cumulative" and should not be admitted, pursuant to Federal Rule of Evidence 403, which provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . needlessly presenting cumulative evidence." Accordingly, even if otherwise admissible, out-of-court statements of witnesses who called to testify must be excluded.

### A. Rule 801(d)(2)(D)'s hearsay exclusion expressly is limited to employee statements made *while* they were employees.

Rule 801(d)(2)(D) expressly limits the "employee statement" hearsay exclusion to statements "made by the party's agent or employee on a matter within the scope of that relationship and *while it existed*."  (Emphasis added.)  This Court and other federal courts have interpreted this hearsay exclusion in accordance with its plain language: employee statements may fall within this exclusion *only if the statement was made while the employee was employed by the party*.  Indeed, in *Walsh v. Elder Res. Mgmt.*, No. 2:19-CV-00546-CCW, 2022 U.S. Dist. LEXIS 17262, at *21 n.8 (W.D. Pa. Jan. 31, 2022), this Court held that, to introduce employee statements pursuant to 801(d)(2)(D), the U.S. Department of Labor "must establish that the employee giving such Written Employee Statement was employed by Defendants at the time the statement was made."

Other federal courts have held the same.  *See United States v. West*, No. 08 CR 669, 2010 U.S. Dist. LEXIS 67870, at *4-7 (N.D. Ill. July 6, 2010) (explaining that, for purposes of Rule 801(d)(2)(D), the agency relationship ends when employment ends); *Walsh v. McCain Foods Ltd*., 81 F.3d 722, 727 (7th Cir. 1996) (statements of a former agent of a party made after the termination of that agency do not fall within Rule 801(d)(2)(D)'s exclusion); *Hernandez Escalante v. Municipality of Cayey*, 967 F. Supp. 47, 51-52 (D.P.R. 1997) (statements made by a former employee after the termination of employment do not fall within Rule 801(d)(2)(D)'s hearsay exclusion); *Boren v. Sable*, 887 F.2d 1032, 1039 (10th Cir. 1989) (affirming the exclusion of the

statements made by an individual who was not an agent of the party-opponent at the time that the individual made the statements); *Blanchard v. Peoples Bank*, 844 F.2d 264, 267 n.7 (5th Cir. 1988) (statements of a former employee concerning the defendant bank's policies were not admissible against the bank because they were made while the employee was no longer working at the bank); *United States v. Summers*, 598 F.2d 450, 459 (5th Cir. 1979) (district court erred in admitting statements made by the ex-agent of the party-opponent because the statements were made after the agency relationship terminated).

The rationale underlying Rule 801(d)(2)(D) is that agents and employees are trustworthy and reliable because they are unlikely to make untrue statements that harm their employers or principals. That logic, however, does not extend to statements made by individuals after their employment or agency had ended:

> [A]dmissions by agents of party-opponents *while they are employed by the party* are not hearsay because they are trustworthy and reliable. Agents are unlikely to make statements which harm their employers or principals during their employment. In contrast, when the agency relationship ends, the agents are no longer inhibited by their relationship with the principal from making erroneous or underhanded comments which could harm the principal. These latter statements are unreliable and, therefore, considered hearsay and inadmissible at trial.

*Escalante*, 967 F. Supp. at 51-52 (citing American Bar Association, *Emerging Problems Under the Federal Rules of Evidence* 206 (2d ed. 1991); Charles E. Wagner, *Federal Rules of Evidence Case Law Commentary* 499-500 (1994)). *See also Young*, 327 F.3d at 623 (after an agent's agency has ended, "the justification for Rule 801(d)(2)(D) does not exist because [the agent] no longer [is] 'inhibited by [his] relationship with the principal from making erroneous or underhanded comments which could harm the principal'") (quoting *Escalante*, 967 F. Supp. At 52)).

In sum, the express language of Rule 801(d)(2)(D) and the case law interpreting it make clear that statements made by former employees after their employment terminated are not subject to the "employee statement" hearsay exclusion. Therefore, the declarations and statements of

*former* employees are inadmissible hearsay.[5]  The Court should not admit those statements into evidence.

       **B.**  <u>Non-supervisory employees' statements regarding *other* employees do not concern matters within the scope of the employment relationship and therefore do not fall within Rule 801(d)(2)(D)'s hearsay exclusion.</u>

Rule 801(d)(2)(D) also expressly limits the "employee statement" hearsay exclusion to statements "made by the party's agent or employee ***on a matter within the scope of that relationship***."  (Emphasis added.)  This Court and other courts have limited the hearsay exclusion to employee statements that concern "a matter within the scope" of the individual's employment. *See Walsh v. Fusion Japanese Steakhouse, Inc.*, 585 F. Supp. 3d 766, 775 (W.D. Pa. 2022) (citing *United States DOL v. Unitil Serv. Corp.*, Civ. No. 19-cv-693-LM, 2021 U.S. Dist. LEXIS 221792, at *18 (D.N.H. Nov. 17, 2021)).  This Court held that statements of non-supervisory employees concerning an employer's practices impacting ***other*** employees ***do not*** concern "a matter within the scope" of the employee's employment because a non-supervisory employee's duties do not include establishing or implementing employment practices impacting other employees.  *Id.* at 775-76.

In *Fusion Japanese Steakhouse*, 585 F. Supp. 3d at 772, as in this case, the Secretary of Labor brought an action under the Fair Labor Standards Act against restaurants claiming that they owed wages to employees.  As here, the Secretary of Labor sought to introduce written statements of employees concerning an employer's wage and hour practices.  *Id.* at 773-74.  This Court held that a statement of an employee is admissible ***only if*** it "concerns 'a matter within the scope' of

---

[5] One of the documents that the DOL attempts to have admitted is a July 24, 2017, letter of resignation of Anthony Molinaro.  (*See* PX 1 at 269.)  Even if Mr. Molinaro technically was employed when he made the statements in his resignation letter, the letter does not fall within Rule 801(d)(2)(D)'s hearsay exclusion because it includes accusations of wage violations against Defendants, which inherently placed Mr. Molinaro in an adversarial position with Defendants at the time of his resignation.  *See Young v. James Green Mgmt., Inc.*, 327 F.3d 616, 622-23 (7th Cir. 2003) (employee's accusations of race discrimination in a letter of resignation "plac[ed] himself in an adversarial relationship with [his employer]" and thus fell outside Rule 801(d)(2)(D)'s hearsay exclusion).

the declarant's employment." *Id.* at 775 (quoting *United States DOL v. Until Serv. Corp.*, Civ. No. 19-cv-693-LM, 2021 U.S. Dist. LEXIS 221792, at *18 (D.N.H. Nov. 17, 2021)).  Statements of non-supervisory employees concerning matters that pertain to the declarant's ***own employment*** are admissible because the statements "concern matters within the scope of the declarant's employment." *Id.* at 775.  However, statements of non-supervisory employees concerning ***other*** employees ***do not*** "concern matters within the scope of the declarant's employment" and therefore are not admissible. *Id.* at 776 (kitchen employees' "statements concerning '[] other similarly situated employees subject to the same employment practices'. . . is not within a kitchen employee's scope of employment, and therefore such statements do not fall within Rule 801(d)(2)(D)'s hearsay exclusion").

Here, DOL seeks to introduce a multitude of statements of non-supervisory employees concerning Defendant's pay practices impacting other employees.  All such statements, or portions thereof, that pertain to other employees do not fall within 801(d)(2)(D)'s hearsay exclusion and are not admissible.  To the extent that DOL seeks to introduce any otherwise admissible statements of non-supervisory employees that also contain inadmissible statements pertaining to other employees, DOL must redact the inadmissible portions. *See Fusion Japanese Steakhouse*, 585 F. Supp. 3d at 776 (ordering DOL to redact inadmissible portions of non-supervisory employee statements that contained statements regarding other employees).

### C.  <u>The court should not admit declarations of witnesses who already testified, or who will testify, in person.</u>

Federal Rule of Evidence 403 provides: "***The court may exclude relevant evidence if its probable value is substantially outweighed by a danger of*** one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or ***needlessly presenting cumulative evidence***." (Emphasis added.)  "Evidence is 'cumulative' when it adds

very little to the probative force of the other evidence in the case, so that if it were admitted its contribution to the determination of truth would be outweighed by its contribution to the length of trial, with all the potential for confusion, as well as prejudice to other litigants, who must wait longer for their trial, that a long trial creates." *United States v. Cross*, 308 F.3d 308, 326 (3d Cir. 2002) (quoting *United States v. Williams*, 81 F.3d 1434, 1443 (7th Cir. 1996) (internal quotations omitted)).  This Court has exercised its discretion to exclude unnecessary cumulative evidence. *See, e.g.*, *Battle Born Munitions, Inc. v. Dick's Sporting Goods, Inc.*, No. 2:18-CV-01418-CCW, 2021 U.S. Dist. LEXIS 161413, at *16-17 (W.D. Pa. Aug. 26, 2021) (excluding needlessly cumulative testimony on a topic on which another witness had already testified); *Juarez v. Friess*, Civil Action No. 13-145 Erie, 2016 U.S. Dist. LEXIS 85258, at *2-3 (W.D. Pa. June 30, 2016) (excluding expert testimony cumulative of expert testimony already presented).

In a similar circumstance, the United States District Court for the Eastern District of Pennsylvania excluded cumulative out-of-court statements of a witness who was available to testify in person, notwithstanding that the statements were otherwise admissible.  *See Schmidt v. Duo-Fast Corp.*, Civ. No. 94-6541, 1996 U.S. Dist. LEXIS 6106, at *5-6 (E.D. Pa. May 6, 1996) ("The court will not admit deposition testimony, even from the instant action, if it is unduly cumulative and will not 'add any information to that given in oral testimony by the deponent[] and otherwise developed at [trial].'") (quoting *Fenstermacher v. Philadelphia National Bank*, 493 F.2d 333, 338 (3d Cir. 1974)).  Likewise, the Eastern District of Pennsylvania held that it would not admit otherwise admissible non-hearsay out-of-court statements of a party opponent if the statements were cumulative of testimony offered by witnesses who testified at trial.  *Id.* at *9-10.

Here, some of the employees already testified in person at this trial.  For the reasons discussed above, their out of court statements are not admissible.  However, even if this were not the case, the Court should not allow these out of court statements into evidence because they are

unnecessarily cumulative of the witnesses' testimony already offered into evidence.  Likewise, the Court should not allow into evidence out-of-court statements of any other witnesses who will testify in person.

### III.     CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court exclude from evidence hearsay statements.  Furthermore, even if otherwise admissible, the Court should not admit needlessly cumulative out-of-court statements of witnesses who testified or will testify in-person.

Respectfully submitted,

JACKSON LEWIS, P.C.

_____/s/ Marla N. Presley_____
Catherine A. Cano (admitted *pro hac vice*)
catherine.cano@jacksonlewis.com
10050 Regency Circle, Suite 400
Omaha, Nebraska   68114
Telephone: 402-391-1991
Facsimile: 402-391-7363

Marla N. Presley, Esq. (PA I.D. No. 91020)
marla.presley@jacksonlewis.com
1001 Liberty Avenue, Suite 1000
Pittsburgh, PA 15222
Telephone: (412) 232-0404
Facsimile: (412) 232-3441

Jeffrey A. Schwartz (admitted pro hac vice)
jeffrey.schwartz@jacksonlewis.com
Jackson Lewis P.C.
171 17th Street, NW, Suite 1200
Atlanta, GA 30363
Telephone: (404) 525-8200
Facsimile: (404) 525-1173

Ann L. Zebrowski (admitted pro hac vice)

ann.zebrowski@jacksonlewis.com
10050 Regency Circle, Suite 400
Omaha, Nebraska 68114
Telephone: 402-391-1991
Facsimile: 402-391-7363

Attorneys for Defendants

4880-5200-3228, v. 5