**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JULIE A. SU, ) | |
| ACTING SECRETARY OF LABOR, ) | |
| UNITED STATES DEPARTMENT OF LABOR, ) | Civil Action No. 2:18-cv-01608-WSS |
| ) | |
| Plaintiff, ) | |
| ) | Honorable William S. Stickman |
| v. ) | |
| ) | |
| COMPREHENSIVE HEALTHCARE ) | |
| MANAGEMENT SERVICES, LLC, et al. ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

### THE ACTING SECRETARY'S PHASE II POST-TRIAL BRIEF

Defendants admit that, for years, they have violated the Fair Labor Standards Act of 1938 ("FLSA" or the "Act"). They also agree that employees deserve back wages and they accept the Acting Secretary's methodology for calculating those wages. Despite these concessions, Defendants pledged to prove that liability is minimal. They failed. Through representative testimony from 39 witnesses, over 7 years of detailed time and pay data, key admissions from Defendants, and thousands of pages of other evidence (*e.g.*, emails, discovery responses, employee declarations, and other records), the Acting Secretary proved that Defendants have willfully violated the Act in several ways, that they owe $41,097,761.14 in back wages to about 6,000 current and former employees, and that injunctive relief is necessary to bring them into compliance. Defendants did not carry their burden to rebut the Acting Secretary's case, and they have failed to otherwise show any basis for reducing their liability. The Acting Secretary respectfully requests that the Court adopt her Proposed Findings of Fact and Conclusions of Law and enter the proposed Final Judgment and Order.

1

I.       **Defendants' Obligations Under the Act**

The Act is "a remedial statute designed to abolish substandard labor conditions." *Acosta v. Heart II Heart, LLC*, No. 2:17-cv-1242, 2019 WL 5197329, at *4 (W.D. Pa. Oct. 15, 2019) (citing 29 U.S.C. § 202(a)). As the Third Circuit explained in *Parker v. NutriSystem, Inc.*:

> Congress enacted the FLSA to protect all covered workers from substandard wages and oppressive working hours, labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers. The Act was designed to ensure that each employee covered by the Act would receive [a] fair day's pay for a fair day's work' and would be protected from the evil of overwork as well as underpay.

620 F.3d 274, 279 (3d Cir. 2010) (citations and quotations omitted) (alterations in original).

One of the Act's "bedrock principles" is that employers must pay "for all hours worked." *Smiley v. E.I. DuPont De Nemours and Co.*, 839 F.3d 325, 330 (3d Cir. 2016) (citing 29 C.F.R. § 778.223); *see also see also Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 148 (3d Cir. 2014) ("To 'employ' means 'to suffer or permit to work.'") (quoting 29 U.S.C. § 203(g)). Employers must pay for all work that they know about, or should know about, regardless of whether they request or prohibit that labor. *Reinig v. RBS Citizens, N.A.*, No. 2:15-cv-01042, 2017 WL 8941219, at *4 (W.D. Pa. Aug. 2, 2017) (citing 29 C.F.R. § 785.11); *see also Campbell v. Victory Sec. Agency, L.P.*, No. 2:11-cv-00489, 2014 WL 1317574, at *3 (W.D. Pa. Mar. 31, 2014) ("Under the FLSA, an employer may not 'suffer' work and not pay for it.") (citing 29 C.F.R. §§ 785.11, 785.13). Another core protection is the default guarantee of overtime compensation of at least one and one-half times an employee's regular pay rate for each overtime hour worked. 29 U.S.C. § 207(a)(1); *see also* 29 C.F.R. § 778; *Walsh v. Unitil Serv. Corp.*, 64 F.4th 1, 2 (1st Cir. 2023) ("Compliance with the [FLSA's] overtime pay requirements is critical to ensuring worker protections.").

The Act imposes stringent record-keeping requirements. Section 11(c) requires employers to "make, keep, and preserve such records of the persons employed by [them] and of the wages, hours, and other conditions and practices of employment maintained by [them], and shall preserve such records for such periods of time." 29 U.S.C. § 211(c). These records must accurately depict, *inter alia*, "employees' hours worked per day, hours worked per week, total daily or weekly straight time, and overtime premiums due." *Stewart v. Loving Kindness Healthcare Systems, LLC*, No. 2:20-cv-1087, 2021 WL 567248, at *3 (W.D. Pa. Feb. 16, 2021) (citing 29 C.F.R. §§ 516.2(a)(7)-(9)). The employer alone has the burden of accurately maintaining these records. *Solis v. A-1 Mortg. Corp.*, 934 F. Supp. 2d 778, 806 (W.D. Pa. 2013) (citing *Williams v. Tri-County Growers, Inc.*, 747 F.2d 121, 128 (3rd Cir. 1984)); *see also Walsh v. Fusion Japanese Steakhouse, Inc.*, 548 F. Supp. 3d 513, 527 (W.D. Pa. 2021) ("The duty to maintain and preserve time records is a non-delegable duty of employers.").

II.    **The Acting Secretary Proved Defendants' Violations Under the *Mt. Clemens* Standard, Which Applies Here**

Defendants indisputably failed to maintain accurate employment records. They concede that: (1) for years, they paid employees according to their scheduled times instead of their time punches; (2) for years, they did not calculate employees' "regular rate" to include bonuses or shift differentials; (3) despite being joint employers, they have never aggregated the hours of employees who work at more than one Facility Defendant to determine overtime; (4) they misclassified all Human Resources Directors, and; (5) employees are owed back wages. PFOF 151–54, 210–16, 217, 279. These admissions are supported by the Acting Secretary's robust record showing that Defendants' payroll process: (1) does not compensate for all hours worked; (2) does not record the correct pay rates for hours worked; (3) does not reliably discover, address, or correct these persistent, widespread errors, and; (4) deprived employees of

$20,548,880.57 in back wages according to the face of Defendants' records. PFOF 137, 152, 165, 184–207, 316–332.

*Anderson v. Mt. Clemens Pottery*, 328 U.S. 680, 687–88 (1946), *superseded by statute on other grounds, Portal-to-Portal Act of 1947*, instructs how to determine Defendants' liability. The Acting Secretary may "submit evidence from which violations of the Act and the amount of the award could reasonably be inferred." *Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1296–97 (3d Cir. 1991); *see also Reich v. Gateway Press, Inc.*, 13 F.3d 685, 701 (3d Cir. 1995) ("The Secretary's burden in these cases . . . is merely to present a prima facie case."). This burden is "minimal." *Acosta v. Central Laundry, Inc.*, No. 18-cv-190, 2019 WL 3413514, at *11 (E.D. Pa. July 29, 2019) (citation and quotations omitted); *see also Flores v. FS Blinds, L.L.C.*, 73 F.4th 356, 362–63 (5th Cir. 2023) ("*Mt. Clemens* is a not a tall slope. . . . While the *Mt. Clemens* framework might seem lenient, it is rooted in the view that an employer [should not] benefit from its failure to keep required payroll records, thereby making the best evidence of damages unavailable.") (citation and quotations omitted) (second alteration in original).

It was not necessary for each affected employee to testify. Under *Mt. Clemens*, the Acting Secretary can use testimony from "representative employees" to show a "prima facie proof of a pattern and practice of FLSA violations" (*Selker Bros*, 949 F.2d at 1298 (citing sources)) and thus "prove violations with respect to all employees" (*Walsh v. Elder Resource Mgmt., Inc.*, No. 2:19-cv-00546, 2022 WL 3134085, at *12 (W.D. Pa. Aug. 5, 2022) (citation omitted)). *See also Gateway Press, Inc.*, 13 F.3d 685 at 701; *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 456–57 (2016). There is no "precise do-or-die percentage of the workforce that must appear;" representativeness is a case-specific determination that rests on both the quantity and quality of the evidence when "viewed as a whole." *Su v. East Penn Mfg. Co., Inc.*, No. 18-

cv-1193, 2023 WL 7336368, at *4–5 (E.D. Pa. Nov. 7, 2023), *appeal docketed* 24-1046 (3rd Cir. Jan. 9, 2024); *see also United States ex. rel IBEW Local Union No. 98 v. Farfield Co.*, 5 F.4th 315, 353 (3d Cir. 2021) (identifying numerous *Mt. Clemens* matters where evidence from small number of employees was "quantitatively representative" as to larger group); *Gateway Press, Inc.*, 13 F.3d 685 at 701–02 (same).

The Acting Secretary established a *prima facie* case. Taken as a whole, her witnesses testified as to Defendants' enterprise-wide pay practices. Michael Shuey and Michael Murray testified regarding the Acting Secretary's nearly decade-long enforcement efforts and the voluminous, detailed employment records that prove the FLSA violations on their face. Some witnesses, like Margaret Zapor-Reichard, the former Regional Director of Operations, testified as to conditions affecting thousands of employees. Similarly, Dr. Catherine Matlack, the former Regional Director of Human Resources, dealt with all Defendants and spoke as someone with decades of experience in FLSA compliance. Three Nursing Home Administrators (Anthony Molinaro, Jennifer Shaffer, and Kristine Hoke) detailed the conditions in the buildings they oversaw, including their efforts to cope with the pervasive and constant payroll issues affecting their staff, as well as their interactions with Mr. Halper, CHMS Group, and other Administrators. The Acting Secretary also called three current and former SEIU senior personnel (Matthew Yarnell, Denise Cox, and Richard Goff), who have dealt with thousands of Facility Defendant employees over the years, helped advocate for those employees in dealing with the systemic payroll errors, and interacted directly Defendants. The remaining witnesses were employees from a wide range of Facility Defendants, in a variety of roles, some of whom have years of experience (*e.g.*, Corena Langham, Sarah Pentek, Richard Wolarov, Brenda Leffler, Kathryn Miller, Father William Schwartz, Joyce Meiss, Linda Shuppas, Beverly

Perkins, Edith Bainbridge, and Shana Isenberg). The quality of this testimony—which is corroborated by over 7 years of time records and thousands of pages supporting material, including emails, discovery responses, employee declarations, and other Defendant records—establishes a representative case. *Sec'y U.S. Dep't of Labor v. Central Laundry, Inc.*, 790 F. App'x 368, 373 (3d Cir. 2019) ("Together with documentation, such as time cards, the testimony of coworkers who observed such employees at the jobsite provides a basis to infer the amount of time an employee worked."); *East Penn Mfg. Co.,* 2023 WL 7336368, at *5 ("East Penn's attempt to dispose of each 'bucket' of evidence in isolated, piecemeal fashion is unsuccessful. . . . When viewed as a whole, the evidence presented at trial addressed all 24 plants and provided sufficient grounds for the jury to award a verdict in favor of the 11,780 uniformed employees. . . . . [I]n this particular case the [testimony from 0.33% of the relevant workforce], given the quality of the testimony, is sufficiently representative.").

### a. Defendants Had a Pattern and Practice of Failing to Pay for Hours Worked

Defendants' payroll process systemically and repeatedly resulted in a failure to pay for all hours worked. PFOF 137. It did not capture employees' constant work outside of shifts and during meal breaks, which occurred regularly given the inherent nature of the skilled nursing home work environment and because of Defendants' persistent, severe staffing shortages. PFOF 151–55, 165. This defect arose mainly because of Defendants' deliberate choice to pay according to schedule instead of time punches—a clear violation of the Act. PFOF 151. It also occurred because Defendants often refused to pay for work that was contrary to their rules, despite knowingly accepting the benefits of that work—another clear violation of the Act. PFOF 265–66. To make matters worse, Defendants did not have an effective process for correcting the frequent, widespread pay errors at each Facility Defendant. The Acting Secretary proved that Defendants had a pattern and practice of failing to repay employees for the routine

mismatch between their time clock hours and their paycheck hours, notwithstanding constant

complaints, repeated pleas for corrections, and multiple forms of proof submitted that

evidenced that underpayment. PFOF 137, 139, 169–171, 174–78, 184–208.

> **b.   Defendants Had a Pattern and Practice of Failing to Compensate Overtime Hours at the Correct Rate**

Defendants must pay overtime "at a rate not less than one and one-half times the regular

rate at which he is employed." 29 U.S.C. § 207(a). The "regular rate" includes "all remuneration

for employment paid to, or on behalf of, the employee . . . ." U.S.C. § 207(e). For joint

employers, "[h]ours should be combined" for purposes of determining overtime. *Scalia v.

Shalimar Distributors LLC*, No. 4:18-cv-01642, 2020 WL 4335020, at *4 (M.D. Pa. July 28,

2020); *see also Thompson*, 748 F.3d at 148 ("Under the FLSA, multiple persons or entities can

be responsible for a single employee's wages as 'joint employers' in certain situations").

The Acting Secretary proved a pattern and practice of paying straight-time rates for

overtime hours, contrary to Section 7(a) and Section 11(c). *Stewart v. Loving Kindness

Healthcare Systems, LLC*, No. 2:20-cv-1087, 2021 WL 567248, at *4 (W.D. Pa. Feb. 16, 2021).

She proved this through representative evidence, including: (1) Defendants' concessions of joint

employment status and a refusal to combine hours for employees who work at multiple Facility

Defendants in the same pay period; (2) testimony from Defendants' senior personnel and others

proving the routine payment of straight-time rates for overtime hours; (3) Mr. Halper's email

correspondence and other documentary evidence; and (4) Defendants' pay and time records,

which confirm Defendants' regular pattern and practice. PFOF 125–129, 210, 214–16.

In addition, there is no dispute that, for years, Defendants incorrectly calculated

employees "regular rate" by designing their unified payroll system to exclude supplemental, non-

discretionary compensation from that rate. PFOF 211–13. This too violates the Act. *See Smiley v.*

*E.I. DuPont De Nemours and Co.*, 839 F.3d 325, 331 (3d Cir. 2016) ("[A]lthough a handful of types of compensation are statutorily excluded from the definition of 'all remuneration,' all other compensation is included in the regular rate."); *Su v. Bene Market, LLC*, No. 20-cv-4265, 2024 WL 1181447, at *6 (E.D. Pa. Mar. 19, 2024); *see also Featsent v. City of Youngstown*, 70 F.3d 900, 904 (6th Cir. 1995). And, despite insisting that a correction occurred, the evidence shows that Defendants continue in some instances to miscalculate employees' regular rate. PFOF 212. [1]

### c.  Defendants Must Restore Overtime Gap Time to Comply with Section 7

Defendants' time and pay records reveal routine underpayment of straight time wages in periods with overtime work, totaling $3,634,678.81. PFOF 209. This is known in FLSA jurisprudence as "overtime gap time."

"Gap time 'refers to time that is not [directly] covered by the [FLSA's] overtime provisions because it does not exceed the overtime limit, and to time that is not covered by the [FLSA's] minimum wage provisions because . . . the employees are still being paid a minimum wage when their salaries are averaged across their actual time worked.'" *Connor v. Cleveland Cnty., North Carolina*, 22 F.4th 412, 421 (4th Cir. 2022) (quoting *Davis v. Abington Memorial Hosp.*, 765 F.3d 236, 243–44 (3d Cir. 2014)) (alterations in original). Unless all straight time is paid, an employer cannot satisfy its overtime obligation. 29 C.F.R. § 778.315; *Hayes v. Bill*

---

[1] The Acting Secretary also proved a pattern and practice of Defendants failing to include promised, but unpaid, bonuses, shift differentials, and other supplemental, non-discretionary compensation, in the regular rate. PFOF 213. Non-payment does not absolve Defendants from including them in the regular rate. *See* 29 C.F.R. § 778.11(c) (discussing "[p]romised bonuses" that "must be included in the regular rate"); *Sec'y, United States Dep't of Labor v. Bristol Excavating, Inc.*, 935 F.3d 122, 131 (3d Cir. 2019) (""[T]he regular rate by its very nature must reflect all payments which the parties have agreed shall be received regularly during the workweek, exclusive of overtime payments.'") (quoting *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945)) (emphasis in original); *Featsent*, 70 F.3d at 904. Although the Acting Secretary was not able calculate back wages due for failing to include missing bonus and shift differential payments in the regular rate (01/11/2024 Trial Tr. 175:15–23 (M. Murray)), the pattern and practice nonetheless violated the Act.

*Haley & His Comets, Inc.*, 274 F. Supp. 34, 37 (E.D. Pa. 1967). Otherwise, employers could "invent creative payment schemes to shirk their responsibilities under the FLSA," effectively allowing "wage theft" under the guise of "abid[ing] by the letter" of Section 7. *Conner*, 22 F.4th at 423 (citations and quotations omitted). At least one court in this District has ruled that overtime gap time claims are "viable under the FLSA." *Barvinchak v. Indiana Regional Medical Center*, No. 3:06-cv-69, 2007 WL 2903911, at *5–8 (W.D. Pa. Sept. 28, 2007). [2]

### III.    Defendants' Meal Break Policies Do Not Absolve Them

Disputes over work performed during break times are common in FLSA actions. Where an employee seeks to have an entire period categorized as compensable time, courts rely on the "predominant benefit test" to assess whether the employee is "primarily engaged in work-related duties during meal periods." *Babcock v. Butler Cnty.*, 806 F.3d 153, 156 (3d Cir. 2015) (citation and quotations omitted). Defendants' liability is more straightforward: they must pay for all work performed, regardless of when it occurred, that they knew about or should have known about. *See* 29 C.F.R. § 785.16(a); 29 C.F.R. § 785.19(a); *Thompson*, 748 F.3d at 148. The Acting Secretary proved that Defendants have a pattern and practice of suffering or permitting work during meal breaks without paying for that time. PFOF 156–166.

Defendants' automatic break deduction policies do not change things. Such policies are not per se illegal, but they do not eliminate an employer's duty to make and keep accurate records and to pay for all time worked that they are aware of. *See Dole v. Solid Waste Servs.*,

---

[2] In *Davis*, the Third Circuit held that "pure gap time," *i.e.*, gap time for weeks with no overtime work, was not cognizable. 765 F.3d at 244. It acknowledged the existence of overtime gap time claims, but it declined to address them because the plaintiffs had "not plausibly alleged that they worked overtime in any given week." *Id.* The Acting Secretary is not seeking pure gap time—her back wages summary does not calculate any "Unpaid Regular Wages" due unless there is unpaid overtime due in that same pay period. 01/11/2024 Trial Tr. 76:14–78:3, 109:12–109:15, 156:8–25 (M. Murray); *see also* 01/19/2024 Trial Tr. 146:20–147:5 (M. Shuey).

*Inc.*, 733 F. Supp. 895, 924 (E.D. Pa. 1989), *aff'd*, 897 F.2d 521 (3d Cir. 1990) ("An employee cannot be docked for lunch breaks during which he is required to continue with any duties relating to his work.") (citation and quotations omitted); *Myers v. Memorial Health System Marietta Memorial Hosp.*, No. 2:15-cv-2956, 2019 WL 1384396, at *4 (S.D. Ohio Mar. 27, 2019) ("If an employer chooses to implement an auto-deduction policy, it must remain vigilant that employees are only working the hours for which they are compensated. Such a system does not shift the burden to the employees to ensure accurate record-keeping."). Decisions that reject overtime claims because the employer implements an automatic deduction and maintains an effective process for reversing that deduction are of no help to these Defendants because: (1) their payroll correction process consistently failed to capture work hours—sometimes deliberately (PFOF 265–66)—and; (2) Defendants knew that their employees were routinely performing unpaid work during meal breaks (PFOF 249, 252). *See Reinig v. RBS Citizens, N.A.*, No. 2:15-cv-01042, 2017 WL 8941219, at *9–12 (W.D. Pa. Aug. 2, 2017).

Defendants bore the burden to rebut "the existence of the violations" or "to prove that individual employees are excepted from the pattern or practice." *Selker Bros*, 949 F.2d at 1298; *see also Gelber v. Akal Security, Inc.*, 14 F.4th 1279, 1283 (11th Cir. 2021) ("[T]he employee bears the initial burden to show that the meal period constituted work. If the employee does so, and the employer seeks an automatic deduction, *Anderson* teaches that it's up to the employer to show how much it is entitled to deduct."). They did not do so. *See infra* at pp. 12–14. Defendants cannot therefore "hide behind a policy of having employees keep their own time to avoid compensating the employees for all overtime hours worked, including unrecorded hours." *Magpayo v. Advocate Health and Hospitals Corp.*, No. 16-cv-01176, 2018 WL 950093, at *5 (N.D. Ill. Feb. 20, 2018) (citation and quotations omitted); *Perry v. City of New York*, 78 F.4th

502, 516 (2d Cir. 2023) ("Nothing we say here calls into question the lawfulness or usefulness of systems requiring employees to report their overtime work. . . . But it will not exempt an employer who required, knew about, or should have known about the claimed work.").

## IV. The Acting Secretary Proved that Schedule A Employees Are Owed $20,548,880.57 In Back Wages

The second step under *Mt. Clemens* required the Acting Secretary to introduce "sufficient evidence to show the amount and extent of [the unpaid] work as a matter of just and reasonable inference." *Selker Bros.*, 949 F.2d at 1297 (quoting *Mt. Clemens*, 328 U.S. at 687–88). Here too, her burden is "minimal." *Central Laundry, Inc.*, 2019 WL 3413514 at *11 (citation and quotations omitted); *see also Shalimar Distributors, LLC*, 2020 WL 4335020, at *5; *Monroe v. FTS USA, LLC*, 860 F.3d 389, 399 (6th Cir. 2017) (describing "relaxed burden" to establish the "extent of uncompensated work"). This reduced burden reflects the longstanding principle that, because the employer defied the Act's record-keeping requirements, any imprecision in determining harm is construed against them. *See Selker Bros.*, 949 F.2d at 1297 ("'The employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the requirements of § 11(c) of the Act.'") (quoting *Mt. Clemens*). The employer "'having received the benefits of [the employees'] work, cannot object to the payment for the work on the most accurate basis possible under the circumstances.'" *Id.* (quoting *Mt. Clemens*) (alteration in original).

The Acting Secretary carried her burden. Through Mr. Murray, she meticulously and accurately summarized over 7 years of Defendants' pay and time records—containing millions of rows of data showing per-employee daily punch times and per-employee, per-pay-period wages—to calculate back wage liability of $20,548,880.57. PFOF 292–332. This summary

11

accounted for, among other things, the distinct payroll policies at each Facility Defendant, the employees' inconsistent practices regarding punching for meal breaks, and gaps within the data that Defendants could not fill. PFOF 300, 303–05, 307. In other words, rather than just rely on representative evidence, the Acting Secretary went further and introduced "a volume of good old-fashioned direct evidence." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1277 (11th Cir. 2008); *see also Elder Resource Mgmt. Inc.*, 2022 WL 3134085, at *10. Defendants do not contest Mr. Murray's methodology. PFOF 333.

## V.   Defendants Did Not Carry Their Burden Under *Mt. Clemens* to Rebut Either the Violations or the Acting Secretary's Calculation of Back Wages Due

The Acting Secretary established a prima facie case proving violations and back wages. Defendants can only defeat that case if they "rebut the existence of the violations" or "prove that individual employees are excepted from the pattern or practice[.]" *Selker Bros.*, 949 F.2d at 1298 (citations omitted). This burden requires precise "evidence of the precise amount of work performed" or "evidence to negative the reasonableness of the inference to be drawn from the [the plaintiff's] evidence." *Hattabaugh v. TMS Int'l, LLC*, No. 2:20-cv-00801, 2022 WL 3100855, at *6 (W.D. Pa. Aug. 4, 2022).

Defendants did not introduce any separate pay or time records. Dkt. 433. They also chose not to offer any other documentary evidence of work performed or compensation paid, such as their own analysis of the pay and time records. *Id*. Instead, they mainly offered broad, generalized claims through testimony. This effort falls well short.

Employers must present ***specific evidence*** to carry their burden, and courts routinely reject *ipse dixit* claims of compliance. *Selker Bros.*, 949 F.2d at 1298; *see also Donovan v. Grantham*, 690 F.2d 453, 458 (5th Cir. 1982) ("Grantham may demonstrate on remand where the compliance officer's calculations are inaccurate, but his evidence must be as precise as that

offered by the Secretary."). Broad critiques likewise do not carry the burden. *See, e.g.*, *Central Laundry, Inc.*, 2019 WL 3413514 at *14 ("By offering only the assertion that the record does not adequately support the Secretary's position, Defendants have failed to meet their burden."); *Nursing Home Care Mgmt. Inc.*, 2023 WL 3440237, at *14 (rejecting unsupported attempt to "merely poke holes in the manner and method in which Plaintiff went about calculating damages rather than come forth with their own records that they maintained to negate Plaintiff's calculations"). Defendants may highlight evidence that some of their employees received an uninterrupted meal break or that Defendants corrected some payroll errors. Even if considered, it would not matter. This case does not turn on proving that every employee missed every break, or that errors were never corrected; it is about recovery for underpayments that appear on the face of the records. PFOF 292, 314. *See United States Dep't of Labor v. Five Stay Automatic Fire Protection, L.L.C.*, 987 F.3d 436, 443–44 (5th Cir. 2021) ("Five Star offers a string of arguments concerning its general efforts to correct timesheet errors and its openness to addressing employee concerns. But these general efforts do not undermine the specific testimony that employees worked, per company instruction, before and after their recorded hours.") (footnote omitted).

Most of Defendants' witnesses admitted that they had no knowledge of the time and pay records and that they had no basis to contest those records. PFOF 336–37. Such testimony pales in comparison with the Acting Secretary's prima facie case, which rests on years of time and pay records, specific, representative testimony from thirty-nine witnesses, and thousands of pages of other evidence, each of which corroborates the other. The reasonableness of the Acting Secretary's back wages summary is all but confirmed by Defendants' decisions to: (1) forgo challenging the integrity of Mr. Murray's methodology; and (2) decline to introduce

any alternative methodology. *See Elder Resource Mgmt., Inc.*, 2022 WL 3134085, at *10 (accepting proposed back wages where employer "[did] not challenge the methodology used by [the Acting Secretary] to calculate back wages"); *Jackson v. Art of Life, Inc.*, 836 F. Supp. 2d 226, 234 (W.D. Pa. 2011) (adopting proposed back wages where employer did not challenge "the accuracy of the data or the validity of the methods").

## VI.     Defendants Did Not Prove that Any Overtime Exemptions Apply

All employees must be paid overtime under Section 7 unless a specific exemption applies. 29 U.S.C. § 213(a). For each employee claimed as exempt, Defendants bear the burden of proving "'plainly and unmistakably that the employee qualifies'" for that exemption. *Perez v. Express Scripts, Inc.*, No. 23-1730, 2024 WL 957978, at *2 n.4 (3d Cir. Mar. 6, 2024) (quoting *Mazzarella v. Fast Rig Support, LLC*, 823 F.3d 786, 790 (3d Cir. 2016)). "[I]f the record is unclear as to some exemption requirement, the employer will be held not to have satisfied its burden." *Rood v. R&R Express, Inc.*, No. 2:17-cv-1223, 2022 WL 1082481, at *5 (W.D. Pa. Apr. 11, 2022) (quoting *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 900 (3d Cir. 1991)) (alteration in original). Failure to carry the burden means that the misclassified employees must be paid overtime due. *Helix Energy Solutions Group, Inc. v. Hewitt*, 598 U.S. 39, 43–44 (2023).

Defendants concede that they misclassified all Human Resources Directors—identified as "Personnel" in their pay and time records—for the entire relevant period. 02/15/2024 Trial Tr. 94:5–19. Their limited attempt to prove other exemptions does not suffice. Defendants appear to invoke the "bona fide executive" or "administrative" exceptions to Section 7. 29 U.S.C. § 213(a)(1). Defendants' witnesses mainly offered general descriptions and statements of expected job performance. PFOF 220. This type of evidence is "insufficient to establish the exempt status of an employee[.]" *Rood*, 2022 WL 1082481, at *5 (quoting 29 C.F.R. § 541.2).

To carry their burden, Defendants were supposed to present "evidence of . . . day-to-day duties" specific to each purportedly exempt employee. *Smith v. Bank of New York Mellon Corp.*, No. 10-cv-678, 2011 WL 836858, at *15 (W.D. Pa. Jan. 20, 2011) (citation omitted); *see also Acosta v. Heart II Heart, LLC*, No. 2:17-cv-1242, 2019 WL 7629239, at *2 (W.D. Pa. Oct. 3, 2019) ("The proffered job descriptions for the twelve employees . . . do not prove that they ***actually performed*** the duties listed therein.") (emphasis in original).

But even if considered, Defendants' claims do not survive the record. Despite not having the burden, the Acting Secretary showed that, because Mr. Halper tightly controlled numerous critical day-to-day functions of Facility Defendants and their employees, the claimed exempt employees rarely, if ever, engaged in the required duties.[3] PFOF 223–230. Purportedly exempt employees could not exercise independent judgment over key aspects of management and other matters of significance, including as to determination of employment policies, hiring, staffing, purchasing of necessary supplies and equipment, payroll, and other critical areas. *Id*. The evidence also shows—including through Defendants' own witnesses—that several managers did not supervise two or more full-time employees. PFOF 221.

---

[3] *Barba v. New Century Chinese Buffet, Inc.*, No.2:20-cv-01557, 2023 WL 6348825, at *4 (W.D. Pa. Sept. 29, 2023) (the executive exemption requires that the employee is one who has "primary duty" of "management," who "customarily and regularly directs the work of two or more other employees, and who "has the authority to hire or fire" or "whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight") (citation omitted). The Court evaluates these primary duties with reference to "the relative importance of managerial/non-managerial duties, frequency of discretionary decisions, freedom from supervision by others, and the relationship of the employee's salary to wages of non-exempt employees." *Id*. (citation omitted). As to administrative employees, the employer must show that the employee is compensated on a minimum salary basis, that they primarily perform "office or non-manual work directly related to management or general business operations of the employer," and that they exercise "discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a). Each factor of the duties test must be established.

Finally, there can be no exemption because Defendants failed to pay a minimum guaranteed salary. "Whenever an employee works at all in a week, he must get his 'full salary for [that] week'—what § 602(a)'s prior sentence calls the 'predetermined amount.' That amount must be 'without regard to the number of days or hours worked'—or as the prior sentence says, it is 'not subject to reduction because' the employee worked less than the full week." *Hewitt*, 598 U.S. at 51 (quoting 29 C.F.R. § 541.602)) (alteration in original). The Acting Secretary proved that Defendants had an "'actual practice'" of making improper deductions from [their] employee's salary . . . ." *Higgins v. Bayada Home Health Care Inc.*, 62 F.4th 755, 760 (3d Cir. 2023) (citing 29 C.F.R. § 541.603); PFOF 231–235.

## VII.    Defendants Willfully Violated the FLSA

An employer willfully violates the FSLA when it knowingly commits the violation or shows "reckless disregard for the matter of whether its conduct was prohibited." *Heart II Heart*, 2019 WL 5197329, at *8 (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). An employer's indifference bears on willfulness. *A-1 Mortg. Corp.*, 934 F. Supp. 2d at 810 (citations omitted). Conduct need not be "egregious" to be willful. *Stone v. Troy Construction, LLC*, 935 F.3d 141, 150 (3d Cir. 2019). Willful violations of the Act extend the statute of limitations to three years. 29 U.S.C. § 255(a).

Defendants admit awareness of Act's requirements. PFOF 237–39. Despite this knowledge, in several instances Defendants outright refused to pay employees for work performed. PFOF 265–66. They also knew that their payroll process was systemically flawed through, *inter alia¸* their adoption of "blanket" policies (*Stone*, 935 F.3d as 151) of paying according to schedule instead of time punches and refusing to include supplemental compensation in the regular rate, their knowledge that employees were routinely working without pay (often in response to staffing shortages, which Defendants also knew about), their

16

knowledge that employees were regularly being paid at the wrong rate, and their knowledge that the correction process was ineffective. PFOF 242–74. Their clear intent is mostly clearly reflected by Mr. Pechman's testimony that it took a year to remove the illegal regular rate configuration because "things happened" and they "got distracted." PFOF 258. Notably, many of the back wages accrued *after* the Acting Secretary's investigation and *after* she initiated this action. PFOF 322. This "failure to at least maintain records during the period when litigation on this issue was inevitable is a clear demonstration of reckless disregard." *Nursing Home Care Mgmt. Inc.*, 2023 WL 3440237, at *11.

Defendants' willfulness is further evidenced by their indifference towards the flood of pay complaints and repeated warnings from their own senior personnel and from union representatives. Instead of addressing the root cause of the widespread errors, Defendants put the burden on employees to track their time and raise pay errors, all while knowing that their justified reputation of failing to pay workers was undermining their ability to retain workers or hire new ones. PFOF 262, 273–74. Defendants had every "reason to suspect" that their conduct violated the FLSA, but they made no "good faith effort to confirm this information and comply." *A-1 Mortg. Corp.*, 934 F. Supp. 2d at 810.

### VIII.   Liquidated Damages

Section 16(b) of the Act provides that "[a]ny employer who violates the provisions of [S]ections 6 and 7 . . . shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation . . . and an additional equal amount in liquidated damages." 29 U.S.C. § 216(b). These "mandatory" liquidated damages are "compensatory" to "ease any hardship endured by employees who were deprived of lawfully earned wages." *Secretary, U.S. Dep't of Labor v. American Future Systems, Inc.*, 873 F.3d 420,

433 (3d Cir. 2017) (citing *Selker Bros.*, 949 F.2d at 1299). An employer can avoid liquidated damages only if they carry the "plain and substantial burden" of showing that "'the act or omission giving rise to the action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation'" of the Act. *Selker Bros.*, 949 F.2d at 1299 (quoting 29 U.S.C. § 260); *Cooper Elec. Supply Co.*, 940 F.2d at 907 (citation omitted). The good faith inquiry focuses on the defendant's "'subjective'" belief as to their conduct while the reasonableness requirement "'imposes an objective standard by which to judge the employer's conduct . . . .'" *Elder Resource Mgmt., Inc.*, 2022 WL 3134085, at *12 (quoting *Brooks v. Vill. of Ridgefield Park,* 185 F.3d 130, 137 (3d Cir. 1999)). Unless both subjective good faith and objective reasonableness are proven, "the award of liquidated damages is mandatory." *Selker Bros.*, 949 F.2d at 1299 (citing sources). Defendants' burden is "a difficult one to meet," *i.e.*, "[d]ouble damages are the norm, single damages the exception." *Cooper Elec. Supply Co.*, 940 F.2d at 908 (citations and quotations omitted); *Heart II Heart*, 2019 WL 5197329, at *9.

Defendants did not prove either element. As to subjective good faith, rather than evince "an honest intention to ascertain and follow the dictates of the FLSA," their conduct instead shows a sustained practice of adopting or otherwise countenancing illegal pay policies to benefit themselves. *Elder Resource Mgmt., Inc.*, 2022 WL 3134085, at *12 (citing *Marshall v. Brunner*, 668 F.2d 748, 753 (3d Cir. 1982)); PFOF 237–81. Defendants did not prove that they took affirmative steps prior to the Acting Secretary's investigation to ascertain the lawfulness of their policies. PFOF 282–84. This failure "mandates an award of liquidated damages.'" *Elder Resource Mgmt., Inc.*, 2022 WL 3134085, at *12; *see also Heart II Heart*, 2019 WL 5197329, at *9 ("By taking no affirmative steps prior to Wage and Labor's investigation, Defendants cannot demonstrate good faith. This is fatal to Defendants' position and the Court's analysis need

proceed no further."). While Defendants may argue that they promptly fixed known errors, the record does not support that claim. PFOF 139, 194. Even if it did, it would not matter, as their own time and pay records demonstrate millions of dollars in underpayments. PFOF 316–32. And, finally, Defendants' concession of back wage liability, coupled with their refusal to ascertain that amount (PFOF 279–81), precludes a finding of good faith. *Bowyer v. Dish Network, LLC*, No. 08-cv-1496, 2010 WL 629830, at *7 (W.D. Pa. Feb. 19, 2010) ("Good faith requires some duty to investigate potential liability.") (citation and quotations omitted).

Defendants fare even worse as to objective reasonableness. No "reasonably prudent man" (*Elder Resource Mgmt., Inc.*, 2022 WL 3134085, at *12) would pay employees according to schedule and ignore overwhelming evidence that the policy caused severe, repeated underpayment of workers, all while insisting it was the employees' responsibility, not his, to track their time and discover pay errors. The same man would never use a pay system that materially understates the regular rate or wait a year to fix it because "things happened" and he "got distracted." Finally, no reasonable person would ignore the investigative findings, the face of their own time and pay records, years of widespread complaints, repeated warnings from senior personnel and union officials, and the other clear evidence that the payroll system was systemically defective and was underpaying overtime. PFOF 105–14, 169–183, 252, 292.

### IX.    Injunctive Relief

Section 17 of the Act permits a court to enjoin violations of the FLSA. 29 U.S.C. § 217. It is within the Court's "'sound discretion'" to issue an injunction. *Elder Resource Mgmt., Inc.*, 2022 WL 3134085, at *14 (quoting *A-1 Mortg. Corp.*, 934 F. Supp. 2d at 815). Where, as here, the Acting Secretary has shown violations of the Act, a court "'should ordinarily grant injunctive relief, even if the employer is in present compliance, unless the district court is soundly

convinced that there is no reasonable probability of a recurrence of the violations.'" *Elder Resource Mgmt., Inc.*, 2022 WL 3134085, at \*14 (quoting *Marshall v. Van Matre*, 634 F.2d 1115, 1118 (8th Cir. 1980)). The relevant factors include (1) the employer's previous conduct, (2) its current state of compliance, and (3) the dependability of any assurances of future compliance. *Id* (citing *Reich v. Petroleum Sales*, 30 F.3d 654, 657 (6th Cir. 1994)).

Injunctive relief is warranted in this case because of Defendants' ongoing failure to comply, their longstanding and often deliberate conduct, and the absence of any reason to believe they will come into compliance. Defendants' refusal to ascertain their conceded back wage liability or to pay any back wages until this enforcement action—which they have successfully delayed and repeatedly tried to stay—is concluded leave little doubt that a prospective injunction is needed. *See, e.g.*, *Elder Resource Mgmt., Inc.*, 2022 WL 3134085, at \*15 (entering injunction where Acting Secretary proved "purposeful scheme" and history of violations); *Loving Kindness Healthcare Systems, LLC*, 2021 WL 567248, at \*6 (entering injunction where defendants "admitted that they are not in compliance with the Act" and "failed to produce any documents showing that they have come into compliance," and that the "continued failure to comply" indicated that they would "remain out of compliance"); *Fusion Japanese Steakhouse*, 548 F. Supp. 3d at 533 ("Defendants have serially violated the FLSA. Even if they are currently complying with the requirements of the Act, their word that they will continue to comply is called into serious doubt by their established history of promising compliance and then returning to practices that violate the FLSA."). Defendants cannot credibly complain about any "penalty" or "hardship" from a prospective injunction, since it would require them "to do what the Act requires anyway—to comply with the law." *Elder Resource Mgmt., Inc.*, 2022 WL 3134085, at \*15 (quoting *Dunlop v. Davis*, 524 F.2d 1278, 1281 (5th Cir. 1975)).

Respectfully Submitted,

**UNITED STATES DEPARTMENT OF LABOR**

Mailing Address:

U.S. Department of Labor
Office of the Regional Solicitor
1835 Market Street
Mailstop SOL/22
Philadelphia, PA 19103-2968

(215) 861-5136 (voice)
(215) 861-5162 (fax)

herrera.alejandro.a@dol.gov

Seema Nanda
Solicitor of Labor

Samantha N. Thomas
Regional Solicitor

Adam Welsh
Wage and Hour Counsel

*/s/ Alejandro A. Herrera*
Alejandro A. Herrera
Senior Trial Attorney
PA 326897; NY 5235601

*/s/ Mohamed Seifeldein*
Mohamed Seifeldein
Trial Attorney
*Pro Hac Vice*

*/s/ Erik Unger*
Erik Unger
Trial Attorney
*Pro Hac Vice*

## CERTIFICATE OF SERVICE

I hereby certify that, on June 10, 2024 I electronically filed the foregoing Acting

Secretary's Phase II Post-Trial Brief, as well as supporting documents, by using the CM/ECF

system.


Date: June 10, 2024

*/s/ Alejandro A. Herrera*
Alejandro A. Herrera
Senior Trial Attorney
PA 326897; NY 5235601

U.S. Department of Labor
Office of the Regional Solicitor
1835 Market Street
Mailstop SOL/22
Philadelphia, PA 19103-2968
herrera.alejandro.a@dol.gov
(215) 861-5136 (voice)
(215) 861-5162 (fax)