IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JULIE A SU, *Secretary of Labor, United States Department of Labor*,<br><br>*Plaintiff,*<br><br>v.<br><br>COMPREHENSIVE HEALTHCARE MANAGEMENT SERVICES, LLC, *et al*,<br><br>*Defendants.* | Civil Action No. 2:18-cv-1608<br><br>Hon. William S. Stickman IV |

## **MEMORANDUM ORDER**

There is no merit to Defendants' Motion to Amend Judgment ("Motion"). (ECF No. 477). The Court's July 22, 2024, Findings of Fact and Conclusions of Law (ECF No. 471) and Judgment (ECF No. 472) were firmly premised on the applicable law, the facts found by the Court after an exhaustive review of the trial record, and the Court's examination of the evidence through the lens of the appropriate burdens of proof. Defendants may, understandably, be disappointed in the result of the trial. They may have second thoughts about the way they presented (or chose not to present) evidence at trial, but Defendants' Motion does not raise anything that has not already been presented to the Court. Defendants simply disagree with the Court's decision. Their Motion is an attempt at another bite at the apple but that time has passed. The Court did not commit clear error; its judgment was firmly based on the facts presented at trial and the applicable law. The judgment will not be disturbed.

On July 22, 2024, the Court entered judgment in favor of Plaintiff Julie A. Su, Acting Secretary of Labor of the United States Department of Labor (the "Acting Secretary") and jointly

and severally against Defendants Samuel Halper ("Halper"), CHMS Group LLC ("CHMS"), and all 15 facilities named[1] in the amount of $35,804,438.20. (ECF No. 472). The Court's judgment also permanently enjoined Defendants from violating the FLSA. (*Id.*).

On August 19, 2024, Defendants filed their Motion. (ECF No. 477). They first argue that the Court's "sweeping finding of a pattern and practice of multiple categories of wage violations at all 15 facilities on all workdays is clear error." (ECF No. 478, p. 2). They next assert that even if the Court's broad finding related to Defendants' pattern and practice of FLSA violations was supported, "the enormous damages award requested by [the Acting Secretary] and wholesale adopted by the Court" is not supported under *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946). (*Id.* at 3). Defendants highlight three of the Court's findings that they contend the evidence did not support: (1) regular rate calculation errors past July 2019; (2) meal break pay violations for every employee at every facility for 2015 through 2023; and/or (3)

---

[1] Comprehensive Healthcare Management Services, LLC d/b/a Brighton Rehabilitation and Wellness Center ("Brighton Rehab and Wellness Center" or "Brighton"); Maybrook-C Briarcliff Opco, LLC, d/b/a The Grove at Irwin or The Grove at North Huntingdon ("The Grove at Irwin"); Maybrook-C Evergreen Opco, LLC, d/b/a The Grove at Harmony ("The Grove at Harmony"); Maybrook-C Kade Opco, LLC, d/b/a The Grove at Washington ("The Grove at Washington"); Maybrook-C Latrobe Opco, LLC, d/b/a The Grove at Latrobe ("The Grove at Latrobe"); Maybrook-C Overlook Opco, LLC, d/b/a The Grove at New Wilmington ("The Grove at New Wilmington"); Maybrook-C Silver Oaks Opco, LLC, d/b/a The Grove at New Castle ("The Grove at New Castle"); Maybrook-C Whitecliff Opco, LLC, d/b/a The Grove at Greenville ("The Grove at Greenville"); Monroeville Operations LLC, d/b/a Monroeville Rehabilitation & Wellness Center ("Monroeville"); Cheswick Rehabilitation and Wellness Center, LLC ("Cheswick"); Mt. Lebanon Rehabilitation and Wellness Center, LLC ("Mt. Lebanon"); Murrysville Operation, d/b/a Murrysville Rehabilitation & Wellness Center ("Murrysville"); North Strabane Rehabilitation and Wellness Center, LLC ("North Strabane Rehab"); North Strabane Retirement Village, LLC ("North Strabane Retirement"); South Hills Operations LLC, d/b/a South Hills Rehabilitation and Wellness ("South Hills") (collectively, "Facility Defendants").

misclassification of all Assistant Directors of Nursing ("ADON"). (*Id.* at 39). The Court is not persuaded by any of Defendants' arguments.[2]

Defendants bring their Motion under Federal Rule of Civil Procedure ("Rule") 59(e) (*see* ECF No. 478, p. 5), which states, "Motion to Alter or Amend a Judgment. A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). Their Motion is properly viewed through the lens of a motion for reconsideration. "The purpose of a motion for reconsideration … is to correct manifest errors of law or fact or to present newly discovered evidence." *Howard Hess Dental Lab'ys Inc. v. Dentsply Intern., Inc.*, 602 F.3d 237, 251 (3d Cir. 2010) (citation omitted). Generally, a motion for reconsideration will only be granted on one of the following three grounds: (1) if there has been an intervening change in controlling law; (2) if new evidence, which was not previously available, has become available; or (3) if it is necessary to correct a clear error of law or to prevent manifest injustice. *See id.* (citing *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)). "[A] motion for reconsideration addresses only factual and legal matters that the Court may have overlooked…. It is improper on a motion for reconsideration to ask the Court to rethink what [it] had already thought through—rightly or wrongly." *Glendon Energy Co. v. Borough of Glendon*, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993) (citations and internal quotation marks omitted). The scope of a Rule 59(e) motion is extremely limited and it may not be used as an opportunity to relitigate the case. *See Blystone v. Horn*, 664 F.3d 397, 414 (3d Cir. 2011)

---

[2] The Court addresses Defendants' first two arguments in depth below. Related to the misclassification of ADONs, the Court rests on its findings—solidly based in the record—that they are non-exempt. Regardless of the lens through which the Court is required to consider an employee's exemption status, Defendants did not negate the reasonableness of the Acting Secretary's inference that ADONs were improperly classified.

3

Defendants' Motion does not argue that there has been a change of controlling law or a discovery of new evidence. Rather, they assert that the Court's judgment was "premised on clearly flawed conclusions of law and fact, resulting in an erroneous judgment and an inflated damages award that is manifestly unjust." (ECF No. 478, p. 1). The Court carefully considered everything submitted – both at trial and in the course of Defendants' post-trial briefing. It was not persuaded by Defendants' position at trial and it is not now.

The Acting Secretary's initial burden was minimal, only requiring her to present "sufficient evidence to show the amount and extent of [unpaid wages] as a matter of just and reasonable inference." *Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1297 (3d Cir. 1991) (quoting *Mt. Clemens.*, 328 U.S. at 687–88). Since the Acting Secretary sought back wages on behalf of over 6,000 employees, "[i]t [was] not necessary for every single affected employee to testify in order to prove violations or to recoup back wages." *Id.* at 1298. Instead, the Acting Secretary could present "testimony and evidence of representative employees" to establish "prima facie proof of a pattern and practice of FLSA violations." *Id.* (collecting cases).

The United States Court of Appeals for the Third Circuit explicitly stated that "[t]here is no bright-line guidance for what amount of evidence is required for representativeness." *See U.S. ex rel. Int'l Bhd. of Elec. Workers Loc. Union No. 98 v. Farfield Co.*, 5 F.4th 315, 353 (3d Cir. 2021) (collecting cases). The cases cited to by *Farfield*, and highlighted by Defendants in their brief, demonstrate this assertion. In each of the cited cases, courts found representativeness to be satisfied with varying percentages of employees testifying. (*See* ECF No. 478, p. 15).

Defendants assert that the Acting Secretary's presentation of witnesses was quantitatively insufficient for the Court to find that there was a pattern of practice of meal break violations with respect to every employee at every facility throughout the entire 2015 to 2023 period. (*Id.* at 14–

4

16). Defendants' argument fails to acknowledge that the sufficiency of representativeness does not rise or fall on quantity of testimony alone. The Court, within its authority and broad discretion, considered the overwhelming evidence submitted, in addition to the witnesses' testimony and sworn statements, the totality of which substantiated and solidified for the Court that the Acting Secretary met her burden. She representatively demonstrated that employees working under the CHMS umbrella at all Facility Defendants at various times during the relevant period were victims to varying degrees of Defendants' willful FLSA violations. The Court reasonably concluded this regardless of the quantitative number of employees presented and regardless of whether it heard testimony from an employee from each Facility Defendant. The Court found that the overwhelming evidence demonstrated that all Facility Defendants were a part of the interconnected web that is CHMS, and they were all under the control and direction of Halper.

The Court did not render its decision based on a mere assumption that Defendants committed multiple wage violations at all 15 facilities on all workdays, as Defendants submit. Instead, the Court came to its conclusions and made its findings in light of the credible testimony of current and former employees of Facility Defendants, all of which were under the CHMS corporate umbrella. The Court has never been under the impression that every employee, every day, was unable to take a full, bona fide lunch. While the testimony and evidence presented conclusively established that it was Facility Defendants' policy for employees to take meal breaks, it just as conclusively established that (1) employees often missed meal breaks or, at a minimum, did not routinely receive an uninterrupted 30-minute meal break; (2) actual practices related to employees punching in and out for lunch were inconsistent across Facility Defendants

during the relevant times;[3] and (3) employees were not always paid for meal time work even when they filled out the requisite forms.[4]

In conjunction with this sufficient evidence, the Acting Secretary presented her calculations of the back wages due largely through the testimony of Mr. Murray. The Court found Mr. Murray and his methodology to be completely credible. Based on the face of Defendants' own time and pay records, he utilized a reasonable methodology that approximated the amount of unpaid wages due in light of the established inconsistencies and Defendants' own record-keeping violations. The Court found, and steadfastly affirms, that Mr. Murray's calculations were achieved by a matter of just and reasonable inferences based on the evidence. The Acting Secretary did not manipulate Defendants' time and pay records in any way. Through reasonable and logical steps, Mr. Murray calculated various scenarios of the amount of back wages due. The Court found nothing unreasonable about the parameters given to him, his methodology based on these parameters, or his ultimate conclusions.

---

[3] The Court recognizes that it was the policy of nearly all Facility Defendants that employees punch out and back in for lunch only if they were leaving the building. (JX-2, p. 20); (JX-3, p. 20); (JX-4, p. 20); (JX-5, p. 20); (JX-6, p. 20); (JX-7, p. 20); (JX-8, p. 20); (JX-9, p. 20); (JX-10, p. 20); (JX-11, p. 20); (JX-12, p. 20); (JX-13, p. 20); (JX-14, p. 20); (JX-15, p. 18). However, multiple witnesses testified that this was not the day-to-day practice that occurred. When Mr. Murray, who extensively studied and extrapolated information from the time and pay data, was asked by defense counsel as to Facility Defendants' policy that employees only punch if they are leaving the building, he responded "You certainly can't tell from the data." (ECF No. 437, p. 174). Thus, the mere fact that Defendants memorialized this policy in their Facility Defendant handbooks does not absolve them of what may have actually happened in practice.

[4] In their brief, Defendants assert that a "multitude of evidence" was presented "that employees *were paid* on the occasions on which they did not take a meal break." (ECF No. 478, p. 23) (emphasis in original). Again, the Court does not disagree that sometimes employees were properly paid. But, because Defendants' inaccurate records would not "debunk" this, and based on the *Mt. Clemens* burden-shifting, it was for Defendants to prove that employees received pay for the appropriate time worked. Moreover, the Court found the evidence offered by Defendants to be inherently not credible in light of the record as a whole.

Defendants cite to Mr. Pechman's testimony as the sole source of rebuttal for Defendants' alleged pattern or practice of violations from 2019 to 2023. This did not persuade the Court in making its original findings and it does not now. In addition to finding Mr. Pechman not credible, the Court again reiterates that the calculations were based upon Defendants' own time and pay records. The evidence did not establish that all alleged FLSA violations from 2019 on were remedied, as demonstrated by the Acting Secretary's calculations of back wages owed from every Facility Defendant to some degree in the years 2019, 2020, 2021, 2022, and 2023.

It was Defendants' burden at trial "to come forward with evidence of the precise amount of work performed or with evidence to negat[e] the reasonableness of the inference to be drawn from the employee's evidence." *Selker Bros., Inc.*, 949 F.2d at 1297 (quoting *Mt. Clemens*, 328 U.S. at 687–88). Defendants cannot rely on the Acting Secretary's imprecision in her back wages calculation to satisfy their burden. *Id.* at 1297 (quoting *Mt. Clemens*, 328 U.S. at 688) ("The employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the requirements of § [2]11(c) of the Act.")). "Unless the employer can provide accurate estimates, it is the duty of the trier of facts to draw whatever reasonable inferences can be drawn from the employees' evidence…." *Mt. Clemens*, 328 U.S. at 693. Thus, if Defendants could not satisfy their burden, the Court could award damages to the affected employees, "even though the result may be only approximate." *Selker Bros.*, 949 F.2d at 1297 (quoting *Mt. Clemens*, 328 U.S. at 687–88).

Defendants failed to carry their burden at trial. It appeared to the Court that Defendants' strategy was to "sit and wait" to see how the Acting Secretary's case developed at trial. From there, they sought to present and test some of their theories through narrow cross-examination

seemingly intended to discredit the Acting Secretary's witnesses, and the presentation of completely incredible witnesses of their own.[5] Defendants' true case then came to life in their written post-trial submissions where Defendants parsed out the Acting Secretary's presented evidence facility-by-facility and attacked only that which she offered. This would be an effective trial strategy when the burden of proof remains with the plaintiff, and it is only a defendant's job to poke enough holes in the evidence to keep the plaintiff from establishing his or her burden. But, in light of Defendants' FLSA record-keeping violations, that was not the burden required under applicable law. Under *Mt. Clemens*, it was Defendants' burden at trial to negate the reasonableness of the Acting Secretary's established prima facie case. The Court found, considering the totality of all of the evidence submitted, that Defendants failed to do this.

Defendants did not call a single rank-and-file hourly employee at any Facility Defendant to testify. Defendants minimally consulted or utilized any pay or time records to rebut the reasonableness of the Acting Secretary's evidence. On cross-examination of Mr. Murray, Defendants only challenged some of his conclusions, not his methodology. Defendants offered no evidence to call into question his credibility nor the reliability of his methods and conclusions.

When inaccurate records are kept by an employer, the law recognizes that any damages award that stems from such records will always be approximate. In light of Defendants' recordkeeping violations, the Acting Secretary used the time and pay records, as given, to conduct her calculations of the back wages due. Since Defendants did not keep accurate records, they could not debunk her calculations. It was well within the Court's authority to award

---

[5] As a general finding, in light of the totality of Defendants' case presented at trial, the Court found all of Defendants' witnesses to be completely not credible. Witnesses presented rehearsed, evasive, and selective accounts of what occurred throughout CHMS and within Facility Defendants. Nothing persuaded the Court that any of Defendants' witnesses were credible or reliable, and the Court accordingly gave little credence to anything they said.

8

damages based on all of the reasonable inferences it drew from the credible and reliable calculations and corresponding trial testimony and evidence.

The Court made no clear error of law nor did manifest injustice ensue. There is no merit to Defendants' Motion. AND NOW, this **20** day of September 2024, IT IS HEREBY ORDERED that Defendants' Motion to Amend Judgment (ECF No. 477) is DENIED.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE